# EXHIBIT 1

## To Reply Brief in support of
## Defendant Rajesh Soin's Motion To Stay

1 of 1 DOCUMENT

**IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION; THIS DOCUMENT RELATES TO ALL ACTIONS**

**CIVIL ACTION MASTER FILE No. 02-1781**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2003 U.S. Dist. LEXIS 9736**

**May 13, 2003, Decided**
**May 14, 2003, Filed**

**DISPOSITION:** [*1] Plaintiffs' Motions for Reconsideration denied. Stay to remain in effect.

**LexisNexis(R) Headnotes**

**COUNSEL:** For ADELPHIA COMMUNICATIONS SECURITIES LITIGATION: PHILIP C. KOROLOGOS, BOIES SCHILLER & FLEXNER LLP, ARMONK, NY.

For JERROLD RUSKIN, PLAINTIFF: MARK GARDY, ABBEY & ELLIS, JUDITH L. SPANIER, ABBEY GARDY, LLP, NEW YORK, NY USA.

For JERROLD RUSKIN, PLAINTIFF: DEBORAH R. GROSS, LAW OFFICES BERNARD M. GROSS, P.C., PHILADELPHIA, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION:**

**MEMORANDUM AND ORDER**

HUTTON, J.

Presently before the Court are two Motions for Reconsideration of the Court's Order, dated September, 26, 2002, staying these securities class action cases. One motion (Docket No. 84) was filed on January 17, 2003, by a group of arbitrage funds ("Argent/Eminence Plaintiffs"). The other motion (Docket No. 88) was filed on January 29, 2003, by several public employee pension funds ("Pension Fund Plaintiffs"). In each of these motions, Plaintiffs ask the Court to (1) remove these cases from the civil suspense docket; (2) reconsider the stay order; and (3) rule on Plaintiffs' Motions for Appointment of Lead Plaintiff and Counsel. For the reasons discussed below, the motions are [*2] denied.

**I. BACKGROUND**

These cases arise from the financial collapse of Adelphia Communications Corporation, a company providing cable television and communications services to consumers. The first of these private securities actions against Adelphia and its officers and directors was filed on April 20, 2002. Since that date, approximately 40 similar actions have been filed. The cases were consolidated before this Court in an order dated April 30, 2002. Included among the Defendants in these actions are Adelphia, John Rigas, Timothy Rigas, and Michael Rigas ("Rigas Defendants").

Adelphia's collapse also spawned other litigation that is relevant to the instant case. First, on June 25, 2002, Adelphia filed a Chapter 11 Bankruptcy petition in the Southern District of New York. Presently, Adelphia's bankruptcy petition is still pending in that court.

Second, on July 24, 2002, the United States Securities and Exchange Commission ("SEC") filed a civil enforcement action in the Southern District of New York against Adelphia, the Rigas Defendants, and two other former Adelphia officers, James Brown and Michael Mulcahey. In its complaint, the SEC makes allegations similar to those [*3] contained in the various complaints filed in the private securities suits currently before this Court. Specifically, the SEC charges that Adelphia, as directed by the Rigas Defendants and others, fraudulently hid liabilities from Adelphia's consolidated financial statements, falsified company earnings, and concealed self-dealing by the Rigas Defendants. See Compl., SEC v. Adelphia Comm. Corp, No. Civ.A. 02-5776 (S.D.N.Y. July 24, 2002). On October 29, 2002, the court stayed the SEC enforcement action pending resolution of the related criminal proceedings against

the defendants, described below.

On September 23, 2002, the Rigas Defendants, James Brown, and Michael Mulcahey were indicted in the Southern District of New York on criminal charges related to their conduct at Adelphia, including charges of wire fraud, securities fraud, and conspiracy. While Mr. Brown pleaded guilty to several charges in November, 2002, the criminal proceedings are ongoing against the remaining defendants. Count I of the 24-count indictment contains issues and allegations similar to those in the instant private securities suits, including allegations that the Rigas Defendants improperly co-mingled [*4] funds, engaged in self-dealing, and failed to disclose co-borrowing arrangements that ultimately resulted in Adelphia understating its liabilities by approximately $3 billion. See Argent/Eminence Pls.' Compl. at PP29-33, 44, 46; Indictment, United States v. Rigas, No. Crim.A. 02-1236, at PP 16-21, 73-91.

On September 27, 2002, this Court issued an order (Docket No. 72) which: (1) stayed the consolidated action and placed it on the Civil Suspense Docket; and (2) denied all pending motions with leave to renew. Subsequent to this order, the Argent/Eminence Plaintiffs petitioned the United States Court of Appeals for the Third Circuit, requesting a writ of mandamus requiring this Court to lift the stay. On December 26, 2002, the Third Circuit denied the petition, stating that "the proper course is for plaintiffs to file a motion to reconsider the stay ... We are confident the District Court will review this matter and set forth its reasons for granting or denying the stay." In Re Eminence Capital LLC, No. 02-3889, at 1 (3d Cir. Dec. 26, 2002). As a result of this ruling, Plaintiffs filed the instant motions.

**II. LEGAL STANDARD**

"The standards controlling a motion [*5] for reconsideration are set forth in Federal Rule of Civil Procedure 59(e) and Local Rule of Civil Procedure 7.1." Vaidya v. Xerox Corp., 1997 U.S. Dist. LEXIS 18548, No. Civ. A. 97-547, 1997 WL 732464, at *1 (E.D. Pa. Nov. 25, 1997). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)). Therefore, a court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." Drake v. Steamfitters Local Union No. 420, 1998 U.S. Dist. LEXIS 13791, No. Civ. A. 97-585, 1998 WL 564886, at *3 (E.D. Pa. Sept. 3, 1998) (citing Smith v. City of Chester, 155 F.R.D. 95, 96-97 (E.D. Pa. 1994)).

**III. DISCUSSION**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition [*6] of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936) (citing Kansas City Southern R. Co. v. United States, 282 U.S. 760, 763, 51 S. Ct. 304, 305-6, 75 L. Ed. 684 (1931)); see also Texaco, Inc. v. Borda, 383 F.2d 607, 608 (3d Cir. 1967) (quoting same). Thus, the decision to stay civil proceedings calls for the trial court, in its discretion, to balance the various interests of the parties, the court, and the public. Landis, 299 U.S. at 254-56. In the instant motions, Plaintiffs argue that this Court abused its discretion by failing to give adequate weight to the Plaintiffs' interests. See Argent/Eminence Pls.' Mem. at 3-4; Pension Fund Pls.' Mem. at 3.

In this case, the Court based its stay order on two parallel proceedings directly affecting the instant private securities suits: (1) the ongoing criminal case in the Southern District of New [*7] York; and (2) Adelphia's pending bankruptcy petition. The impact of each action on the consolidated securities cases is discussed in turn below.

**A. Related Criminal Proceedings**

As noted above, the Rigas Defendants in this suit are currently under indictment in the Southern District of New York for engaging in allegedly fraudulent conduct that contributed to Adelphia's collapse. In deciding whether to stay a civil case pending the resolution of a related criminal case, courts consider many factors, including: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. Walsh Securities, Inc. v. Cristo Prop. Mgmt, Ltd., 7 F. Supp. 2d 523 (D.N.J. 1998) (citing Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995)); see also Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56 (E.D. Pa. 1980) [*8] (listing similar factors). Each

of these factors is discussed in turn below.

*1. Similarity of Issues*

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. Walsh Securities, 7 F. Supp. 2d at 527 (quoting Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989) ("Parallel Proceedings")). The consolidated Adelphia securities actions have a significant overlap of issues with the Rigas Defendants' criminal case. For example, both cases allege that the Rigas Defendants made material omissions and misstatements regarding certain co-borrowing arrangements, which were used by the Rigas Defendants to purchase Adelphia stock. Moreover, both cases allege that the Rigas Defendants improperly commingled funds and used Adelphia assets for their own purposes. The Court finds that these overlapping issues are integral to both the civil and criminal cases. Accordingly, this factor weighs heavily in favor of granting the stay.

*2. Stage of Related Criminal Proceedings*

In determining whether to grant [*9] a stay, a court must also consider the status of the related criminal proceedings, which can have a substantial effect on the balancing of the equities. If criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved. Parallel Proceedings, 129 F.R.D. at 203 (citing SEC v. Dresser Indus., Inc., 202 U.S. App. D.C. 345, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)); see also Walsh Securities, 7 F. Supp. 2d at 527-28. Civil defendants subject to criminal indictment face a significant risk of self-incrimination during the civil discovery process. Walsh Securities, 7 F. Supp. 2d at 527 (citing Parallel Proceedings, 129 F.R.D. at 203). Moreover, the indicted defendants risk exposing their criminal defense strategy during civil discovery. Id. Additionally, the burden of delay on the civil litigants is minimal because the Speedy Trial Act requires prompt resolution of the related criminal proceedings. Id. In contrast, because there is less risk of self-incrimination and greater burdens [*10] imposed by the delay, stays are rarely granted at the pre-indictment stage. See State Farm Mut. Auto. Ins. Co. v. Beckham-Easley, 2002 U.S. Dist. LEXIS 17896, No. Civ.A. 01-5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002). But see Walsh Securities, 7 F. Supp. 2d at 527-28 (granting temporary stay at pre-indictment stage).

In this case, indictments were returned against several of the civil defendants on September 23, 2002. Because the civil and criminal issues are so closely intertwined, the Court finds that these defendants face a substantial risk of self-incrimination if the civil cases are allowed to proceed. In addition to the Fifth Amendment problems, the defendants risk exposing their criminal defense strategies to the government and to their co-defendants. Thus, this factor weighs strongly in favor of staying the consolidated securities actions pending resolution of the related criminal proceedings.

*3. Prejudice to the Plaintiff*

In evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim. Golden Quality Ice Cream, 87 F.R.D. at 56. [*11] Instead, the plaintiff should demonstrate a particularly unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay. Beckham-Easley, 2002 U.S. Dist. LEXIS 17896, 2002 WL 31111766, at *3; Walsh Securities, 7 F. Supp. 2d at 528.

In their filings, Plaintiffs primarily argue that they are prejudiced by the stay because a Lead Plaintiff and Lead Counsel have not yet been appointed to manage the consolidated actions. The Pension Fund Plaintiffs argue that, without Lead Counsel, Plaintiffs do not "have someone with authority to speak for them in this litigation." See Pension Fund Pls.' Mem. at 3. Similarly, the Argent/Eminence Plaintiffs assert that stay order deprives "tens of thousands of purchasers of Adelphia securities ... of representation" and prevents Plaintiffs from making important strategic decisions regarding the course of this litigation. See Argent/Eminence Pls.' Mem. at 2-3. Finally, both sets of Plaintiffs implicitly assert that the stay order is counter to Congressional intent in enacting the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"). See Id.; Pension [*12] Fund Pls.' Mem. at 3. In their filings, Plaintiffs point out that Congress gave Lead Plaintiffs and Lead Counsel important roles in shaping the strategic direction of securities class action suits. Id. It follows, Plaintiffs argue, that staying the proceedings before making these appointments is counter to the scheme envisioned by Congress in the Act. Id.

The Court finds that Plaintiffs have failed to demonstrate sufficient prejudice to warrant reconsideration of the stay in this case. First, Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to support vacating the stay. See Walsh Securities, 7 F. Supp. 2d at 528. For example, Plaintiffs point to no evidence that Defendants are intentionally liquidating assets or otherwise trying to gain an advantage during the delay. Contra Beckham-Easley, 2002

U.S. Dist. LEXIS 17896, 2002 WL 31111766, at *3 (finding the defendants' willful assets transfers militated against stay). Second, the lack of a Lead Plaintiff or Lead Counsel does not prevent the individual plaintiffs and their respective counsel from making the kinds of strategic decisions, such as intervention in other suits, [*13] described by Plaintiffs in their filings. Finally, nothing in the PSLRA indicates that Congress intended for private securities actions to proceed during related criminal proceedings. While the Court agrees that Congress gave Lead Plaintiffs and Lead Counsel important roles in shaping the strategic direction of securities class actions, the legislative record does not reveal an intent to limit a Court's inherent discretion to control its own docket. Accordingly, because the Court finds that Plaintiffs are not prejudiced by the delay resulting from the stay, this factor militates in favor of the stay.

*4. Burden on the Defendants*

As noted above, civil defendants subject to a criminal indictment must often choose between waiving their Fifth Amendment rights during civil discovery or asserting the privilege and losing the civil case. Walsh Securities, 7 F. Supp. 2d at 528. While it is not unconstitutional to place a defendant in this position, see Baxter v. Palmigiano, 425 U.S. 308, 318-19, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976), courts may consider these conflicts when deciding whether to stay a civil case. Dresser Indus., 628 F.2d at 1375; [*14] Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 577-78 (S.D.N.Y. 2001).

In this case, the Court finds that Defendants potentially face a significant burden if the civil cases are allowed to go forward. As noted above, because the Rigas Defendants are already under criminal indictment in a case concerning identical allegations and issues, they face substantial risks of self-incrimination. Moreover, Defendants also may be forced to reveal their criminal defense strategies if the case is allowed to proceed.

Finally, the unindicted civil defendants also face prejudice unless the civil proceedings are stayed. The Rigas Defendants are the key figures in both the civil and criminal cases. See Volmar Distribs., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 41 (S.D.N.Y. 1993). Because their actions lie at the center of the civil cases, their testimony and documents will be essential to resolving those cases. Id. Staying the civil cases pending resolution of the criminal proceedings will preclude the Rigas Defendants from invoking the Fifth Amendment privilege during the civil cases. Id. If a stay is not issued, then remaining [*15] Defendants, who are not protected by the Fifth Amendment, may not be able to adequately defend themselves. Accordingly, this factor weighs in favor of staying the civil proceedings.

*5. Interest of the Court*

The Court has an interest in efficiently managing its caseload. Beckham-Easley, 2002 U.S. Dist. LEXIS 17896, 2002 WL 31111766, at *3. In this case, granting a stay promotes judicial efficiency. First, without a stay, the civil defendants will likely assert their Fifth Amendment rights, causing the court to decide a number of privilege issues during civil discovery. In contrast, if the civil actions are stayed until the conclusion of the criminal proceedings, then these rulings will no longer be necessary. Walsh Securities, 7 F. Supp. 2d at 528. Moreover, if the indicted defendants assert the privilege throughout the litigation, then it will be "difficult or impossible to fairly apportion liability because of the differing factual record among the defendants." Id. at 528-29. Additionally, criminal convictions against any of the civil defendants will likely encourage them to settle the civil suits, thereby eliminating the need to litigate some [*16] issues in the civil cases. Thus, staying the civil actions preserves judicial resources and streamlines some of the complexities of the consolidated securities actions. As a result, this factor weighs in favor of staying the civil actions.

*6. Public Interest*

The public interest is not harmed by staying the civil action. In their filings, Plaintiffs argue that the public interest in protecting the integrity of the securities markets militates in favor of letting the civil action proceed. See Pension Fund Pl.'s Mem. at 3. While the Court agrees that the public has a strong interest in protecting capital markets, the related criminal proceedings serve to advance those same interests. Volmar Distribs., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 40 (S.D.N.Y. 1993) (citing Brock v. Tolkow, 109 F.R.D. 116, 121 (E.D.N.Y. 1985)). Accordingly, the public interest may be served by staying the civil cases pending resolution of the criminal proceedings. As a result, this factor militates in favor of staying the consolidated civil cases.

*7. Balancing the Equities*

On balance, the factors listed above support staying the consolidated [*17] civil cases pending resolution of the criminal proceedings. While the Court appreciates that the delay will cause some inconvenience to Plaintiffs, this prejudice is outweighed by the other factors supporting the stay.

**B. Related Bankruptcy Proceedings**

The Court also based its stay order on the pendency of Adelphia's bankruptcy proceedings. The stay is inde-

pendent of the automatic stay provision of § 362(a) of the Bankruptcy Code, which applies only to the debtor-defendant in this case, Adelphia. Rather, the stay is based on the Court's inherent power to control its docket. Landis, 299 U.S. at 254-55. Under circumstances such as those present in this case, courts may stay civil proceedings against non-debtor defendants that are not subject to the Bankruptcy Code's automatic stay provision. In re the Loewen Group, Inc. Sec. Litig., 2001 U.S. Dist. LEXIS 6482, No. Civ.A. 98-6740, 2001 WL 530544, at *1-3 (E.D. Pa. May 16, 2001); Smith v. Dominion Bridge Co., 1999 U.S. Dist. LEXIS 2131, No. Civ.A. 96-7580, 1999 WL 111465 (E.D. Pa. March 2, 1999).

In Loewen Group, a series of securities class actions were filed against Loewen, alleging, inter alia, that the company [*18] inflated profits in its securities filings. 2001 U.S. Dist. LEXIS 6482, 2001 WL 530533, at *1. While these class actions were pending, Loewen filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Id. The court, sua sponte, placed the consolidated class actions in civil suspense pending the resolution of the bankruptcy proceedings. Id. In response, the plaintiffs filed motions to remove the cases from the suspense calendar and allow them to proceed against the non-debtor defendants. Id.

The court, applying four factors listed in Dominion Bridge, denied the motion to reconsider the stay. In denying the motion, the court considered the following factors: (1) plaintiff's interest in having a forum and whether a satisfactory alternative forum exists; (2) whether the defendant may wish to avoid multiple litigation or inconsistent relief for liability shared with third parties; (3) the extent to which judgment may impede the debtor-party's ability to protect its interest; and (4) the interest of the courts and the public in the consistent and efficient settlement of controversies. Loewen Group, 2001 U.S. Dist. LEXIS 6482, 2001 WL 530544, at *1 (citing Dominion Bridge, 1999 U.S. Dist. LEXIS 2131, 1999 WL 11465, at *4). [*19] Application of the factors to this case demonstrates that the consolidated civil actions should be stayed pending resolution of Adelphia's bankruptcy petition.

Regarding the first factor, the consolidated securities actions have merely been placed in suspense. Thus, Plaintiffs retain this Court as the forum to adjudicate their securities claims. Accordingly, this factor weighs in favor of staying the consolidated securities actions. Accord Loewen Group, 2001 U.S. Dist. LEXIS 6482, 2001 WL 530544, at *1; Dominion Bridge, 1999 U.S. Dist. LEXIS 2131, 1999 WL 11465, at *4.

Regarding the second and fourth factors, the Court, the public, and the parties all have an interest in the efficient resolution of both the civil and the bankruptcy claims. The Court finds that this interest is best served by staying the consolidated civil actions as to all defendants, not just Adelphia, pending resolution of Adelphia's bankruptcy petition. As in Loewen, the securities actions in this case will require significant and burdensome discovery on the part of the debtor-defendant, Adelphia. 2001 U.S. Dist. LEXIS 6482, 2001 WL 530544, at *3. Thus, it will be difficult, if not impossible, to proceed against the non-debtor defendants [*20] without substantial involvement by Adelphia. Id. Accordingly, these factors militate towards staying the consolidated securities actions.

Finally, regarding the third factor, because many of the individual defendants were officers of Adelphia and the claims against them arise out of their conduct at the company, Adelphia cannot adequately protect its interests if the civil actions are allowed to proceed without Adelphia's involvement. In Loewen, the Court found that, because the claims against the individual defendants were based upon actions taken as officers of the debtor-defendant, the plaintiffs could not "meaningfully separate the actions of the company from the actions of its officers and directors." Loewen Group, 2001 U.S. Dist. LEXIS 6482, 2001 WL 530544, at *3. See also Loewen Group, 2001 U.S. Dist. LEXIS 6482, 2001 WL 530544, at *4 (extending stay to non-debtors where "there is such identity between the debtor and third-party that the debtor may be said to be the real party defendant"). As a result, an action solely against the non-debtor defendants risked unnecessary duplication of issue and inconsistent relief.

Similarly, in this case, proceeding against the individual defendants [*21] risks subjecting Adelphia to duplicative and inconsistent litigation. For example, if Plaintiffs are allowed to proceed against the individual defendants, Adelphia risks being collaterally estopped from relitigating issues decided in Plaintiffs' favor based on the Adelphia officers' actions. Accord Loewen Group, 2001 U.S. Dist. LEXIS 6482, 2001 WL 530533, at *3. Thus, this factor also supports staying the civil actions until the conclusion of Adelphia's bankruptcy proceedings so that Adelphia may adequately represent its interests. Therefore, all four factors discussed in Loewen Group and Dominion Bridge militate in favor of staying the civil cases as to all defendants.

**IV. CONCLUSION**

Based on the foregoing discussion, the Court finds that its stay order, dated September 6, 2002, is adequately supported by precedent. Accordingly, Plaintiffs fail to demonstrate that the Court committed a clear error

of law by staying these civil cases. Plaintiffs' Motions for Reconsideration are denied.

An appropriate Order follows.

**ORDER**

AND NOW, this 13th day of May, 2003, upon consideration of Plaintiffs' Motions for Reconsideration (Docket Nos. 84 & 88), IT IS HEREBY ORDERED [*22] that Plaintiffs' Motions are **DENIED.**

BY THE COURT:

HERBERT J. HUTTON, J.




LexisNexis™ LexisNexis™ LexisNexis™

# EXHIBIT 2

## To Reply Brief in support of
## Defendant Rajesh Soin's Motion To Stay

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**v.**
**Gloria BECKHAM-EASLEY, et al.**
**No. CIV.A. 01-5530.**

Sept. 18, 2002.

Automobile insurer brought fraud and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against various insureds and third parties. On defendants' motion to stay pending disposition of criminal proceedings, the District Court, Hutton, J., held that stay was not warranted.

Motion denied.

West Headnotes

**Action ⚷ 69(5)**
13k69(5) Most Cited Cases
Stay of automobile insurer's fraud and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against various insureds and third parties, pending disposition of criminal proceedings, was not warranted; defendants had not yet been indicted, and delay would potentially prejudice insurer.

*MEMORANDUM AND ORDER*

HUTTON, J.

***1** Presently before the Court is the Defendant's Motion to Stay Civil Discovery Pending Criminal Proceedings (Docket Nos. 35, 36, 42).

I. *BACKGROUND*

On November 1, 2001, Plaintiff State Farm filed an initial complaint, alleging diversity of citizenship and damages in excess of $75,000 against Defendants. This suit arises from an alleged staged car accident, which resulted in the submitting of phony medical bills and reports in order to obtain payment from Plaintiff on behalf of Defendants and their patients. On January 4, 2002, defendants Center City Medical, Strawberry Mansion, Joseph Davidson and Phyllis Davidson filed a Motion to Dismiss. On May 6, 2002, Plaintiff filed a Motion to Amend the Complaint. Upon the Court granting this motion, Plaintiffs filed an Amended Complaint, adding several Defendants and adding a cause of action under RICO, 18 U.S.C. §§ 1962(c) and 1964(c). Defendants' Motion to Dismiss was subsequently denied as moot.

The United States Attorney's office is currently investigating two defendants, Joseph Davidson, D.C. and Brian Torchin, D.C., to whom target letters were sent. Neither the scope nor the particular issues surrounding the investigation are known. Moreover, there have been no criminal indictments. No other Defendants are subject to this investigation.

On June 20, 2002, defendants filed a Motion to Stay Civil Discovery Pending Disposition of Criminal Proceedings. Plaintiffs filed a Motion asking this Court to Deny the Stay.

II. *DISCUSSION*

It is within the discretion of the court to grant a stay when justice so requires. *See Walsh Securities, Inc. v. Cristo Property Management, LTD.,* 7 F. Supp 2d. 523, 526 (citing *United States v. Kordel,* 387 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Texaco, Inc. v. Borda,* 383 F.2d 607,608 (3d Cir.1967) (quoting *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)); *see also Saunders v. City of Philadelphia,* No. 97-3251, 1997 WL 400034 (E.D.Pa. July 11, 1997).

A stay of a civil case is an "extraordinary remedy." *Walsh Securities, Inc.,* 7 F. Supp 2d. at 526 (quoting *Weil v. Markowitz,* 829 F.2d 166, 174 n. 17 (D.C.Cir.1987)). The factors a court must consider in determining whether to grant a stay include: 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on the defendants; 5)the interest of the court; and 6) the public interest. *Walsh Securities, Inc.*, 7 F.Supp. at 526- 27; *see also Golden Quality Ice Cream Co. v. Deerfield Specialty Papaers*, 87 F.R.D. 53, 56 (E.D.Pa.1980).

A. *Similarity of Issues*

*2 The degree to which issues in simultaneous civil and criminal proceedings overlap is considered the most important threshold issue when determining whether or not to grant a stay. *Walsh Securities, Inc.*, 7 F. Supp 2d. at 527 (citing Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). There are no criminal proceedings pending in the instant case. The defense simply asserts that the "complaint is similar to allegations currently under investigation by an investigating Grand Jury." The only information concerning the issues under investigation is derived from target letters received by two defendants. [FN1] Moreover, most of the Defendants who have joined in this motion to stay have yet to file an answer. The absence of an indictment coupled with the fact that this Court does not have an answer before it, impedes the Court's ability to discern the extent to which the legal and factual issues in the instant case are related to those under investigation. *See C3, Inc. v. The United States*, 4 Cl.Ct. 790, 792 (1984) (requiring defendants to file an answer to determine the extent to which issues overlap). Consequently, the first factor weighs in favor of denying the stay.

FN1. The defense asserts that Defendants Joseph Davidson, Brian Torchin, D.C., and Christopher Boucher, D.C., have received target letters and that they are defendants in both actions. Plaintiffs' brief only refers to Davidson and Torchin as recipients of such letters. This discrepancy is moot as the Court granted Plaintiff's Motion for Judgment of Default against Defendant Boucher.

B. *State of Parallel Criminal Proceedings*

A court is most likely to grant a stay of civil proceedings where an indictment has been returned. The potential for self-incrimination is the greatest at this stage. Moreover, because the Speedy Trial Act requires the swift resolution of criminal trials, the burdens of delay on the civil litigant is lessened. *See Walsh Securities, Inc.*, 7 F.Supp. at 527. Conversely, because the risk of self-incrimination is reduced at the pre-indictment stage, and because of the uncertainty surrounding when, if ever, indictments will be issued, as well as the effect of the delay on the civil trial, pre-indictment requests for a stay are typically denied. *Walsh Securities, Inc.*, 7 F.Supp. at 527 (citing *United States v. Private Sanitation Indus. Ass'n*, 811 F.Supp. 802, 805 (E.D.N.Y.1992)). When a defendant filing a motion to stay has not been indicted, the motion may be denied on that ground alone. *United States of America v. Private Sanitation Industry Association of Nassau/Suffolk, Inc.*, 811 F.Supp. 802 (2nd Cir.1992); *see also S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C.Cir.1980) (holding that the purpose of staying civil proceedings pending criminal proceedings is far weaker when no indictment has been issued).

In the instant case, no indictments have been issued. Only two Defendants, Joseph Davidson and Brian Torchin, D.C. have received target letters. Accordingly, this factor weighs in favor of the plaintiff.

C. *Prejudice to the Plaintiff*

*3 The Court may insist that the Plaintiff establish more "prejudice" than simply "the right to pursue his case and vindicate his claim expeditiously. *See, e.g., Golden Quality Ice Cream Co.*, 87 F.R.D. at 56. Courts have noted, however, that "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling National Bank v. A-1 Hotels International, Inc.*, 175 F. Supp 2d. 573, 575 (2nd Cir.2001). [FN2] Defendants anticipate that an indictment will be issued within 120 days from the filing of this Motion to stay. As of yet, 80 days later, there is no stronger indication that an indictment will be issued. The indefiniteness surrounding the criminal investigation places a burden on the plaintiffs.

FN2. *See also Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y.1980) (stating that because the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



"defendant's conduct also resulted in a criminal charge against him should not be availed of him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim").

The threat of the dissipation of assets during a stay has been recognized as a substantial burden for plaintiffs. *See Citibank, N.A., v. Hakim,* No. 92 CIV. 6233, 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993). Here, the Plaintiffs assert that "defendants have sold real estate since the pendency of this action, have liquidated other assets, have transferred assets outside the country and have placed assets in the names of other individuals and/or entities" in anticipation of a verdict against them. Such actions would prevent the Plaintiff from having any meaningful recovery in the event that there is a judgement in their favor. As such, the prejudice to the plaintiff in this case is great.

D. *Burden on Defendants*

When there are simultaneous criminal and civil proceedings, the defendant faces the difficult choice of asserting his Fifth Amendment rights at the risk of losing a civil trial, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself. *See Walsh Securities, Inc.*, 7 F.Supp. at 528. The Supreme Court, however, has held that it is not unconstitutional to place defendants in this position. *See Baxter v. Palmigiano,* 425 U.S. 308, 318-319, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). At the pre-indictment stage, while many risks to the civil defendant are present, such risks are more remote than for an indicted defendant, making it "inherently unclear to the Court just how much the unindicted defendant really has to fear." *Sterling National Bank,* 175 F.Supp.2d at 577. Where civil defendants are not subject to criminal charges, therefore, the "inappropriateness of a stay is manifest." *In re Mid-Atlantic Toyota antitrust Litigation,* 92 F.R.D. 358, 360 (D.Md.1981).

E. *Interest of the Court*

The Court has an interest in managing its caseload with efficiency. *Walsh Securities, Inc.*, 7 F.Supp. at 528. This case is shrouded with uncertainty as there is no way to predict when, if ever, the criminal investigation will ripen into an indictment or end without one. This "limbo" status weighs against a stay as "it is unrealistic to postpone indefinitely the pending action until criminal charges are brought or the statute of limitations has run for all crimes conceivably committed by" the defendants. *Hakim,* 1993 WL 481335 at * 2.

F. *Public Interest*

*4 There is a public interest in having financial institutions promptly recover misappropriated funds, especially when weighed against the interests of defendants facing speculative criminal charges. *See Hakim,* 1993 WL 481335 at * 2. This is especially true in the instant case, as the cost of insurance fraud is eventually taken on by the public.

III. *CONCLUSION*

For the foregoing reasons, the Defendant's motion is DENIED. An appropriate order follows.

*ORDER*

AND NOW, this 18TH day of September, 2002 upon consideration of Defendants' Motion to Stay Civil Discovery Pending Disposition of Criminal Proceedings (Docket No. 35, 36, 42), and Plaintiff's Response to Defendant's Motion to Stay Civil Discovery Pending Disposition of Criminal Proceedings (Docket No. 38), IT IS HEREBY ORDERED that the Defendants' Motion is DENIED.

The Court further ORDERS that in light of the denial of Defendants' Motion to Stay, Defendants Trina Ahmad and Sean Ahmad have 20 days to file an Answer to Plaintiff's Amended Complaint.

2002 WL 31111766 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. **2:01CV05530 (Docket) (Nov. 01, 2001)**

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

