# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FTR CONSULTING, INC., derivatively on behalf of MTC TECHNOLOGIES, INC. | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 05-00008 (KAJ) |
| v. | ) ) | |
| RAJESH K. SOIN, VISHAL SOIN, AMOL SOIN, INDU SOIN and MTC TECHNOLOGIES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Richard L. Horwitz (#2246)
Melony R. Anderson (#4377)
Kirsten A. Lynch (#4573)
POTTER ANDERSON & CORROON LLP

Of Counsel:

Geoffrey J. Ritts
Salim A. Kafiti
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939
Fax: (216) 579-0212

Dated: October 11, 2005

Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
Fax: (302) 658-1192
rhorwitz@potteranderson.com
manderson@potteranderson.com
klynch@potteranderson.com

Attorneys for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ..........................................................................................................1

SUMMARY OF ARGUMENT.........................................................................................2

STATEMENT OF FACTS ..............................................................................................4

ARGUMENT.................................................................................................................6

    I.      STANDARD OF REVIEW ......................................................................6

    II.     AMENDED RULE 16B-3 APPLIES TO THIS CASE..............................6

          A.     The Recent Amendments To Rule 16b-3 Are
               Clarifying In Nature..................................................................6

          B.     The SEC's Clarifying Amendments Apply
               Retroactively To
               Transactions That Occurred Before Their Adoption.......................9

    III.    THE SEC'S VIEW AS TO THE MEANING OF THE PRE-
          AMENDMENT VERSION OF RULE 16B-3 IS CONTROLLING
          HERE.....................................................................................12

          A.     The Plain Language of Rule 16b-3 Does Not
               Compel A Different Result.........................................................13

          B.     The Third Circuit Opinion In *Levy* Does Not
               Reduce The Deference To Which The SEC's
               Interpretations Are Due ............................................................16

          C.     Rule 16b-3 Plainly Falls Within The SEC's Rule-
               Making Authority Under Section 16(b).........................................19

          D.     The Only Conditions Required By Rule 16b-3 For
               Exemption From Section 16(b) Liability Are
               Satisfied Here.........................................................................22

CONCLUSION.............................................................................................................24

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AT&T Corp. v. Portland*,
216 F.3d 871 (9th Cir. 2000) ..............................................................................17

*Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*,
93 F.3d 103 (3d Cir. 1996) ..................................................................................10

*Auer v. Robbins*,
519 U.S. 452 (1997)..............................................................................................12

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)..............................................................................................10

*Bowles v. Seminole Rock & Sand Co.*,
325 U.S. 410 (1945)..............................................................................................12

*Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*,
467 U.S. 837 (1984)..........................................................................................20, 21

*Chong v. District Dir., INS*,
264 F.3d 378 (3d Cir. 2001) ............................................................................12, 13

*Clay v. Johnson*,
264 F.3d 744 (7th Cir. 2001) .............................................................................9, 10

*Dewitt v. Penn-Del Directory Corp.*,
872 F. Supp. 126 (D. Del. 1994)............................................................................6

*Director, Office of Workers' Comp. Programs v. East Associated Coal Corp.*,
54 F.3d 141 (3d Cir. 1995) ........................................................................12, 13, 18

*Dreiling v. American Express Travel Related Servs. Co.*,
351 F. Supp. 2d 1077 (W.D. Wash. 2004) ...........................................................15

*Farmers Tel. Co. v. FCC*,
184 F.3d 1241 (10th Cir. 1999) ...........................................................................10

*First Nat'l Bank v. Standard Bank & Trust*,
172 F.3d 472 (7th Cir. 1999) .............................................................................9, 10

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
　　423 U.S. 232 (1976)..................................................................................................19, 20

*Gryl v. Shire Pharms. Group PLC*,
　　298 F.3d 136 (2d Cir. 2002),
　　*cert. denied*, 537 U.S. 1191 (2003).......................................................................15

*Heimmermann v. First Union Mortgage Corp.*,
　　305 F.3d 1257 (11th Cir. 2002),
　　*cert. denied*, 539 U.S. 970 (2003).............................................................9, 10, 17

*Homemakers N. Shore, Inc. v. Bowen*,
　　832 F.2d 408 (7th Cir. 1987) ...................................................................16, 17, 19

*Indeck Me. Energy, L.L.C. v. ISO N. Eng. Inc.*,
　　167 F. Supp. 2d 675 (D. Del. 2001)........................................................................23

*Kern County Land Co. v. Occidental Petroleum Corp.*,
　　411 U.S. 582 (1973)..................................................................................................19, 20

*Levy v. Southbrook Int'l Invs., Ltd.*,
　　263 F.3d 10 (2d Cir. 2001) ...................................................................................12

*Levy v. Sterling Holding Co., LLC*,
　　314 F.3d 106 (3d Cir. 2002),
　　*cert. denied*, 540 U.S. 947 (2003)..................................................................*passim*

*Levy v. Sterling Holding Co., LLC*,
　　No. 00-994 (GMS), 2004 WL 2251268 (D. Del. Sept. 27, 2004) ...............2, 16, 19

*Manhattan Gen. Equip. Co. v. Commissioner*,
　　297 U.S. 129 (1936)................................................................................................10

*Martin v. OSHRC*,
　　499 U.S. 144 (1991)................................................................................................12

*National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
　　125 S. Ct. 2688 (2005).....................................................................................17, 18, 19

*Orr v. Hawk*,
　　156 F.3d 651 (6th Cir. 1998) ...............................................................................10

*Samuelson v. Mid-Atl. Realty Co.*,
　　947 F. Supp. 756 (D. Del. 1996) ........................................................................6

*Smiley v. Citibank, N.A.*,
　　517 U.S. 735 (1996) ..........................................................................3, 10, 18

*Stampone v. Freeman Decorating Co.*,
　　No. Civ. A. 04CV4241, 2005 WL 2216977 (D.N.J. Sept. 12, 2005) ...................23

*Stinson v. United States*,
　　508 U.S. 36 (1993) ...........................................................................................11

*Thomas Jefferson Univ. v. Shalala*,
　　512 U.S. 504 (1994) ............................................................................12, 13, 14

*United States v. Joshua*,
　　976 F.2d 844 (3d Cir. 1992) ........................................................................17, 18

*United States v. Marmolejos*,
　　140 F.3d 488 (3d Cir. 1998) ..........................................................................9, 11

*United States v. Mead Corp.*,
　　533 U.S. 218 (2001) ........................................................................................20, 22

## STATUTES & RULES

Securities Exchange Act of 1934

　　§ 16(b), 15 U.S.C. § 78p(b) ..............................................................................4, 20

Fed. R. Civ. P. 12(b)(6) ...........................................................................................6, 23

SEC Rule 16b, 17 C.F.R. § 240.16b

　　17 C.F.R. § 240.16b ......................................................................................*passim*

　　17 C.F.R. § 240.16b-3 ...................................................................................*passim*

　　17 C.F.R. § 240.16b-3(d) ...............................................................................*passim*

　　17 C.F.R. § 240.16b-7 ........................................................................2, 7, 11, 16

# REGULATIONS

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* 61 Fed. Reg. 30,376 (June 14, 1996) ......................................................14

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* 69 Fed. Reg. 35,982 (June 24, 2004) .......................................................8

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* 70 Fed. Reg. 46,080 (Aug. 9, 2005) ...............................................*passim*

# MISCELLANEOUS AUTHORITY

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Exchange Act Release No. 34-37260, 62 SEC Docket 138, 1996 WL 290234 (May 31, 1996) .......................................................................................21

*Skadden, Arps, Slate, Meagher & Flom LLP, SEC No-Action Letter,* 1999 WL 11540 (Jan. 12, 1999) .......................................................................7, 14

Peter J. Romeo & Alan L. Dye, *Comprehensive Section 16 Outline* § IV(A)(3) (June 2005) ...............................................................................................22

Memorandum of SEC, *Amicus Curiae,* in Support of Appellees' Petition for Rehearing or Rehearing *En Banc, Levy v. Sterling,* No. 02-1698 (3d Cir. Feb. 27, 2003) .............................................................................................7

## INTRODUCTION

On May 10, 2005, the Court stayed this case pending final action by the Securities and Exchange Commission (the "SEC") on proposed clarifying amendments to SEC Rule 16b-3.  *See* Order dated May 10, 2005 ("Stay Order") (D. I. 17).  That final action came in early August 2005, when the SEC adopted the amendments, substantially as proposed. *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 70 Fed. Reg. 46,080 (Aug. 9, 2005) ("Adopting Release").  In doing so, the SEC has removed any doubt that Rule 16b-3 completely disposes of all of plaintiff's claims in this case.

In the SEC's view, the complaint should be dismissed, with judgment entered in favor of the defendants.  The express language of Rule 16b-3 — the meaning of which is now made crystal clear by the SEC's Adopting Release — provides that the only "purchase" of securities alleged in the complaint is not a "purchase" at all within the meaning of the Rule.  The transaction at the heart of plaintiff's allegations — Vishal, Amol and Indu Soin's receipt of MTC Technologies, Inc. ("MTC") common stock when MTC acquired International Consultants, Inc. ("ICI"), a company wholly-owned by Vishal, Amol and Indu Soin, on October 1, 2003 — fits squarely within the exemption to Section 16(b) liability provided by Rule 16b-3(d)(1).  That rule provides that

> [a]ny transaction . . . involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:  The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors.

17 C.F.R. § 240.16b-3(d)(1).  Although plaintiffs have alleged that Section 16(b) applies because Rajesh Soin is a director of MTC and the alleged "purchase" of MTC securities by Vishal, Amol and Indu should be attributed to him, Rule 16b-3 exempts the issuance of stock in connection with MTC's acquisition of ICI from the scope of Section 16(b) because the acquisition was approved by MTC's board of directors in accordance with Rule 16b-3(d)(1).  (*See* Compl. ¶ 19) (D. I. 1).

The complaint alleges no other "purchase" of securities to match with Rajesh Soin's "sale" of securities on February 19, 2004 for purposes of Section 16(b) liability. Therefore, it fails to allege any grounds for liability under Section 16(b) — *i.e.*, a purchase and sale of securities by Rajesh Soin within a six-month period — so the complaint should be dismissed with prejudice.

## SUMMARY OF ARGUMENT

2.     In September 2004, Judge Sleet stayed a similar case pending the SEC's adoption of clarifying amendments to SEC Rules 16b-3 and 16b-7.  He expressly found that:

> If adopted, the proposed amendments to Rule 16b-3 will not limit the exemption to transactions that have some compensation-related aspect.  The only limitations will be the conditions set forth in 16b-3(d)(1)-(3).

*Levy v. Sterling Holding Co., LLC*, No. 00-994 (GMS), 2004 WL 2251268, at *2 (D. Del. Sept. 27, 2004) (attached hereto as Exhibit A).[1]  This Court then followed suit, staying the present case because "the SEC's proposed *clarifying amendment to Rule 16b-3 is*

---

[1] All unreported cases cited in this memorandum are attached in alphabetical order at composite Exhibit A.

likely to be of significant relevance to the issues in dispute in this case."  Stay Order (emphasis added).

       3.     This Court's characterization of the amended version of Rule 16b-3 as clarifying is correct.  In a 2002 opinion, the Third Circuit found the pre-amendment version of the rule less than perfectly clear.  *See Levy v. Sterling Holding Co*., LLC, 314 F.3d 106, 112-13, 122-24 (3d Cir. 2002), *cert. denied*, 540 U.S. 947 (2003).  The SEC, in direct response to the Third Circuit's opinion, then clarified the meaning of the rule, first in an *amicus* brief, and later by amending the text of Rule 16b-3 itself.  The SEC's actions make unequivocally clear what the rule has meant all along — that exemption under Rule 16b-3 is not limited to transactions that have a compensatory purpose.

       4.     The amended version of Rule 16b-3 is consistent with the SEC's statements — in adopting releases, the *amicus* brief, and elsewhere — regarding the meaning it intended the pre-amendment version of the rule to have.  A comparison of the pre- and post-amendment versions of the rule makes clear that the amended version does no more than clarify what the rule has said all along.

       5.     Because the amendment does not change the law, but rather clarifies what it was before, it is properly applied to transactions occurring before its adoption.  Indeed, "[w]here . . . a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement."  *Smiley v. Citibank, N.A.*, 517 U.S. 735, 744 n.3 (1996).  In adopting the amendments to SEC Rule 16b-3, the

SEC expressly stated that, "because they clarify regulatory conditions that applied to these exemptions since they became effective on August 15, 1996, they are available to any transaction on or after August 15, 1996 that satisfies the regulatory conditions so clarified." Adopting Release, 70 Fed. Reg. at 46,080. Thus, the amendments apply to the transaction at issue in this case.

6.      One need not look any further than the clear language of the amended version of Rule 16b-3 to see that the rule exempts the transaction in this case. The clarified version of the rule, adopted to remove any ambiguity as to the rule's meaning, is conclusive and controlling.

## <u>STATEMENT OF FACTS</u>

This is a case brought under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), by FTR Consulting, Inc. ("FTR"), as a shareholder of nominal defendant MTC. FTR claims that defendant Rajesh Soin was an insider of MTC, "purchased" MTC common stock on or about October 1, 2003 and sold MTC common stock less than six months later in violation of Section 16(b).

Importantly, the only "purchase" of securities alleged in the complaint involves MTC's October 1, 2003 acquisition of ICI, a company wholly-owned by defendants Vishal, Amol and Indu Soin, in exchange for shares of MTC common stock. (*See* Compl. ¶¶ 11-17). The complaint alleges that the MTC common stock received by Vishal, Amol and Indu in connection with the acquisition of ICI constituted a "purchase" of securities by Rajesh Soin. (*See* Compl. ¶¶ 11-17). The Complaint asserts that "Rajesh is deemed to be the beneficial owner of all shares purchased by Amol and Vishal" (*id.*

¶ 17) and "the purchases of stock by Indu, Vishal and Amol are attributed to Rajesh . . . ." (*id.* ¶ 19). The Complaint alleges that, at the time of the transaction, Rajesh Soin was a director of MTC. (*See id.* ¶ 3).

The October transaction is exempted under Section 16(b), because it was approved by MTC's board of directors in accordance with Rule 16b-3(d)(1). Besides the October 1, 2003 transaction, there is no alleged "purchase" of securities to match with Rajesh Soin's alleged "sale" of MTC securities on February 19, 2004 for purposes of Section 16(b). (*See id.* ¶ 18). Because there was no "purchase" of MTC stock on October 1, 2003, Rajesh's February 2004 sale cannot give rise to liability and the complaint must be dismissed.

## ARGUMENT

### I.     STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded allegations of a complaint and views the facts in the light most favorable to the non-moving party.  *See Dewitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 128 (D. Del. 1994).  Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *See Samuelson v. Mid-Atl. Realty Co.*, 947 F. Supp. 756, 758-59 (D. Del. 1996).  The complaint in this case is fatally flawed, and dismissal is warranted, because it alleges no grounds for relief beyond those that are expressly exempted from Section 16(b) liability by Rule 16b-3.

### II.     AMENDED RULE 16B-3 APPLIES TO THIS CASE.

#### A.     The Recent Amendments To Rule 16b-3 Are Clarifying In Nature.

The history of Rule 16b-3 makes it clear that the recent amendments to Rule 16b-3 merely clarify the meaning it has had all along.  Both versions of the rule require dismissal of the complaint because ***both versions have exactly the same meaning***.

In *Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 114 (3d Cir. 2002), *cert. denied*, 540 U.S. 947 (2003), the Third Circuit held, *inter alia*, that Rule 16b-3(d) exemptions apply only to "'grants, awards, and other acquisitions' with some compensatory nexus," and refused defendants' petition for rehearing, despite an *amicus curiae* brief filed by the SEC to the contrary.  *Id.* at 124.  The SEC *amicus* brief stated that the Third Circuit had "misconstrued the Commission's intent, and . . . frustrated the

Commission's purpose, in adopting the rules."  Mem. of SEC, *Amicus Curiae*, in Supp. of
Appellees' Pet. for Reh'g or Reh'g *En Banc*, Feb. 27, 2003, *Levy v. Sterling*, No. 02-1698
(3d Cir.) at 4 (attached hereto as Exhibit B).  The SEC's *amicus* brief interpreted the *pre-amendment* version of Rule 16b-3 and explained that the availability of Rule 16b-3(d)
turned solely on the objective conditions set forth in the text of the rule; a link to a
"compensatory purpose" was not an additional, unstated requirement.  *See id.* at 4-7;
*accord Skadden, Arps, Slate, Meagher & Flom LLP*, SEC No-Action Letter, 1999 WL
11540, at *5 (Jan. 12, 1999) ("The acquisition of acquiror equity securities (including
acquiror derivative securities) by officers and directors of the acquiror through the
conversion of target equity securities in connection with a merger constitutes an
acquisition from the acquiror issuer eligible for exemption under Rule 16b-3(d).")
(attached hereto as Exhibit C).

Then, on June 21, 2004, the SEC proposed clarifying amendments to Rule 16b-3
in direct response to the Third Circuit's opinion in *Levy*.  As the SEC's release explained:

> [T]he [Third Circuit's] *Levy v. Sterling* opinion reads Rules
> 16b-3 and 16b-7 to require satisfaction of conditions that
> are neither contained in the text of the rules nor intended by
> the Commission.  The resulting uncertainty regarding the
> exemptive scope of these rules has made it difficult for
> issuers and insiders to plan legitimate transactions.  ***We
> seek to resolve any doubt as to the meaning and
> interpretation of these rules by reaffirming the views we
> have expressed previously regarding their appropriate
> construction.***  The amendments to the text of the rules we
> propose in this release will ***clarify*** the regulatory conditions
> that apply to these exemptions consistent with our
> previously expressed views.

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 69 Fed. Reg. 35,982, 35,982-83 (June 24, 2004) (emphasis added) (footnote omitted).

The SEC's release noted that it never intended the current version of the rule to contain a compensatory-purpose requirement and that the Third Circuit's "construction of Rule 16b-3(d) is not in accord with our clearly expressed intent in adopting the rule." *Id.* at 35,983.  The SEC proposed several changes to clarify its original intent.  In particular, the SEC proposed to amend paragraph (d) so that it "would provide that any transaction involving an acquisition from the issuer (other than a Discretionary Transaction), including without limitation a grant or award, will be exempt if any one of the Rule's three existing alternative conditions is satisfied." *Id.*  In addition, the SEC proposed a new Note 4, which expressly stated:

> The exemptions provided by paragraphs (d) and (e) of this section apply to any securities transaction by the issuer with an officer or director of the issuer that satisfies the specified conditions of paragraph (d) or (e) of this section, as applicable.  These exemptions are not conditioned on the transaction being intended for a compensatory or other particular purpose.

*Id.* at 35,984.

In August 2005, the proposed amendments were adopted by the SEC in substantially the same form as set forth above.  The text (not just the notes) of paragraph (d) now reads:

> <u>Acquisitions from the issuer</u>.  Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), *whether or not intended for a compensatory or other particular purpose*, shall be exempt if:

> [listing three alternative conditions, including transactions like this one, approved by the issuer's board of directors].

Adopting Release, 70 Fed. Reg. at 46,089 (emphasis added).

Thus, it is now crystal clear that Rule 16b-3(d) contains no "compensatory purpose" requirement.  *See id.* at 46,082.  The amended rule simply restates this interpretation in a manner that removes all possible doubt.  The amended rule is thus substantively "identical" to the SEC's interpretation of the pre-amendment version of the rule.  *See id.* at 46,081-82, 46,084 (explaining consistency between amended Rule 16b-3 and prior SEC interpretations of that rule).[2]

### B.   The SEC's Clarifying Amendments Apply Retroactively To Transactions That Occurred Before Their Adoption.

The relevant question "for purposes of determining whether [the] rule should be retroactively applied" is whether the SEC has adopted a "substantive" rule or a "clarifying" amendment.  *First Nat'l Bank v. Standard Bank & Trust*, 172 F.3d 472, 478 (7th Cir. 1999).  There are numerous cases (including Third Circuit cases) addressing this subject.  *See, e.g.*, *United States v. Marmolejos*, 140 F.3d 488, 490-93 (3d Cir. 1998) (finding that amendment to an application note to sentencing guidelines clarified ambiguity in, rather than substantively changed, the law, and thus applied retrospectively); *see also, e.g., Clay v. Johnson*, 264 F.3d 744, 749-50 (7th Cir. 2001); *accord Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1260-63 (11th Cir.

---

[2] The amended version of Rule 16b-3 simply inserts the phrase "whether or not intended for a compensatory or other particular purpose" in two relevant sections of the rule and moves the terms "grants" and "awards" from the title of subsection 16b-3(d) into a parenthetical in that subsection.  *Compare* 17 C.F.R. § 240.16b-3 (post-amendment version) *with Levy*, 314 F.3d at 120-21 (quoting pre-amendment version).

2002), *cert. denied*, 539 U.S. 970 (2003); *Farmers Tel. Co., v. FCC*, 184 F.3d 1241, 1250-52 (10th Cir. 1999); *First Nat'l Bank*, 172 F.3d at 478-80; *Orr v. Hawk*, 156 F.3d 651, 653-55 (6th Cir. 1998). These cases hold that clarifying amendments are properly applied to events occurring before their adoption.

"[A] rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and always has been." *Clay*, 264 F.3d at 749 (internal quotation marks omitted); *accord Heimmermann*, 305 F.3d at 1260; *Farmers Tel. Co.*, 184 F.3d at 1250; *First Nat'l Bank*, 172 F.3d at 478; *Orr*, 156 F.3d at 654. For this reason, the general ban on retroactivity discussed in *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), does not apply to clarifying amendments. *See Smiley*, 517 U.S. at 744 n.3 (distinguishing between clarification and substantive change in agency position, and noting that only the latter would implicate *Bowen*'s concerns about retroactive application); *Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*, 93 F.3d 103, 113 (3d Cir. 1996) ("retroactivity concerns are irrelevant" where rule "did not alter existing rights or obligations," but "merely clarified what those existing rights and obligations had always been"); *accord Heimmermann*, 305 F.3d at 1260; *Clay*, 264 F.3d at 749; *First Nat'l Bank*, 172 F.3d at 478; *Orr*, 156 F.3d at 654. A clarifying amendment "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand." *Clay*, 264 F.3d at 749; *accord Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 135 (1936).

The Third Circuit's decision in *United States v. Marmolejos*, 140 F.3d 488 (3d Cir. 1998), is consistent with these principles.  In *Marmolejos*, the Court held that a clarifying amendment to an application note in the Sentencing Guidelines was entitled to retroactive application because it clarified ambiguity in, rather than substantively changed, the law.  140 F.3d at 490-93; *see also Stinson v. United States*, 508 U.S. 36, 44-45 (1993) (analogizing Sentencing Guidelines to "legislative rules adopted by federal agencies" and commentary in the application notes to "an agency's interpretation of its own legislative rules").  The court further noted that clarifying amendments should apply "despite any conflict with established precedent, unless ex post facto concerns are present."  *Marmolejos*, 140 F.3d at 493 n.7.

Here, as in *Marmolejos*, the regulatory amendments at issue clarify a perceived ambiguity in, rather than substantively change, the law.  As the SEC explained in its Adopting Release, the purpose of the amendments is to "resolve any doubt as to the meaning" of Rules 16b-3 and 16b-7.  Adopting Release, 70 Fed. Reg. at 46,081.  Because the amendments do not change the law, but merely clarify what it has been and continues to be, they present no real issue of retroactivity; the law now is as it was before. Therefore, as the SEC's Adopting Release recognizes, amended Rule 16b-3 applies to any and all transactions — including the transaction at issue in this case — occurring after the effective date of the *pre-amendment* version of the rule.  *See* Adopting Release, 70 Fed. Reg. at 46,080.

### III.    THE SEC'S VIEW AS TO THE MEANING OF THE PRE-AMENDMENT VERSION OF RULE 16B-3 IS CONTROLLING HERE.

The only real issue here is whether the pre-amendment version of Rule 16b-3 means what the SEC has said it means. As explained below, an administrative agency's interpretation of its own regulation is ***controlling*** except in very limited circumstances not relevant here.

Administrative agencies have the inherent authority to interpret the meaning of their own legislative rules. *See, e.g.*, *Martin v. OSHRC*, 499 U.S. 144, 151 (1991) ("we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers"). In fact, an agency's interpretation of its own regulation is "***controlling*** unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (emphasis added; internal quotation marks omitted); *accord Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("*TJU*"); *Bowles v. Seminole Rock & Sand Co*., 325 U.S. 410, 413-14 (1945); *Chong v. Dist. Dir., INS*, 264 F.3d 378, 389 (3d Cir. 2001); *Director, Office of Workers' Comp. Programs v. East Associated Coal Corp.*, 54 F.3d 141, 147 (3d Cir. 1995) ("*OWCP*"). This is as true for agency interpretations contained in *amicus* briefs as for interpretations made in other contexts. *See Auer*, 519 U.S. at 462; *see also Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001) (holding, in a Section 16(b) case, that courts are "bound by the SEC's interpretations of its regulations in its *amicus* briefs, unless they are plainly erroneous or inconsistent with the regulation[s]") (internal quotation marks omitted).

A court must defer to an agency's interpretation of its own regulation "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation." *TJU*, 512 U.S. at 512 (internal quotation marks omitted). "This broad deference is all the more warranted when," as here, "the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Id.* (internal quotation marks omitted).

Courts "accord greater deference to an administrative agency's interpretation of its own regulations than to its interpretation of a statute." *OWCP*, 54 F.3d at 147; *accord Chong*, 264 F.3d at 389. The former is ***binding*** on courts "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation." *TJU*, 512 U.S. at 512 (internal quotation marks omitted). Unless this very narrow exception applies here — and, as explained below, it does not — the plaintiff's anticipated assertion that former Rule 16b-3 means something other than what the SEC says it means is doomed to fail.

### A.    The Plain Language of Rule 16b-3 Does Not Compel A Different Result.

The SEC has consistently taken the position that a link to a compensatory purpose was and is not a prerequisite for this exemption; the ***only*** conditions on the exemption's application were and are those expressly set forth in the text of the rule. *See generally* SEC *Amicus* Brief at 4-9; Adopting Release, 70 Fed. Reg. at 46,083. The question is whether "an alternative reading is ***compelled*** by the regulation's plain language or by

13

other indications of the [agency's] intent at the time of the regulation's promulgation." *TJU*, 512 U.S. at 512 (emphasis added; internal quotation marks omitted).  The answer is clearly no.  The text of the rule contains no compensatory-purpose requirement.

In adopting former Rule l6b-3 in 1996, the SEC stated in no uncertain terms that it was amending the rule in part because it intended any acquisition of issuer equity securities by an officer or director from an issuer (other than certain transactions pursuant to employee benefit plans) to be eligible for exemption under Rule 16b-3(d), provided that the conditions set forth in parts (1)-(3) of that subsection were met.  The 1996 adopting release expressly stated that "unlike the current rule [*i.e.*, the pre-1996 version of the rule], a transaction need not be pursuant to an employee benefit plan or any compensatory program to be exempt, ***nor need it specifically have a compensatory element***."  *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 61 Fed. Reg. 30,376, 30,378-79 (June 14, 1996) (emphasis added).  Consistent with this statement, the SEC construed former Rule 16b-3 as exempting a number of transactions outside of the compensatory context.  *See, e.g., Skadden, Arps, Slate, Meagher & Flom LLP*, SEC No-Action Letter, 1999 WL 11540 (Jan. 12, 1999).

Thus, even if the plaintiff's construction of former Rule 16b-3 were a ***permissible*** one, it is not "compelled."  The SEC's interpretation of the rule — a rule which it wrote and adopted — is at least plausible, if not eminently persuasive.  The plaintiff's alternative reading is compelled neither by the text of former Rule 16b-3 nor by the 1996 adopting release.  Indeed, the Third Circuit has already determined as much in the *Levy* case.  In reversing the dismissal of the case at the pleading stage, the Third Circuit noted

the statement in the 1996 adopting release that "a transaction need not . . . to be exempt . . . specifically have a compensatory element" and observed that this statement "appear[ed] to cut against [the] position" that Rule 16b-3(d) was limited to transactions "hav[ing] some connection to a compensation-related function."  *Levy*, 314 F.3d at 124 (internal quotation marks omitted).  Moreover, the Second Circuit and a district court in the Ninth Circuit have agreed with the SEC's interpretation of Rule 16b-3 — even before the clarifying amendment was adopted — and dismissed complaints similar to this one for failure to state a claim.  *See Gryl v. Shire Pharms. Group PLC*, 298 F.3d 136, 144-46 (2d Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003) (dismissing plaintiff's complaint pursuant to Rule 16b-3(d)(1) where securities were acquired by defendants during a corporate merger approved by issuer's board of directors); *Dreiling v. American Express Travel Related Servs. Co.*, 351 F. Supp. 2d 1077, 1090 (W.D. Wash. 2004) (granting shareholder's motion to dismiss claims brought pursuant to Section 16(b) because "Rule 16b-3(d)(1) exempts TRS's acquisition of InfoSpace stock from Section 16(b) liability because TRS, an insider, acquired InfoSpace stock directly from the issuer with the approval of the issuer's board of directors.").

Thus, the plain language of Rule 16b-3 can hardly be read to compel a result that is inconsistent with the SEC's interpretation of its own rule.  The SEC's interpretation is controlling here, and the transaction is exempt from the purview of Section 16(b).

**B.     The Third Circuit Opinion In *Levy* Does Not Reduce The Deference To Which The SEC's Interpretations Are Due.**

The Third Circuit found the pre-amendment version of Rule 16b-3 to be less than perfectly clear.[3]  *See Levy*, 314 F.3d at 112 ("the SEC has not set forth its interpretation clearly"); *id.* at 119 ("we acknowledge that this case is difficult . . ."); *id.* at 124 (concluding that certain statements in the adopting release "strongly suggest that the SEC intended, in Rule 16b-3(d), to exempt 'grants, awards, and other acquisitions' with some compensatory nexus," but acknowledging that another statement "appears to cut against our position").  As Judge Sleet put it on remand, the Third Circuit "only held that it could not, at the motion to dismiss stage of the proceedings, determine whether the reclassification was exempt. . . .  [T]he court recognized that guidance from the SEC as to the interpretation of Rules 16b-3 and 16b-7 was needed."  *Levy*, 2004 WL 2251268, at *3.  That guidance has now been provided by the SEC.

---

[3] "An ambiguous legal rule does not have a single 'right' meaning; there is a range of possible meanings; the selection from the range is an act of policymaking."  *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 411 (7th Cir. 1987).  When a regulation is ambiguous, so that different interpretations "are equally within the [agency's] power under the statute":

> Choosing which policy to pursue is wholly an administrative task.  When a court says . . . that judges appropriately "defer to the agency's construction of its regulation," this means that judges leave policy-making to the policy-makers appointed by Congress.  Because neither interpretation could be "wrong" in the sense that it violates a constraint imposed on the agency by other arms of the government, the selection among them is one of the agency's delegated tasks.

*Id.* at 412.  The resulting choice is "binding on the courts in the same way an authorized regulation or statute binds."  *Id.*

In any event, even if the Third Circuit had previously construed the pre-amendment version of Rule 16b-3 as potentially having a different meaning than that which the SEC intended it to have, that fact would not now render the SEC's interpretation unworthy of deference. The Third Circuit has held that "[w]here a prior panel of this court has interpreted an ambiguous statute in one way, and the responsible administrative agency later resolves the ambiguity another way, this court is not bound to close its eyes to the new source of enlightenment." *United States v. Joshua*, 976 F.2d 844, 855 (3d Cir. 1992). An agency's effort to clarify the meaning of its regulations is "to be encouraged rather than penalized." *Homemakers*, 832 F.2d at 413. This sort of "tidying-up" "permits a nationally uniform rule without the need for the Supreme Court to essay the meaning of every debatable regulation." *Id.* at 412-13. The fact that a court may "prefer a different interpretation is not enough to deny deference to the agency interpretation." *Heimmermann*, 305 F.3d at 1263.

The Supreme Court's recent decision in *National Cable & Telecommunications Association v. Brand X lnternet Services*, 125 S. Ct. 2688 (2005), makes this abundantly clear. By way of background, in *AT&T Corp. v. Portland*, 216 F.3d 871 (9th Cir. 2000), the Ninth Circuit held that a cable modem service was a "telecommunications service" within the meaning of the Communications Act of 1934, as amended. *Brand X*, 125 S. Ct. at 2698. Two years later, a rule-making proceeding initiated by the Federal Communications Commission (the "FCC") reached the opposite result. *Id.* at 2697-98.

When the issue arose again in *Brand X*, the Ninth Circuit applied its holding in Portland as *stare decisis*. *Id.* at 2698-99.[4]

In reversing the Ninth Circuit, the Supreme Court held that "[i]f a statute is ambiguous, and if the implementing agency's construction is reasonable," a federal court must "accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Id.* at 2699. Whether the judicial interpretation or the conflicting agency interpretation comes first does not matter. *Id.* at 2700. "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation . . . displaces a conflicting agency construction." *Id.*; *accord Smiley*, 517 U.S. at 744 n.3 ("Where . . . a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute means."); *Joshua*, 976 F.2d at 855. Any contrary rule "would lead to the ossification of large portions of our statutory law . . . by precluding agencies from revising unwise judicial constructions of ambiguous statutes." *Brand X*, 125 S. Ct. at 2700 (citation and internal quotation marks omitted).

The same reasoning applies here, but with even greater force, because courts "accord greater deference to an administrative agency's interpretation of its own regulations than to its interpretation of a statute." *OWCP*, 54 F.3d at 147. Just as "it is

---

[4] The plaintiff in this case previously relied on the Ninth Circuit decision in *Brand X* in opposing Rajesh Soin's Motion to Stay pending the SEC's enactment of its clarifying amendment to Rule 16b-3. *See, e.g.*, Pl.'s Mem. in Opp'n to Mot. for Stay at 11 (D. I. 10).

for agencies, not courts, to fill statutory gaps," *Brand X*, 125 S. Ct. at 2700, it is even more important — and appropriate — for agencies, not courts, to fill regulatory gaps. *Homemakers*, 832 F.2d at 411-12. The Third Circuit did not hold that Rule 16b-3 "unambiguously forecloses" the SEC's interpretation. To the contrary, it found the rule ambiguous. *See Levy*, 314 F.3d at 112. Thus, the SEC's pronouncements regarding the meaning of the pre-amendment version of Rule 16b-3 are entitled to deference over any conflicting construction the Third Circuit may have made in "the absence of specific SEC guidance." *Id.* at 114. The SEC has merely clarified what the rule has always meant.

This Court has already determined that the SEC's proposed clarifying amendment to SEC Rule 16b-3 is "likely to be of significant relevance to the issues in dispute in this case." Stay Order; *see also Levy*, 2004 WL 2251268, at *2, *3 (granting motion to stay and explaining that "the proposed amendments to Rule 16b-3 will not limit the exemption to transactions that have some compensation-related aspect" and thus the proposed amendments "could materially affect the issues in this case"). The doctrine of *stare decisis* thus lends additional support for the Court to grant Defendants' motion to dismiss.

## C. Rule 16b-3 Plainly Falls Within The SEC's Rule-Making Authority Under Section 16(b).

The purpose of Section 16(b) is to discourage insiders from using inside information to engage in short-swing trading at the expense of uninformed members of the investing public. *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976); *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 591-92 & n.23 (1973); *Levy*, 314 F.3d at 110. Toward this end, Congress adopted a prophylactic rule of strict liability for a class of transactions where it believed the risk of speculative

abuse was the greatest, *i.e.*, insiders purchasing and selling securities within a six-month period. *Foremost-McKesson, Inc.*, 423 U.S. at 251.

At the same time, however, Congress recognized that this "crude," arbitrary, and "strict" rule, *Kern County*, 411 U.S. at 592 n.23 & 595, would sweep too broadly if applied without exception. Hence, Congress expressly authorized the SEC to exempt from the scope of Section 16(b) transactions "not comprehended within [its] purpose." 15 U.S.C. § 78p(b). The exemptive rules function like the liability provisions of the statute. They employ objective criteria to define categories of transactions that the SEC — in its expert judgment — has determined are not likely to present significant opportunities for the type of speculative abuse that Section 16(b) was designed to prevent. Like the liability provisions of the statute, the exemptive rules provide certainty to those involved in business transactions and relieve courts of the burden of having to make fact-specific, case-by-case judgments regarding motive and the actual or potential abuse of inside information.

The SEC's exemptive rules are therefore "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *accord Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Levy*, 314 F.3d at 112 (exemptive rules promulgated under Section 16(b) are entitled to *Chevron* deference). The SEC is not subject to mere second-guessing by litigants or courts regarding the wisdom of its exemptive rules. In determining whether it can and should exempt particular types of transactions from the scope of Section 16(b), and under what

conditions, the SEC relies on its expertise regarding the securities markets and makes judgments based on policy considerations.  Those determinations are accorded great deference.  *See Chevron*, 467 U.S. at 844-45.

The rationale underlying Rule 16b-3 is that transactions between an issuer and its officers or directors generally do not "present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-37260, 62 SEC Docket 138, 1996 WL 290234, at *3 (May 31, 1996) (attached hereto as Exhibit D).

> Typically, where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute.

*Id.*[5]  The SEC concluded, "[b]ased on its experience with the Section 16 rules," that the types of transactions described in Rule 16b-3 were "not vehicles for the speculative abuse that Section 16(b) was designed to prevent," provided that certain "objective gate-

---

[5] Rule 16b-3 applies (i.e., it operates to exempt the transaction at issue) even if the director or officer is also a ten-percent beneficial shareholder.  *See* Exchange Act Release No. 34-37260, 62 SEC Docket 138, 1996 WL 290234, at *39 n.42 (May 31, 1996) ("Rule 16b-3 is available to [a ten percent holder] who is also subject to Section 16 by virtue of being an officer or director with respect to transactions with the issuer.").

keeping conditions" were satisfied.  *Id.*[6]  In the case of a director or officer's acquisition from an issuer of issuer equity securities, the SEC determined that the appropriate procedural safeguards were board approval, shareholder approval, or retention of the securities for at least six months.  *See* 17 C.F.R. § 240. 16b-3(d)(1)-(3).  The SEC's determination that these conditions effectively remove the possibility of speculative abuse is binding.  *See Mead*, 533 U.S. at 219.

Rule 16b-3 is consistent with the language and purpose of Section 16(b) — and it certainly is not so "manifestly contrary to the statute" as to be unworthy of deference under *Chevron*.

### D.    The Only Conditions Required By Rule 16b-3 For Exemption From Section 16(b) Liability Are Satisfied Here.

Rule 16b-3 (d) sets forth three alternative conditions which, if satisfied, exempt a transaction from Section 16(b) liability.  *See, e.g.,* Adopting Release, 70 Fed. Reg. at 46,083.[7]  In relevant part, the Rule provides that

> [a]ny transaction . . . involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other

---

[6] The Adopting Release also noted that liability under Section 16(b) in these circumstances was not really necessary because self-dealing transactions between an issuer and its officers or directors would violate both state-law fiduciary duties and Rule 10b-5.  *See* Adopting Release, 70 Fed. Reg. at 46,083 & n.53; *see also* Peter J. Romeo & Alan L. Dye, *Comprehensive Section 16 Outline* § IV(A)(3), at 306 (June 2005) (most transactions between an issuer and its officers or directors "are subject to state fiduciary duty obligations and full public disclosure, both of which tend to have a dampening effect on overreaching").

[7] As set forth above, these conditions may be met regardless of whether or not the transaction is intended for a compensatory or other particular purpose.  *See id.*

> particular purpose, shall be exempt if:  The transaction is
> approved by the board of directors of the issuer, or a
> committee of the board of directors that is composed solely
> of two or more Non-Employee Directors.

C.F.R. § 240.16b-3(d)(1).

The transaction in this case is exempted under Section 16(b) because it was

approved by MTC's board of directors in accordance with Rule 16b-3(d)(1).  *See* Def's

Reply Br. Supp. Mot. to Stay at 3 (D. I. 13); Decl. of Therese Mohn, Mar. 4, 2005 ¶¶ 3-5

& Exs. A-C (D. I. 14); Decl. of Richard L. Horwitz (attaching MTC Technologies, Inc.,

8-K, Oct. 1, 2003 & Definitive Proxy Statement, Mar. 22, 2004) (filed separately

herewith).[8]  Plaintiff has failed to allege any facts to establish that the issuance of MTC

common stock in connection with MTC's acquisition of ICI is beyond the exemption

afforded by Rule 16b-3(d)(1).  Likewise, the complaint does not allege that any other

"purchase" of securities occurred within six months of Rajesh Soin's "sale" of securities

on February 19, 2004 for purposes of liability under Section 16(b).  Therefore, the

complaint fails to assert any grounds for liability under Section 16(b), and it should be

dismissed.

---

[8] The Court may take judicial notice of public filings, such as SEC filings, and consider
them on a motion to dismiss, without converting the motion to a motion for summary
judgment.  *Indeck Me. Energy, L.L.C. v. ISO N. Eng. Inc.,* 167 F. Supp. 2d 675, 678-79
(D. Del. 2001); *Stampone v. Freeman Decorating Co.,* No. Civ. A. 04CV4241, 2005 WL
2216977, at *1 (D.N.J. Sept. 12, 2005) ("In evaluating a Rule 12(b)(6) motion to dismiss,
a court may consider . . . matters of public record.").

## CONCLUSION

For the foregoing reasons, defendants respectfully requests that the Court dismiss

plaintiff's complaint in its entirety and with prejudice.

Respectfully submitted,


/s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
Melony R. Anderson (#4377)
Kirsten A. Lynch (#4573)
POTTER ANDERSON & CORROON LLP
Of Counsel:                          Hercules Plaza, 6th Floor
                                     1313 North Market Street
Geoffrey J. Ritts                    Wilmington, DE  19801
Salim A. Kafiti                      Tel:  (302) 984-6000
JONES DAY                            Fax:  (302) 658-1192
North Point                          horwitz@potteranderson.com
901 Lakeside Avenue                  manderson@potteranderson.com
Cleveland, Ohio 44114                klynch@potteranderson.com
Tel:  (216) 586-3939
Fax:  (216) 579-0212                 Attorneys for Defendants Rajesh K. Soin,
                                     Vishal Soin, Amol Soin and Indu Soin
Dated:  October 11, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on October 11, 2005, the attached document

was served via hand delivery and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing(s) to the following and the document is

available for viewing and downloading from CM/ECF:

Theodore J. Tacconelli
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, Delaware 19899

Robert Stearn, Jr.
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

I hereby certify that on October 11, 2005, the attached document was served via first

class mail to the following non-registered participants:

Paul D. Wexler
BRAGAR WEXLER EAGEL &
MORGENSTERN, P.C.
885 Third Avenue
New York, New York 10022

Glenn F. Ostrager
OSTRAGER CHONG FLAHERTY &
BROITMAN P.C.
250 Park Avenue
New York, New York 10177-0899

/s/ Richard L. Horwitz
Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com

Attorney for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin