# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 2251268 (D.Del.), Fed. Sec. L. Rep. P 92,927
(Cite as: 2004 WL 2251268 (D.Del.))

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
Mark LEVY, Plaintiff,
v.
STERLING HOLDING COMPANY, LLC, National Semiconductor Corporation and Fairchild Semiconductor International, Inc., Defendants.
No. Civ.A. 00-994(GMS).

Sept. 27, 2004.
Jeffrey S. Goddess, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE, for Plaintiff.

P. Clarkson Collins, Jr., Morris, James, Hitchens & Williams, R. Franklin Balotti, Richards, Layton & Finger, Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

ORDER

SLEET, J.

*1 On November 28, 2000, Mark Levy ("Levy") filed this shareholder's derivative suit on behalf of defendant Fairchild Semiconductor International, Inc. ("Fairchild") against Sterling Holding Company, LLC ("Sterling") and National Semiconductor Corporation ("National") (collectively "the defendants") pursuant to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Levy alleges that the defendants, who sit on the Fairchild Board of Directors, purchased Fairchild stocks and then sold those stocks at a profit within six months after purchase. Levy alleges that the defendants' conduct violated the section 16(b) prohibition on short swing profits due to insider trading. The defendants previously moved to dismiss the action on the ground that the alleged "purchase" transaction--a pre-IPO reclassification--was exempt under Securities and Exchange Commission ("SEC") Rule 16b-7 and/or Rule 16b-3. On February 5, 2002, this court granted the defendants' motion to dismiss. See Levy v. Sterling Holding Co., LLC, 2002 WL 187513 (D.Del. Feb.5, 2002) (D.I.46). Levy appealed the decision, and a panel of the United States Court of Appeals for the Third Circuit subsequently reversed and remanded. See Levy v. Sterling Holding Co., LLC, 314 F.3d 106 (3d Cir.2002). The defendants, supported by the SEC as *amicus curiae,* then moved for rehearing and rehearing *en banc,* which the Third Circuit denied by a 7-3 vote. Subsequently, the defendants filed a petition for a writ of *certiorari,* which the Supreme Court denied on October 14, 2003. See Sterling Holding Co., LLC v. Levy, 540U.S. 947, 124 S.Ct. 389, 157 L.Ed.2d 277 (2003). On remand, the court issued a scheduling order setting the deadline dates for dispositive motions and motions in limine. The court also set the dates for the pre-trial conference and the trial. This case has proceeded through pre-trial fact discovery, which closed on May 17, 2004. On June 4, 2004, summary judgment motions were filed and the parties' briefing on those motions is now complete. The parties have also filed motions in limine with the court.

On June 21, 2004, the SEC proposed clarifying amendments to SEC Rules 16b-3 and 16b-7. [FN1] [FN2] The proposed amendments were motivated by the Third Circuit's opinion in this case. If adopted, the amendments may control the outcome of the litigation. Presently before the court is the defendants' motion to stay the litigation pending the final action by the SEC on its proposed amendments to SEC Rules 16b-3 and 16b-7. After consideration of each of the factors involved, and for the reasons detailed below, the court will grant the motion to stay.

> FN1. The SEC has proposed the following amendments to Rule 16b-3:
> As amended this paragraph would be entitled "Acquisitions from the issuer," and provides that "any transaction involving an acquisition from the issuer (other than a Discretionary Transaction), including without limitation a grant or award, will be exempt if any one of the Rule's three existing alternative conditions is satisfied...." These conditions require: [a]pproval of the transaction by the issuer's board of directors, or board committee composed solely of two or more Non-Employee directors [Rule 16b-3(d)(1) ]; [a]pproval or ratification of the transaction, in compliance with Exchange Act Section 14, by the issuer's



Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 2251268 (D.Del.), Fed. Sec. L. Rep. P 92,927
**(Cite as: 2004 WL 2251268 (D.Del.))**

shareholders [Rule 16b-3(d)(2) ]; or [t]he officer or director to hold the acquired securities for a period of six months following the date of acquisition [Rule 16b-3(d)(3) ].
Exchange Act Release No. 34-49895 (June 21, 2004), 2004 WL 1391723, at *4. The SEC has also proposed adding Note 4 to Rule 16b-3, which states:
The exemptions provided by paragraphs (d) and (e) of this section [16b-3] apply to any securities transaction by the issuer with an officer or director of the issuer that satisfies the specified conditions of paragraph (d) or (e) of this section, as applicable. These exemptions are not conditioned on the transaction being intended for a compensatory or other particular purpose.
*Id.* at 5.

FN2. The SEC has proposed the following amendments to Rule 16b-7:
consistent with the rule's title ["Mergers, reclassifications, and consolidations"] the text would state "merger reclassification or consolidation" each place it currently states "merger or consolidation." In addition, a proposed new paragraph would specify that the exemption specified by Rule 16b-7 applies to any securities transaction that satisfies the conditions of the rule and is not conditioned on the transaction satisfying any other conditions.
*Id.* at 6.

The decision to stay a case is firmly within the discretion of the court. See *Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir.1985). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); cf. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

*2 Levy, the non-moving party, claims that he is prejudiced because the defendants seek an open-ended delay to a case that has been pending since 2000. Levy further claims that a stay would prejudice him because it would delay resolution of the parties' cross-motions for summary judgment. Moreover, Levy asserts that even if summary judgment were denied despite "overwhelming evidence of Defendants' violations of ... [section] 16(b) and their absence of any credible defense," he would be unfairly prejudiced by a stay because it would delay a trial date that has already been agreed upon and set. (D.I. 163, at 5). Levy contends that the law in the District of Delaware is that forestalling an agreed upon trial date would result in prejudice to the plaintiff. (D.I. 163, at 5) (citing *Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656 (D.Del.1990) (Farnan, J.)). The court cannot agree. The mere fact of delay is inherent in every request to stay. The issue, therefore, is whether the stay would unduly prejudice the non-moving party. Here, Levy merely claims that a stay will delay the court's resolution of the cross-motions for summary judgment, as well as the trial. Levy, however, has not attempted to explain how he would be prejudiced. Furthermore, Levy has not pointed to any clear tactical disadvantage that would result from staying the case. Thus, the court finds that the prejudice to Levy is slight, if any.

Staying the litigation until the SEC decides whether to adopt the proposed amendments to Rules 16b-3 and 16b-7 will simplify the issues in this case and focus the litigation. If adopted, the proposed amendments to Rule 16b-3 will not limit the exemption to transactions that have some compensation-related aspect. The only limitations will be the conditions set forth in 16b-3(d)(1)- (3). In addition, if adopted, the proposed amendments to Rule 16b-7 will exempt reclassifications from section 16(b). Thus, many of the issues in the litigation will become moot. A stay will conserve the resources of the parties and the court. It will enable the court to forego deciding many of the arguments raised in the parties' cross-motions for summary judgment, such as the applicability of the unorthodox transaction doctrine enunciated by the Supreme Court in *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 93

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2251268 (D.Del.), Fed. Sec. L. Rep. P 92,927
(Cite as: 2004 WL 2251268 (D.Del.))

Page 3

S.Ct. 1736, 36 L.Ed.2d 503 (1973). Moreover, it will obviate the need of the court to resolve expert discovery disputes and make rulings on motions in limine and other pretrial motions. If the proposed amendments are rejected, the court will proceed with the case. The court will then decide the parties' cross-motions for summary judgment, consistent with the Third Circuit's opinion, and proceed to trial, if necessary.

Not staying the proceedings, however, runs the risk of inconsistent adjudications. This case is scheduled for trial on November 1, 2004. According to the SEC's release, the deadline for comments on the proposed amendments was August 9, 2004. Thus, all that remains is for the SEC to decide whether it will adopt the proposed amendments. While Levy asserts that it takes the SEC a substantial period of time from its initial proposal to ultimately adopt a rule, the SEC's proposed amendments here are clarifying, meant only to interpret the pre-existing rules and not to adopt new rules. Therefore, the amount of time from the close of the notice and comment period to the decision to adopt will likely not be nearly as substantial as the amount of time it takes the SEC to adopt a new rule. By staying the action and awaiting the decision of the SEC, in the event of adoption, a further conflict with other circuit courts that will have to apply amended SEC Rules 16b-3 and 16b-7 may be avoided. [FN3]

> FN3. The Third Circuit decision in *Levy* is already inconsistent with the United States Court of Appeals for the Second Circuit, which reached a different conclusion in *Gryl v. Shire Pharm. Group PLC*, 298 F.3d 136 (2d Cir.2002).

*3 The Third Circuit noted in *Levy* that "section 16(b) explicitly authorizes the SEC to exempt 'any transaction ... as not comprehended within the purpose of the statute. This section is critical[,] for courts defer to an agency's interpretation of statutes, particularly where the statute provides the agency with authority to make the interpretation." *Levy*, 314 F.3d 106, 112 (3d Cir.2002) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). *Levy* then explained that "the SEC has not set forth its interpretation clearly," and that it would have "to ascertain what in fact was its interpretation." *Levy*, 314 F.3d at 112. Moreover, the court concluded that although it disagreed with the district court's holding "that Rule 16b-7 exempted the reclassification transaction as a matter of law ... we do not conclude at this time that the reclassification transaction is outside the definition of 'purchase' under section 16(b)." *Id.* at 125. The Third Circuit did not hold that the reclassification transaction was outside the conditions for exemption under Rule 16b-7. The Court of Appeals only held that it could not, at the motion to dismiss stage of the proceedings, determine whether the reclassification was exempt. The court could not hold that the reclassification transaction was outside the definition of "purchase" because the SEC had not clearly set forth its interpretation of the term. Thus, the court recognized that guidance from the SEC as to the interpretation of Rules 16b-3 and 16b-7 was needed. In response to the Third Circuit's opinion in *Levy*, the SEC proposed the amendments to Rules 16b-3 and 16b-7 to "resolve any doubt as to the meaning and interpretation of these rules" and to reaffirm "the views we have expressed previously regarding their appropriate construction." Exchange Act Release No. 34-49895 (June 21, 2004), 2004 WL 1391723, at *3 (explaining that the *Levy* opinion resulted in uncertainty regarding the exemptive scope of Rules 16b-3 and 16b-7). If the proposed amendments are adopted, the Fairchild reclassification transaction will be considered exempt under Rule 16b-7. Thus, many of the issues in this case will be moot and the litigation streamlined.

In the present case, fact discovery is complete and a trial date is set. However, given the possibility that adoption of the SEC's proposed amendments to Rules 16b-7 and 16b-3 could materially affect the issues in this case and the fact that Levy cannot point to any way that he will be unduly prejudiced by the stay, the court finds that the balance of harms weighs in favor of a stay. Thus, the court will grant the defendants' motion to stay.

Therefore, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Stay and For Expedited Briefing (D.I.150) is GRANTED.

Not Reported in F.Supp.2d, 2004 WL 2251268 (D.Del.), Fed. Sec. L. Rep. P 92,927

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2251268 (D.Del.), Fed. Sec. L. Rep. P 92,927  
**(Cite as: 2004 WL 2251268 (D.Del.))**

Page 4

### Motions, Pleadings and Filings (Back to top)

• 2001 WL 34131182 (Trial Motion, Memorandum and Affidavit) National Semiconductor Corporation's Reply Brief in Support of Its Motion to Dismiss the Complaint (Apr. 20, 2001)

• 2000 WL 34013229 (Trial Pleading) Complaint (Nov. 28, 2000)

• 1:00cv00994 (Docket) (Nov. 28, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                                    Page 1
Slip Copy, 2005 WL 2216977 (D.N.J.)
(Cite as: 2005 WL 2216977 (D.N.J.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Frederick STAMPONE, Plaintiff,
v.
FREEMAN DECORATING CO., Joseph V. Popolo, Jr., and Don Freeman, Defendants.
**No. Civ.A.04CV4241(DMC).**

Sept. 12, 2005.

Frederick Stampone, Carlstadt, NJ, Pro Se.

Ellen M. Boyle, Law Offices of Judith A. Heim, Florham Park, NJ, for Defendants.

OPINION

CAVANAUGH, J.

*1 This matter comes before the Court upon motion by Defendants Freeman Decorating Company, Joseph V. Popolo, Jr., and Don Freeman (collectively, "Defendants") to dismiss the Complaint filed against them by *pro se* Plaintiff Frederick Stampone ("Plaintiff"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the submissions of the parties and for the following reasons, it is the finding of this Court that the Defendants' motion to dismiss is granted.

I. BACKGROUND

Plaintiff filed the Complaint on August 31, 2004 alleging violations of a lengthy list of various federal statutes, federal and state constitutional provisions, and other broad legal claims. On December 12, 2004, Defendants filed the instant motion to dismiss. Plaintiff filed a brief in opposition on January 6, 2005. Defendants filed a reply brief on February 3, 2005.

The Court accepts as true the factual allegations in Plaintiff's Complaint for the purposes of this motion. Plaintiff asserts that he has been a member of the United Brotherhood of Carpenters ("UBC") since July 20, 1978. (Complaint at ¶ 2.) Plaintiff placed his named on the UBC's out-of-work list on August 6, 2004. (*Id.* at ¶ 4.) Plaintiff alleges that he was called to work for Freeman Decorating Company on August 17, 2004 at the Republican National Convention Center in Madison Square Garden. (*Id.* at ¶ 5.) Plaintiff began work on August 18, 2004. (*Id.* at ¶ 6.) At the end of the next work day, a representative from Freeman Decorating Company informed Plaintiff that he was laid off. (*Id.*) Plaintiff maintains that he was laid off because he was over 51 years of age. (*Id.*) Plaintiff immediately requested his paycheck and was informed it would be mailed on August 26, 2004. (*Id.*) Plaintiff maintains that he never received his paycheck. (*Id.* at ¶ 7.) Plaintiff claims that Defendants have denied him his paycheck, right to work, and union benefits. (*Id.* at ¶ 8.)

II. DISCUSSION
A. *Standard of Review*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations in the Complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See* Worth v. Selden, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1988); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

Additionally, Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Due to an understandable difference in legal sophistication, a complaint drafted by a *pro se* litigant must be held to a less exacting standard than a complaint drafted by trained counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nonetheless, a court should dismiss the case pursuant to Rule 8(a), "if a *pro se* complaint is so confusing or unintelligible that no party could possibly understand or reply to it." *Cole v. Commonwealth Federal,* 1994 WL 618464, *1 (E.D.Pa.); citing *King v. Fayette*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

County, 92 F.R.D. 457, 458 (W.D.Pa.1981); Brown v. Califano, 75 F.R.D. 497 (1977).

B. *Plaintiff Failed to Follow the Proper Administrative Remedies Under 42 U.S.C. § 2000e(5)(1).*

*2 Title VII of the Civil Rights Act of 1964 establishes special procedures for the prevention of unlawful employment practices, including the creation of the Federal Equal Employment Opportunity Commission ("EEOC") to investigate charges of such unlawful employment practices. 42 U.S.C. §§ 2000e. Accordingly, before instituting a Title VII action, individuals must file a claim with the EEOC within 180 days of the alleged unlawful discriminatory act and obtain a right to sue letter from the agency. 42 U.S.C.2000e-5(e). These conditions are "non-jurisdictional prerequisites, akin to a statute of limitations." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Accordingly, claims made under Title VII may be dismissed for failure to exhaust such administrative remedies. Anjelino v. The New York Times Co., 200 F.3d 73, 87-88 (3d Cir.1999).

Here, Plaintiff has failed to produce any evidence he filed a claim with the EEOC with regard to his age discrimination allegation. Also, Plaintiff has not disputed Defendants' argument in their motion to dismiss that he failed to do so. As such, because Plaintiff failed to follow the proper administrative remedies under 42 U.S.C. § 2000e(5)(1), namely that he satisfy the condition precedent of filing a timely claim with the EEOC for recovery under Title VII, Defendants' motion to dismiss Plaintiff's age discrimination claim is granted.

C. *Plaintiff Failed to Exhaust Grievance Procedures Required under His Contract with His Union.*

Under federal labor law policy, "individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." Republic Steel Corp. V. Maddox, 379 U.S. 650, 652-3, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Unless otherwise agreed to, "the employee must afford the union the opportunity to act on his behalf." Id. at 653. Furthermore, "if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." Vaca v. Sipes, 386 U.S. 171, 184-5, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In the present matter, the New York Trade Show Contractors' Association ("the Association") and the District Council of New York City and Vicinity of the UBC and Joiners of America, AFL-CIO entered into the Convention and Exhibition Field Agreement ("the Agreement"). The Agreement governs work performed for exhibit shows between July 1, 2001 through July 30, 2006. As a member of the Association, Defendants are governed by the Agreement. Also, as a member of the UBC, Plaintiff is subject to the provisions of the Agreement.

Article XII, Section 1 of the Agreement provides that "in the event there shall exist any claim, demand, dispute or controversy between the parties hereto ... the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation." Article XII, Section 2, further provides that "any grievance not resolved shall be submitted to arbitration."

*3 Here, Plaintiff has failed to follow proper grievance procedures as set forth in and required by the Agreement. As a member of the UBC, Plaintiff should have exhausted all grievance procedures available to him under the Agreement before resorting to this Court for relief. As such, Defendants' motion to dismiss Plaintiff's contract claims for failure to follow proper procedures is granted.

III. *CONCLUSION*

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss Plaintiff's complaint is granted. An appropriate Order accompanies this Opinion.

Slip Copy, 2005 WL 2216977 (D.N.J.)

**Motions, Pleadings and Filings (Back to top)**

• 2:04cv04241 (Docket) (Aug. 31, 2004)

END OF DOCUMENT