# EXHIBIT B

Home | Previous Page



U.S. Securities and Exchange Commission

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 02-1698

MARK LEVY,

Plaintiff-Appellant,

v.

STERLING HOLDING COMPANY, LLC., NATIONAL SEMICONDUCTOR CORPORATION, andFAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC.,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Delaware

MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION, *AMICUS CURIAE*, IN SUPPORT OF APPELLEES' PETITION FOR REHEARING OR REHEARING *EN BANC*

MEYER EISENBERG
Deputy General Counsel

ERIC SUMMERGRAD
Deputy Solicitor

ALLAN A. CAPUTE
Special Counsel to the Solicitor

Securities and Exchange Commission
Washington, D.C. 20549-0606
(202) 942-0837 (Capute)

# TABLE OF CONTENTS

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

STATEMENT OF THE CASE

DISCUSSION

I. IN HOLDING THAT FAIRCHILD'S RECLASSIFICATION IS NOT EXEMPT UNDER RULE 16b-3(d), THE PANEL IMPOSED A REQUIREMENT THAT IS NOT, AND WAS NOT INTENDED BY THE COMMISSION TO BE, PART OF THE RULE.

II. THE PANEL MISCONSTRUED RULE 16b-7 AS NOT APPLYING TO RECLASSIFICATIONS INVOLVING ANY CHANGE AT ALL IN THE INSIDER'S INTEREST IN THE ISSUER.

CONCLUSION

## TABLE OF AUTHORITIES

**CASES**

*Auer v. Robbins*, 519 U.S. 452 (1997)

Blau v. Lamb, 363 F.2d 507 (2d Cir. 1966)

Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945)

Chong v. INS, 264 F.3d 378 (3d Cir. 2001)

Hayes v. Simpson, [1980 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,693, 1980 WL 1460 (S.D.N.Y. Nov.18, 1980)

Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582 (1973)

Levy v. Southbrook International Investments, Ltd., 263 F.3d 10 (2d Cir. 2001), *cert. denied*, 122 S.Ct. 1911 (2002)

Levy v. Sterling Holding Company, LLC., 314 F.3d 106 (3d Cir. 2002)

Levy v. Sterling Holding Company, LLC., Fed. Sec. L. Rep. (CCH) ¶91,689, 2002 WL 187513 (D. Del. Feb. 5, 2002)

Press v. Quick & Reilly, inc., 218 F.3d 121 (2d Cir. 2000)

Roberts v. Eaton, 212 F.2d 82 (2d Cir. 1954)

Rothenberg v. United Brands Co., [1977 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶96,045, 1977 WL 1014 (S.D.N.Y. May 11, 1977)

United States v. Frumento, 563 F.2d 1083 (3d Cir. 1977)

Waterfront Commission of New York Harbor v. Elizabeth-Newark Shipping, Inc., 164 F.3d 177 (3d Cir. 1998)

**STATUTES AND RULES**

Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.

   Section 16(b), 15 U.S.C. 78p(b)

Rules under the Securities Exchange Act of 1934, 17 C.F.R. 240.01, et seq.

   Rule 16b-3(a)
   Rule 16b-3(d)
   Rule 16b-7, 17 C.F.R. 240.16b-7

**MISCELLANEOUS**

Notice of Proposal to Adopt a Rule Exempting from the Operation of Section 16(b) Certain Acquisitions and Dispositions of Securities Pursuant to Merger and Consolidations, Exchange Act Release No. 4696, 1952 SEC LEXIS 63 (Apr. 1952)

Form 8-K Disclosure of Certain Management Transactions, Exchange Act Release No. 45742, 67 Fed. Reg. 19914 (Apr. 23, 2002)

Interpretive Release on Rules Applicable to Insider Reporting and Trading, Exchange Act Release No. 18114, 1981 WL 31301 (Sept. 24, 1981)

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 28869, 56 Fed. Reg. 7242 (Feb. 21, 1991)

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 37260, 61 Fed. Reg. 30376 (June 14, 1996)

### INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

The Securities and Exchange Commission submits this memorandum as *amicus curiae* to urge the Court to grant the defendants' petition for rehearing or rehearing *en banc*.

The issue in this case is whether certain securities transactions engaged in by the defendants were exempt under Commission rules from the "short-swing" profit recovery provision in Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78p(b). The panel held that the transactions were not exempt under either Commission Rule 16b-3(d), 17 C.F.R. 240.16b-3(d) or Rule 16b-7, 17 C.F.R. 240.16b-7.

The Commission's interest in this case is obvious. Although Section 16(b) is enforced in private actions only, and not by Commission enforcement actions, it provides that the Commission may exempt from Section 16(b) "any transaction * * * as not comprehended within the purpose" of the

statute. The panel misconstrued the Commission's intent, and has frustrated the Commission's purpose, in adopting the rules.

We believe it is important that, in considering whether to rehear this matter, the Court be aware of the Commission's views. This Court has recognized that "[a]n agency's interpretation of its own regulations is'controlling * * * unless it is plainly erroneous or inconsistent with the regulation.'" *Chong v. INS*, 264 F.3d 378, 389 (3d Cir. 2001) (*quoting Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). The Second Circuit has held, in a prior Section 16(b) case, that courts are "bound by the SEC's interpretations of its regulations in its *amicus curiae* briefs, unless they are `plainly erroneous or inconsistent with the regulation[s].'" *Levy v. Southbrook International Investments, Ltd.*, 263 F.3d 10, 15 (2d Cir. 2001), *cert. denied*, 122 S.Ct. 1191 (2002) (quoting *Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 128 (2d Cir. 2000))(in turn quoting *Auer v. Robbins*, 519 U.S. 452, 461-63 (1997)).

### STATEMENT OF THE CASE

This is a derivative action by Mark Levy, a shareholder in Fairchild Semiconductor ("Fairchild"), seeking to recover, under Section 16(b) of the Exchange Act, short-swing profits realized by insiders of Fairchild. The complaint alleges that defendants Sterling Holding Company ("Sterling") and National Semiconductor ("National"), purchased Fairchild stock and then sold it at a profit within six months. The purchase occurred when Sterling and National each had preferred Fairchild stock that they owned converted by the issuer into common stock. Since both companies were holders of more than 10% of the stock, and had officers who sat on Fairchild's board of directors, it is not disputed that they were insiders whose transactions were subject to Section16(b).

A majority of the shareholders voted by written consent to amend Fairchild's certificate of incorporation in order to provide for a plan of recapitalization in which all of Fairchild's preferred stock was converted into class A common stock at the time Fairchild made an initial public offering of the common stock ("IPO"). The IPO took place on August 9, 1999, resulting in the acquisition on that date by Sterling and National of Fairchild common stock. Less than six months later, on January 19, 2000, Sterling and National sold substantial amounts of common stock, realizing a profit of $58.5 million for Sterling and $14.1 million for National.

Defendants moved to dismiss the complaint, arguing that the conversion was exempt from Section 16(b) liability under Commission Rules 16b-3(d) and 16b-7. The district court agreed that the transaction involved a reclassification of Fairchild's stock exempted by Rule 16b-7, but did not reach the issue whether Rule 16b-3(d) applied. *Levy v. Sterling Holding Company, LLC.*, Fed Sec L. Rep. (CCH) ¶91,689, 2002 WL 187513 (D. Del. Feb. 5, 2002). Levy appealed and, on December 19, 2002, a panel of this Court reversed the district court. *See Levy v. Sterling Holding Company, LLC.*, 314 F.3d 106 (3d Cir. 2002), holding that neither of the exemptions applied to this transaction.

### DISCUSSION

### I. IN HOLDING THAT FAIRCHILD'S RECLASSIFICATION IS NOT

**EXEMPT UNDER RULE 16b-3(d), THE PANEL IMPOSED A REQUIREMENT THAT IS NOT, AND WAS NOT INTENDED BY THE COMMISSION TO BE, PART OF THE RULE.**

The panel incorrectly held that the acquisitions of common stock were not, as a matter of law, exempt from Section 16(b) liability by Rule 16b-3(d). Rule 16b-3 exempts from Section 16(b) certain transactions between issuers of securities and their officers and directors. Rule 16b-3(a) provides that any "transaction between the issuer * * * and an officer or director of the issuer that involves equity securities shall be exempt from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section." As this makes clear, the only limitations on the exemption for transactions between the issuer and its officer or director are those objective conditions set forth in the later subsections of the rule, each of which applies to different categories of transactions.

Of relevance here is subsection (d) of the rule. Rule 16b-3(d) is entitled "Grants, awards and other acquisitions from the issuer." It exempts from Section 16(b) liability "[a]ny transaction involving a grant, award or otheracquisition from the issuer" if any one of three conditions is met. [1] Of relevance here, the exemption applies if "[t]he transaction is approved * * * by * * * the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting * * * ; or the written consent of the holders of a majority of the securities of the issuer * * * ." The plaintiff concedes, and the panel did not dispute, that the reclassification here was approved by the written consent of the owners of the majority of Fairchild's securities (Levy Br. p.5. *See also* Complaint, A-24 at ¶20.)

The panel, however, held that Rule 16b-3(d) does not apply where the stock is not conferred on the insider for a compensatory purpose. This condition does not appear in the rule. The panel apparently accepted the plaintiff's argument that when Rule 16b-3(d) limits its coverage to transactions involving "grants, awards, or other acquisitions," it is speaking only of transactions that have some compensation-related aspect. The plaintiffs argued that "grants" and "awards" are compensation-related, and that under the principle of *ejusdem generis*, "other acquisitions" must be as well. Here, the panel concluded, there was no such relation. *See* 314 F.3d 121-22.

The problem with this analysis is that it runs directly contrary to theCommission's stated reasons for adopting the exemption. This Court has made clear that the principle of *ejusdem generis* is a tool of statutory construction, and "'should not be employed when the intention of the [agency] is otherwise evident.'" *Waterfront Commission of New York Harbor v. Elizabeth-Newark Shipping, Inc.*, 164 F.3d 177, 184 (3d Cir. 1998) (*quoting United States v. Frumento*, 563 F.2d 1083, 1090 (3d Cir. 1977)). The panel found no clear statement of the Commission's intent, and concluded that had the Commission considered the matter, it would limit the exemption to compensation-related transactions. 314 F.3d at 124. That is an incorrect reading of the Commission's intent.

Prior to 1996, Rule 16b-3 exempted only transactions pursuant to employee benefit plans. It is true, as the panel noted, that a significant motivating purpose behind the 1996 amendments was to promote employee benefit

plans and other compensatory arrangements. But that does not mean that the Commission sought to promote that purpose through a rule that is limited to such plans and arrangements. The purpose of a statute or rule does not necessarily define its intended scope.

It was not the compensatory nature of the transactions that made them suitable for exemption from Section 16(b). "Typically," the Commission explained when it adopted the rule, "where the issuer, rather than the tradingmarkets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uniformed shareholders and other market participants of the type contemplated by the statute." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 37260, 61 Fed. Reg. 30376, 30377 (June 14, 1996). "Based on its experience with the Section 16 rules," the Commission continued," transactions between the issuer and its officers and directors that are pursuant to plans meeting the administrative requirements, * * * or that satisfy other objective gate-keeping conditions, are not vehicles for the speculative abuse that Section 16(b) was designed to prevent." *Id*. The Commission viewed Section 16(b) liability as unnecessary in these transactions because they involve transactions with the issuer and because they are subject to "objective gate-keeping" conditions. Among those gate-keeping conditions were approval by the issuer's board or shareholders.

The Commission viewed satisfaction of one of these gate-keeping conditions, not the compensatory nature of the transaction, as providing the necessary protection to justify exemption under Rule 16b-3(d). Accordingly, the Commission stated that under the new rule "unlike the current rule, a transaction need not be pursuant to an employee benefit plan or any compensatory program to be exempt, nor need it specifically have acompensatory element." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 37260, 61 Fed. Reg. at 30379. Although the panel quoted this language, it seized on the use of the word "specifically" as implying that the grant, award, or other acquisition nevertheless must have some relation to compensation. That, however, was not the Commission's intention, and it is a reading that runs counter to the Commission's explanation of the rationale for the rule. The Commission did not rely on the compensatory nature of the transaction in determining when the exemption should be available under Rule 16b-3 (d).

In holding that the transactions must be compensation-related, the panel also quoted language from the release suggesting that the Commission adopted the term "other acquisitions" in response to "concern * * * that some participant-directed transactions (such as deferrals of bonuses into phantom stock and other deferred compensation programs) that are exempt under the current rule would lack an exemption under the new rule." 314 F.3d at 123-24 (quoting 61 Fed. Reg. at 30380). The Commission explained that the term "other acquisitions" was added "to make it clear that participant-directed acquisitions that are not pursuant to tax-conditioned plans may rely on this exemption [Rule 16b-3(d)]" so long as they are not "Discretionary Transactions," which are subject to Rule 16b-3(f). *Id*. at 124.

Elsewhere in the release, however, the Commission stated that "[o]ther

acquisitions by an officer or director from an issuer, including grants, awards and participant-directed transactions, will be exempt upon the satisfaction of any one of the three alternative conditions . . . [of Rule 16b-3(d)]." 61 Fed. Reg. at 30377. This statement shows that the Commission did not view "other acquisitions" as limited to participant-directed plans; it viewed the term only as "including" such plans.

Although the panel voiced policy reasons for its decision, reasons urged by the plaintiff as well, they are not policy reasons evidenced in the rule or the Commission's releases. The panel's decision countermands the Commission's intention to make application of Rule 16b-3 simpler. Participants in these transactions, who prior to this decision could clearly ascertain if the transaction satisfied one of the objective Rule 16b-3(d) "gate-keeping" conditions, and accordingly was exempt, will be left uncertain as to whether a court would subjectively view the transaction as sufficiently and legitimately compensation-related.

### II. THE PANEL MISCONSTRUED RULE 16b-7 AS NOT APPLYING TO RECLASSIFICATIONS INVOLVING ANY CHANGE AT ALL IN THE INSIDER'S INTEREST IN THE ISSUER.

The insiders' transactions are exempt from Section 16(b) by virtue of Rule 16b-7, which exempts certain "mergers, consolidations, and reclassifications." Inholding otherwise, the panel incorrectly held that the rule does not apply to reclassifications that either result in insiders increasing their proportional ownership of common stock or alter the risks and benefits of the insider's investment. 314 F.3d at 117. Here too, the panel went beyond the terms of the rule and the Commission's intent in adopting the rule.

In imposing this requirement, the panel assured that few reclassifications will be exempt under Rule 16b-7, since almost all reclassifications have at least one, and usually both, of the characteristics that the court found disqualifying. Indeed, if the original security and the security for which it is being exchanged were precisely the same, there typically would be little need for a reclassification at all.

The issue whether reclassifications are exempt from Section 16(b) was the subject of early litigation. Even before there was an applicable rule, the courts dealt with the issue by examining, on a case-by-case basis, whether the reclassification posed a risk of insider abuse. These cases often involved the drawing of fine distinctions, turning on such matters as whether the insiders' proportional investment in the company changed, whether the reclassification occurred at the insiders' initiative or on a class-wide basis, and what sort of disclosure had been made to other shareholders. In many cases, reclassifications were deemed to be "unorthodox" transactions not subject to Section 16(b). See Roberts v. Eaton, 212 F.2d 82 (2d Cir. 1954); Hayes v. Simpson, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,693, 1980 WL 1460 (S.D.N.Y. Nov.18, 1980); Rothenberg v. United Brands Co., [1977 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,045, 1977 WL 1014 (S.D.N.Y. May 11, 1977). See also Blau v. Lamb, 363 F.2d 507 (2d Cir. 1966). See also Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 595 n.24 (1973)("The term [`unorthodox transaction'], has been applied to stock conversions, exchanges pursuant to mergers and other corporate reorganizations, stock reclassifications, and

dealings in options, rights, and warrants.").

This approach changed following the adoption of Rule 16b-7. Although as originally adopted in 1952, the rule only applied to "mergers" and "consolidations," *see Notice of Proposal to Adopt a Rule Exempting from the Operation of Section 16(b) Certain Acquisitions and Dispositions of Securities Pursuant to Merger and Consolidations*, Exchange Act Release No. 4696, 1952 SEC LEXIS 63 (Apr. 1952), the Commission staff construed it as also applying to reclassifications. In a 1981 interpretive release, the staff stated that "Rule 16b-7 does not require that the security received in exchange be similar to that surrendered, and the rule can apply to transactions involving reclassifications." *Interpretive Release on Rules Applicable to Insider Reporting and Trading*, Exchange Act Release No. 18114, 1981 WL 31301, at *57 (Sept. 24, 1981). In 1991, the Commission amended the title of Rule 16b-7 to include "reclassifications." *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 28869, 56 Fed. Reg. 7242, 7272 (Feb. 21, 1991). The adopting release indicates that the change was not intended to effect any "substantive" changes to the rule, and reaffirmed the staff's 1981 view that the rule applies to reclassifications. *Id*. at 7262-63. Moreover, the Commission recently expressly described reclassifications as among the transactions exempted by Rule 16b-7. *See Form 8-K Disclosure of Certain Management Transactions*, Exchange Act Release No. 45742, 67 Fed. Reg. 19914, 19919 & n.56 (Apr. 23, 2002) (proposing release).

Although the rule does not contain specific standards for reclassifications, the standards for mergers and consolidations have been applied to reclassifications. In general terms, the rule provides that the acquisition of a security pursuant to a merger or consolidation is not subject to Section 16(b) if the security being relinquished is in a company that, prior to the merger or consolidation, owned 85% of either the stock or assets of all of the other companies party to the merger and consolidation. In relevant respects a reclassification is little different from a merger exempted by Rule 16b-7. In both cases, all stock in a class is exchanged on terms that have been approved by the board and/or shareholders. The exchange occurs on a class-wide basis. In thecase of a merger subject to the rule, the combining companies were already 85% cross-owned, so that the combination effects no major change in the acquiring company's business. In a reclassification, the issuing company remains identical — there is no change in the business. Indeed, the similarities between the two can be readily seen by the fact that a reclassification could also be effected by the issuer creating a new shell company, capitalizing it, merging the old company into the new, and then exchanging stock in the old company for stock in the new.

Thus, it would be inappropriate to impose upon reclassifications conditions that would not apply to mergers. Yet this is precisely what the panel did here. Although the panel recognized that the rule may exempt reclassifications, it held that here, where the insiders increased their common stock holdings and exchanged preferred stock for common stock with different rights and risks, the exemption was not available. This analysis misapplies and misconstrues the rule.

First, the panel held that because the insiders' percentage of common stock increased — Sterling's proportionate interest in the Fairchild Common Stock increased from 48.03% to 52.18% and National Semiconductor's increased

from 14.80% to 15.08% — Rule 16b-7 would not apply. Even if it were true that the insiders' overall investment in the company had increased, we do not believe that would make Rule 16b-7 unavailable. The rule by its terms exempts acquisitions that satisfy either 85% cross-ownership test. Where a merger involves a parent company buying out the remaining 15% of the other company's stock, the percentage ownership of the prior owners in the merged entity is going to change. Yet that fact does not mean the rule is unavailable.

In any event, in this case the insiders' investment in the company did not change. Their common stock position increased only to the extent the reclassification converted preferred stock into common stock. As a result of the transaction, their preferred stock interest declined to zero because the recapitalization extinguished that entire class. As the district court noted, and the panel did not dispute, these transactions presumably involved exchanges of financial interests of equivalent value. *Levy v. Sterling Holding Company, LLC.*, 2002 WL 187513, at *4. The percentage of common stock increased, but a financially equivalent amount of preferred stock was given up. Overall, the value of the insiders' investment in the company did not substantially change, if at all.

The only difference between the two interests, therefore, is that previously the insiders owned preferred stock, while after the reclassification they owned common stock. The panel viewed these securities as having substantially different risk characteristics because one enjoyed a fixed dividend and the other did not. The panel reasoned that this change was sufficient to remove the transaction from the exemptive scope of Rule 16b-7. The panel also appears to have based this conclusion at least in part on the fact that before the reclassification the preferred stock was not convertible into common stock. We do not believe that the language of Rule 16b-7 supports these distinctions.

If these were relevant distinctions for reclassifications, however, it would also be true for mergers and consolidations. A merger, after all, involves the exchange of securities of one company for those of another, and the exchange could readily involve a swap of preferred stock for common stock. Yet nothing in the rule excludes such a transaction from exemption under the rule. Indeed, as noted, the issuer here could have come within the literal terms of the rule simply by creating a 100% owned subsidiary, merging itself into the subsidiary, and giving the insiders common stock in the new company in exchange for their preferred. To interpret Rule 16b-7 to require the securities received to have the same risk characteristics as those exchanged is contrary to the language of the rule and introduces elements of subjectivity that would make it difficult to plan transactions in reliance on the exemption.

There is no reason to believe that an exchange of one form of equity for another financially equivalent form of equity should make the Rule 16b-7 exemption unavailable. Even under the old "unorthodox" transaction cases, a reclassification could be held judicially exempt from Section 16(b) even where preferred stock was exchanged for common stock. *See Roberts v. Eaton*, 212 F.2d at 82 (reclassification of common stock into preferred stock held not subject to Section 16(b)).

## CONCLUSION

For the foregoing reasons, the appellees' petition for rehearing or rehearing *en banc* should be granted. The Commission further requests that if the Court grants rehearing, it be allowed to file a brief more fully explaining its position to the Court.

Respectfully submitted,

MEYER EISENBERG
Deputy General Counsel

ERIC SUMMERGRAD
Deputy Solicitor

ALLAN A. CAPUTE
Special Counsel to the Solicitor

Securities and Exchange Commission
Washington, D.C. 20549-0606
(202) 942-0837 (Capute)

### Endnotes

[1] The provision does not apply to "Discretionary Transactions," as defined in Rule 16b-3, a category not relevant here.

*http://www.sec.gov/litigation/briefs/levy-sterling022703.htm*