# EXHIBIT C

Westlaw.

1999 WL 11540                                                                   Page 1
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

(SEC No-Action Letter)

*1 Skadden, Arps, Slate, Meagher & Flom LLP
Publicly Available January 12, 1999

LETTER TO SEC

January 11, 1999

OFFICE OF THE CHIEF COUNSEL

DIVISION OF CORPORATION FINANCE

SECURITIES AND EXCHANGE COMMISSION

450 FIFTH STREET, N.W.

WASHINGTON, D.C. 20549

Request for Interpretive Advice with respect to Rules 16b-3(d) and

16b-3(e) under Section 16 of the Securities Exchange Act of 1934

Ladies and Gentlemen:
 We are writing to request the Staff's views on several questions of general interest relating to the application of the current rules under Section 16 of the Securities Exchange Act of 1934 ("Section 16") to transactions occurring in the context of corporate mergers and relating to issuer securities, whether acquired pursuant to employee benefit plans, on the open market or otherwise.

1. Dispositions to the Issuer.

 Rule 16b-3(e) provides that any transaction (other than a Discretionary Transaction, which is not relevant for purposes of this letter) involving the disposition to the issuer of equity securities, including employee stock options and other derivative securities (hereinafter referred to as "Derivative Securities" and, collectively with nonderivative equity securities, "Issuer Securities"), will be exempt if the terms of such disposition are approved in advance by the board of directors ("Board") of the issuer, a committee of the Board that is composed solely of two or more "nonemployee directors" ("Committee"), [FN1] or the holders of a majority of the securities of the issuer.

FN1. For this purpose, we understand that this requirement will be satisfied where such approval is made by a subcommittee so composed or by a committee that, following the abstention or recusal of each member who is not a nonemployee director, is so composed. (American Society of Corporate Secretaries, SEC No-Action Letter, Dec. 11, 1996).

End of Footnote(s).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1999 WL 11540                                                                    Page 2
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**


(a) Conversion Constitutes "Disposition to Issuer." According to Release No. 34-37260 (the "Release"), for purposes of Rule 16b-3(e), the disposition of Issuer Securities held by the officers or directors of the target corporation who are subject to the reporting requirements of Section 16(a) ("Target Insiders") must be made to the target (issuer) corporation itself. Please confirm that, in a merger, (i) the conversion of target nonderivative equity securities into acquiror nonderivative equity securities, debt, cash or a combination thereof (hereinafter referred to as "Merger Consideration"), and (ii) the conversion of target Derivative Securities into acquiror Derivative Securities or the cancellation of target Derivative Securities in exchange for either a cash payment or acquiror nonderivative equity securities, each constitutes a disposition to the issuer of the target Issuer Securities so converted or cancelled for purposes of Rule 16b-3(e) and, accordingly, will be exempt if the conditions of such rule are otherwise satisfied.

(b) Identity of Payor. As noted above, the Release states that exemptive relief under Rule 16b-3(e) is available only if Issuer Securities are disposed of solely to the issuer and not to other parties, such as the acquiror. Please confirm that neither (i) the issuance or payment by acquiror (or a subsidiary of acquiror) of Merger Consideration in exchange for target nonderivative equity securities in a merger, (ii) the issuance by acquiror of acquiror Derivative Securities in exchange for target Derivative Securities in connection with a merger (whether the Merger Consideration consists of acquiror nonderivative equity securities, debt, cash or a combination thereof), nor (iii) the payment by acquiror (or a subsidiary of acquiror) of cash or the issuance of acquiror nonderivative equity securities as consideration for the cancellation of target Derivative Securities in connection with a merger (whether the Merger Consideration consists of acquiror nonderivative equity securities, debt, cash or a combination thereof), will cause the disposition of the target Issuer Securities to be viewed as having been made other than to the issuer, whether such issuance or payment is made immediately prior to, simultaneously with or immediately following consummation of the merger, provided that the target Issuer Securities are converted or cancelled simultaneously with or immediately prior to consummation of the merger. We note in this regard that (1) the Release speaks of the party to whom the disposition is made, not the party making the payment, and does not address the timing of payment, and (2) the acquiror (or its subsidiary) could be viewed as an agent of target with respect to such issuance or payment.

*2 (c) Separate Approval. For purposes of Rule 16b-3(e), if Board or Committee approval is relied upon (rather than shareholder approval) [FN2], may the approval requirement be satisfied by the approval by the target Board of a merger agreement that provides for the conversion and/or cancellation of all target Issuer Securities (whether held by Target Insiders or other shareholders) into acquiror Issuer Securities or other Merger Consideration, as described in clauses (i)-(iii) of paragraph (b) above (i.e., without any separate, special or more specific approval with respect to the target Issuer Securities held by the Target Insiders)?

FN2. The Release states that, if shareholder approval is to be the condition relied upon for exemption, (i) both the proxy card and proxy statement should provide that a vote to

Westlaw.

1999 WL 11540                                                          Page 3
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

approve the merger also will constitute a vote to approve insiders' exempt dispositions of Issuer Securities to the issuer, and (ii) the proxy statement should describe the security holdings of each officer and director as to which approval of an exempt disposition is solicited.

End of Footnote(s).

(d) Timing and Specificity of Any Required Separate Approval. If the Staff is unable to respond favorably to the immediately preceding question, (i) please advise whether the additional Board or Committee approval with respect to target Issuer Securities held by Target Insiders need be no more specific than is necessary for valid shareholder approval, as set forth in the Release (see footnote 2, above), i.e., whether it is sufficient if such approval specifies (1) that the reason for the approval is to exempt the dispositions for purposes of Section 16, (2) the identity of the Target Insiders either by category (e.g., "all target insiders"), by title or by name, and/or (3) the number of target Issuer Securities involved (individually or in the aggregate, and including any target Issuer Securities the beneficial ownership of which is attributed to the Target Insider), and (ii) please confirm that such additional approval may be obtained at any time prior to consummation of the merger, whether simultaneously with or following approval by the Board of the merger agreement.

2. Acquisitions from the Issuer.

Rule 16b-3(d) provides that any transaction (other than a Discretionary Transaction, which is not relevant for purposes of this letter) involving the acquisition from the issuer of Issuer Securities will be exempt if, among other things, prior approval of such acquisition by the issuer Board or Committee is obtained. In the context of mergers, the only target employees or directors for whom this exemption is relevant are those target employees or directors who become officers or directors with respect to the acquiror prior to or at the time of such acquisition ("New Acquiror Insiders").

(a) Conversion Constitutes "Acquisition from Issuer." Please confirm that the acquisition of acquiror Issuer Securities by New Acquiror Insiders, through the conversion of target Issuer Securities pursuant to a merger agreement (whether the Merger Consideration consists of acquiror nonderivative equity securities, debt, cash or a combination thereof, and irrespective of whether or not the Issuer Securities so acquired consist of the Merger Consideration (including, for example, the conversion of target Derivative Securities into acquiror Derivative Securities pursuant to a merger agreement under which the Merger Consideration consists solely of cash)), constitutes an acquisition from the issuer for purposes of Rule 16b-3(d) and, accordingly, will be exempt if the conditions of such rule are otherwise satisfied.

*3 (b) Separate Approval. For purposes of Rule 16b-3(d), if Board or Committee approval is relied upon (rather than shareholder approval), [FN3] may the approval requirement be satisfied by the approval by the acquiror Board of a merger agreement that provides for the conversion of all target securities (whether held by Target Insiders or other shareholders) into acquiror Issuer Securities (i.e., without any separate, special or more

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 11540                                                                     Page 4
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

specific approval with respect to the acquiror Issuer Securities to be acquired by New Acquiror Insiders pursuant to the merger)?

FN3. See footnote 2, above.

                              End of Footnote(s).

   (c) Timing and Specificity of Any Required Separate Approval. If the Staff is unable to respond favorably to the immediately preceding question, (i) please advise whether the additional Board or Committee approval with respect to acquiror Issuer Securities to be acquired by New Acquiror Insiders pursuant to the merger need be no more specific than is necessary for valid shareholder approval, as set forth in the Release (see footnote 2, above), i.e., whether it is sufficient if such approval specifies (1) that the reason for the approval is to exempt the acquisitions for purposes of Section 16, (2) the identity of the persons whose acquisitions of acquiror Issuer Securities are sought to be exempted, either by category (e.g., "all target insiders"), by title or by name, and/or (3) the number of Issuer Securities involved (individually or in the aggregate, and including any Issuer Securities the beneficial ownership of which will be attributed to the New Acquiror Insiders), and (ii) please confirm that such additional approval may be obtained at any time prior to consummation of the merger, whether simultaneous with or following approval by the Board of the merger agreement. Please also confirm that, if the approval described in this paragraph (c) is required to specify the identity of the persons whose acquisitions of acquiror Issuer Securities are sought to be exempted, such approval will not adversely affect the ability of the acquiror subsequently to determine that any such person is not, in fact, a New Acquiror Insider.
   (d) Insider Status at Time of Approval. We note that approval of a transaction prior to attainment of insider status frequently occurs in various contexts. For example, grants of stock-based awards are often made to a prospective employee who will become an insider upon his or her date of hire. Although the grant is approved by the Board or Committee in advance of the date of hire, the effective date of the grant normally occurs on the date that insider status commences. We have understood such grants to be exempt under Rule 16b-3(d) on the basis of the initial approval of the grant. In addition, the terms of a Board or Committee-approved grant (e.g., the award of a stock option) often contemplate a subsequent transaction (e.g., withholding of shares to pay taxes incurred upon exercise of the option). Where the optionee first becomes an insider subsequent to the initial grant, we do not believe that a second Board or Committee approval is required at the time insider status is attained in order for the share withholding to be exempt. Moreover, it is not uncommon, in the context of mergers, for the acquiror Board to approve the grant of acquiror Issuer Securities to one or more Target Insiders, including New Acquiror Insiders, effective upon consummation of the merger. In each of the above-described examples, as well as in the context of the conversion of nonderivative equity securities and the grant of acquiror Derivative Securities in a merger, we believe that to deny exemptive relief because of lack of insider status at the time of Board or Committee approval would be unduly burdensome to issuers and not in keeping with the intended goal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 11540                                                                   Page 5
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

of the new rules--simplicity and ease of administration.

 **\*4** Accordingly, please confirm that it is not necessary for New Acquiror Insiders to have already attained insider status with respect to the acquiror at or prior to the time of acquiror Board or Committee approval in order for the acquisition of acquiror Issuer Securities to be exempt under Rule 16b-3(d) in either of the following merger-related events: (i) the conversion of target Issuer Securities into acquiror Issuer Securities in the merger, and (ii) the grant by the acquiror Board or Committee, prior to the merger, of acquiror Issuer Securities to New Acquiror Insiders, effective upon consummation of the merger, assuming, in each case, that the approval otherwise satisfies the requirements discussed in paragraphs (b) or (c) above, as applicable.

\* \* \* \* \*

 We appreciate the Staff's time and attention in providing interpretive guidance with respect to these matters. Please call Neil Leff at (212) 735- 3269, Regina Olshan at (212) 735-3963 or Anne Beckman at (212) 735-2155 if you wish further clarification of the issues raised in this letter or if you would like to discuss them further.

Sincerely,
Neil M. Leff

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 New York Avenue, N.W.

Washington, D.C. 20005-2111

Tel: (202) 371-7000

SEC LETTER

1934 Act / s -- / Rule 16b-3(e)

1934 Act / s -- / Rule 16b-3(d)

January 12, 1999

Publicly Available January 12, 1999

Re: Skadden, Arps, Slate, Meagher & Flom LLP

 Incoming letter dated January 11, 1999

 You have asked the Division's views about the application of Rule 16b-3 under Section 16 of the Securities Exchange Act of 1934 ("Exchange Act") to transactions occurring in the context of corporate mergers.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 11540                                                                          Page 6
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

1. Dispositions to the Target Issuer.

  (a) Availability of Rule 16b-3(e). The conversion or cancellation of target equity securities (including target derivative securities) in each of the following transactions constitutes a disposition to the issuer of target equity securities eligible for exemption under Rule 16b-3(e), if the conversion or cancellation is simultaneous with or immediately before the related merger:

  (i) the conversion of target nonderivative equity securities into acquiror equity securities, debt, cash or a combination of different forms of merger consideration; and

  (ii) the conversion of target derivative securities into acquiror derivative securities or acquiror nonderivative equity securities, or the cancellation of target derivative securities for cash.

 The result is the same whether the target equity securities were acquired under employee benefit plans, on the open market or otherwise.

  (b) Identity of Payor. The payment of consideration directly to target equity security holders by the acquiror (or a subsidiary of the acquiror) in the dispositions described in paragraph 1(a) above will not cause these dispositions of target equity securities to be viewed as made other than to the target issuer. This position applies only if the target equity securities are so converted or cancelled simultaneously with or immediately before the merger. The time of payment does not affect the result.

 *5 2. Acquisitions from the Acquiror Issuer: Availability of Rule 16b-3(d). The acquisition of acquiror equity securities (including acquiror derivative securities) by officers and directors of the acquiror through the conversion of target equity securities in connection with a merger constitutes an acquisition from the acquiror issuer eligible for exemption under Rule 16b-3(d). This position applies equally to employees and directors of the target who become officers and/or directors of the acquiror before, or at the time of, the merger ("New Acquiror Insiders").

3. Approval Conditions.

  (a) Approving Entity. The approval conditions of Rule 16b-3(e) for the dispositions described in pargraph 1(a) may be satisfied only by the target. The approval conditions of Rule 16b-3(d) for the acquisitions described in paragraph 2 may be satisfied only by the acquiror.

  (b) Timing. In either case, these conditions may be satisfied at the same time as, or following, approval of the merger agreement by the respective issuer's board of directors, as long as they are satisfied before consummation of the merger.

  (c) Specificity of Approval. If full board approval, or approval by a committee of two or more Non-Employee Directors, is to be relied upon to exempt the transactions, this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 11540                                                                      Page 7
1999 WL 11540 (S.E.C. No - Action Letter)
**(Cite as: 1999 WL 11540 (S.E.C. No - Action Letter))**

approval must specify:

(i) The name of each officer or director;

(ii) The number of securities to be acquired or disposed of for each named person;

(iii) In the case of derivative securities acquired, the material terms of the derivative securities. Where target derivative securities are converted into acquiror derivative securities, this test will be satisfied where price is determined based on the merger consideration formula and non-price terms are determined by reference to the terms of target derivative securities that are converted; and

(iv) That the approval is granted for purposes of exempting the transaction under Rule 16b-3.

(d) Insider Status at Time of Approval. Approval may be granted before a New Acquiror Insider becomes an officer or director of the acquiror, for either:

(i) the acquisition of acquiror equity securities through the conversion of target equity securities in a merger; or

(ii) the grant of acquiror equity securities to New Acquiror Insiders effective upon consummation of a merger.

(iii) In either case, the grant of approval will not adversely affect the acquiror's ability subsequently to determine that a New Acquiror Insider has not in fact become an officer or director of the acquiror.

Because these positions are based on the representations made to the Division in your letter, it should be noted that any different facts or conditions may require different conclusions.

Sincerely,

Anne M. Krauskopf

Special Counsel

Securities and Exchange Commission (S.E.C.)

1999 WL 11540 (S.E.C. No - Action Letter)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.