# EXHIBIT D

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


S.E.C. Release No.

*1 Securities Exchange Act of 1934
Public Utility Holding Company Act of 1935
Investment Company Act of 1940
17 CFR Parts 228, 229, 240, and 249

OWNERSHIP REPORTS AND TRADING BY OFFICERS, DIRECTORS AND PRINCIPAL SECURITY
HOLDERS
File No. S7-21-94
RIN 3235-AF66
May 31, 1996

AGENCY: Securities and Exchange Commission

ACTION: Final rules

SUMMARY: The Securities and Exchange Commission ("Commission") is adopting amendments to
its rules and forms regarding the filing of ownership reports by officers, directors, and
principal security holders, and the exemption of certain transactions by those persons
from the short-swing profit recovery provisions of Section 16 of the Securities Exchange
Act of 1934 ("Exchange Act") and related provisions of the Investment Company Act of 1940
("Investment Company Act") and the Public Utility Holding Company Act of 1935. The revised
rules are intended to streamline the Section 16 regulatory scheme, particularly with
respect to transactions between an issuer and its officers and directors; simplify the
reporting system; broaden exemptions from short-swing profit recovery where consistent
with the statutory purposes; and codify several staff interpretive positions.

DATES: Effective date: August 15, 1996. The phase-in period for Rule 16b-3 is extended
until November 1, 1996 pursuant to Release No. 34-37261. For a discussion of transition
provisions, see Section VII.

FOR FURTHER INFORMATION CONTACT: Anne M. Krauskopf, Special Counsel, Office of Chief
Counsel, or Elizabeth M. Murphy, Special Counsel, Office of Disclosure Policy, at (202)
942-2900, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth
Street, N.W., Washington, D.C. 20549.

SUPPLEMENTARY INFORMATION: The Commission is adopting amendments to Rules 16a-1, 16a-2,
16a-3, 16a-4, 16a-6, 16a-8, 16a-9, 16b-3, and 16b-6 [FN1] promulgated under Section 16
[FN2] of the Exchange Act. [FN3] The Commission also is amending Rule 16b-2 [FN4] and
redesignating it as Rule 16a-11, [FN5] and adopting new Rules 16a-12 and 16a-13. [FN6]
Finally, the Commission is adopting revisions to Item 405 of Regulation S-K [FN7] and
Regulation S-B, [FN8] as well as to Forms 3, 4, and 5. [FN9]

TABLE OF CONTENTS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


  I. EXECUTIVE SUMMARY AND BACKGROUND

  II. TRANSACTIONS BETWEEN AN ISSUER AND ITS DIRECTORS OR OFFICERS
    A. General Approach
    B. Tax-Conditioned Plans
    C. Discretionary Transactions
    D. Grants, Awards and Other Acquisitions from the Issuer
 1. General; Participant-Directed Acquisitions
 2. Alternative Conditions
 3. Scope of Approval Required
 4. Non-Employee Director Definition
    E. Dispositions to the Issuer

  III. DERIVATIVE SECURITIES
    A. Compensatory Cash-Only Instruments
    B. Over-Allotment Options
    C. Surrender and Withholding Rights in Connection with Exercise or Tax Withholding
    *2 D. Value Derived from Market Price of an Equity Security

  IV. REVISIONS TO REPORTING SYSTEM
    A. Overall Approach
    B. Transactions No Longer Reported at All
    C. Transactions to be Reported on Form 5
    D. Transactions to be Reported on Form 4
    E. Joint and Group Reporting
    F. Trust Transactions
    G. Compliance with the Reporting Requirements
    H. Equity Swaps
    I. Changes in Forms and Reporting Codes

  V. ADDITIONAL EXEMPTIONS AND REVISIONS
    A. Dividend or Interest Reinvestment Plans
    B. New Exemption for Domestic Relations Orders
    C. Exemptions for Stock Dividend Transactions

  VI. 1995 SOLICITATION OF COMMENT REGARDING THE ON-GOING MERIT OF THE SHORT-SWING PROFIT
RECOVERY PROVISIONS OF SECTION 16

  VII. TRANSITION TO NEW RULES
    A. General Application
    B. New Rule 16b-3

  VIII. COST-BENEFIT ANALYSIS

  IX. SUMMARY OF FINAL REGULATORY FLEXIBILITY ANALYSIS


© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


X. STATUTORY BASIS AND TEXT OF THE AMENDMENTS

I. EXECUTIVE SUMMARY AND BACKGROUND

In February 1991, in response to developments in the trading of derivative securities,
the growth of complex and diverse employee benefit plans, and substantial filing
delinquencies, the Commission adopted comprehensive changes to the beneficial ownership
and short-swing profit recovery rules and forms applicable to insiders [FN10] pursuant to
Section 16. [FN11] While many aspects of the new Section 16 rules were favorably received,
unanticipated practical difficulties arose in implementing the new rules, particularly
with respect to thrift and similar employee benefit plans. In particular, issuers and
insiders stated that the application of current Rule 16b-3 to these plans is cumbersome,
presents significant record-keeping problems and discourages insiders from participation
in plan funds holding employer securities.

In order to address these concerns, in 1994 the Commission proposed further rule
changes designed to streamline the Section 16 regulatory scheme adopted in 1991. The
proposals were designed to facilitate the operation of employee benefit plans; broaden
exemptions from Section 16(b) [FN12] short-swing profit recovery where consistent with
statutory purposes; and codify several staff interpretive positions. [FN13] Comment also
was solicited on various suggested modifications to the Section 16(a) [FN14] reporting
requirements.

A follow-up release [FN15] solicited further comment on the treatment of compensatory
cash-only instruments based on the value of the issuer's equity securities. Such
instruments currently are not subject to Section 16 if they meet specified conditions. The
Commission requested comment as to whether the current exclusion is appropriate in light
of the fact that equity-based securities provide identical opportunities for profit
predicated on the underlying stock price movement, whether settled exclusively in cash or
stock, and whether, from the perspective of shareholders and analysts, cash-only
instruments have the same Section 16(a) informational value as instruments that may be
settled in stock.

*3 Finally, additional rule proposal were published in 1995 [FN16] to provide a
broader exemption from short-swing profit recovery for transactions between an issuer and
its directors or officers, whether or not in the context of employee benefit plans;
broaden the exemption for transactions in dividend and interest reinvestment plans; and
revise the Section 16(a) reporting scheme.

The 1995 proposals presented a simplified, flexible approach based on the premise that
transactions between an issuer and its officers and directors are intended to provide a
benefit or other form of compensation to reward service or to incentivize performance.
Generally, these transactions do not appear to present the same opportunities for insider
profit on the basis of non-public information as do market transactions by officers and
directors. Typically, where the issuer, rather than the trading markets, is on the other
side of an officer or director's transaction in the issuer's equity securities, any profit
obtained is not at the expense of uninformed shareholders and other market participants of
the type contemplated by the statute. [FN17] Based on its experience with the Section 16
rules, the Commission is persuaded that transactions between the issuer and its officers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

and directors that are pursuant to plans meeting the administrative requirements and
nondiscrimination standards of the Internal Revenue Code [FN18] and the Employee
Retirement Income Security Act of 1974 ("ERISA"), [FN19] or that satisfy other objective
gate-keeping conditions, are not vehicles for the speculative abuse that Section 16(b) was
designed to prevent. Accordingly, these transactions are exempted by new Rule 16b-3 as
adopted. [FN20]

As a corollary to this approach, it was proposed that cash-only instruments would be
subject to Section 16 to the same extent as other instruments that embody the opportunity
for profit based on price movement in the issuer's stock. These instruments would be
eligible for exemption from Section 16(b), but reportable under Section 16(a), to the same
extent as other issuer equity securities in transactions between an issuer and its
officers and directors. The Commission has determined to adopt this proposal as an
integral part of its revised approach to transactions between an issuer and its officers
and directors.

As a further corollary to the 1995 proposal, the Commission indicated that it
contemplated simplifying the reporting system. Certain routine transactions were proposed
to be exempted from reporting, while other transactions exempt pursuant to Rule 16b-3
would be reported on Form 4 within ten days after the end of the month in which the
transaction occurred. The Commission has determined to revise the reporting system so that
most transactions exempt pursuant to new Rule 16b-3 will be reported on an annual basis on
Form 5, and to eliminate the class of transactions currently reportable on the earlier of
the next required Form 4 or Form 5 by requiring that option exercises be reported on Form
4 and small acquisitions on Form 5. A number of exempt transactions of a routine nature,
such as acquisitions pursuant to tax-conditioned plans and dividend and interest
reinvestment plans, will not be required to be reported at all. [FN21]

**\*4** Eighty-nine letters of comment were received in response to the 1994 Release and
the Cash-only Release, and 38 letters were received in response to the 1995 Release.
[FN22] In general, the commenters expressed strong support for the tenor of the proposals,
with most preferring the 1995 version of Rule 16b-3 to the 1994 version. These commenters
thought that the revisions would alleviate many of the practical issues and uncertainties
that have arisen since adoption of the comprehensive Section 16 amendments in 1991. Many
commenters suggested modifications to the proposals, some of which are addressed in this
Release, as discussed throughout.

The rules adopted today essentially implement the 1995 proposals, as well as the
elements of the 1994 proposals not addressed in 1995. [FN23] Changes from the proposals
are discussed in the release below. Highlights of changes from the current rules are as
follows:

A. Transactions Between an Issuer and its Directors or Officers

. Generally, transactions between an issuer (including an employee benefit plan sponsored
by an issuer) and its directors or officers will be exempt from Section 16(b) if they
satisfy the applicable conditions of new Rule 16b-3, as set forth below:

. Routine transactions pursuant to specified tax-conditioned plans (such as thrift plans,
stock purchase plans and excess benefit plans) will be exempt from Section 16(b) without
further condition.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


. Fund-switching transactions or volitional cash withdrawals from an issuer equity
securities fund will be exempt if the election to engage in the transaction is at least
six months after the last election to engage in such a transaction that was opposite-way
(i.e., a previous acquisition if the transaction to be exempted is a disposition, and vice
versa).
. Other acquisitions by an officer or director from the issuer, including grants, awards
and participant-directed transactions, will be exempt upon satisfaction of any one of
three alternative conditions:
 o approval of the transaction by the board of directors of the issuer or a committee of
two or more Non-Employee Directors;
 o approval or ratification of the transaction by the holders of the majority of the
issuer's securities; or
 o satisfaction of a six-month holding period following the date of acquisition.
. Other dispositions by an officer or director to the issuer will be exempt if approved
by the board of directors of the issuer, a committee of two or more "Non-Employee
Directors," as defined, or the holders of the majority of the issuer's securities.
    B. Derivative Securities
. The current Section 16 exclusion from the definition of "derivative securities" for
instruments based on the value of the issuer's equity securities but settled exclusively
in cash [FN24] is rescinded. However, these instruments are eligible for exemption
pursuant to new Rule 16b-3.
. Options granted to an underwriter in a registered public offering to satisfy
over-allotments are expressly excluded from the definition of "derivative security."
[FN25]
**\*5** . Rights to withhold or surrender a security in satisfaction of the exercise price of
a derivative security, or in satisfaction of the tax-withholding consequences applicable
to the receipt, exercise or vesting of an issuer equity security (including a derivative
security) are excluded from the definition of "derivative security." [FN26]
    C. Reporting
. A number of transactions exempt from Section 16(b) that currently must be reported on
Form 5 no longer will be required to be reported at all, among them:
 o Exempt transactions pursuant to tax-conditioned plans (other than fund-switching
transactions and volitional cash withdrawals from an issuer equity securities fund);
 o Transactions pursuant to dividend or interest reinvestment plans [FN27] and domestic
relations orders; [FN28]
 o Transactions that change only the form of beneficial ownership; [FN29]
        o Certain transactions by a person who has ceased to be an insider; [FN30] and o
    Expirations or cancellations of certain derivative securities. [FN31]
    . Exercises and conversions of derivative securities, including employee stock
    options, whether or not exempt from Section 16(b), will be reported on Form 4.
    . All other exempt transactions and small acquisitions [FN32] will be reported
    annually on Form 5, with earlier reporting on Form 4 permitted.
    . Reporting will be permitted on a joint basis when more than one person subject to
    Section 16 is deemed to be a beneficial owner of the same issuer equity securities.


© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

[FN33]
. A trust will be subject to Section 16 only if the trust is the beneficial owner of
more than ten percent of a class of issuer equity securities registered pursuant to
Section 12 of the Act. [FN34]
. Item 405 of Regulations S-K and S-B [FN35] is revised to clarify the nature of the
issuer's obligation to review insiders' filings in order to determine whether there
are any delinquent reports that require disclosure. Item 405 disclosure will be
required to be placed under a separate caption.
. Insiders' obligation to report equity swap transactions is reiterated and
clarified, and a new reporting code is added for equity swaps.
D. Other Issues
. The exemption for the reinvestment of dividends and interest pursuant to dividend
and interest reinvestment plans [FN36] is revised to eliminate the requirement that
the plan be made available on the same terms to all holders of the class of
securities.
. A new exemption is provided for transactions pursuant to domestic relations
orders. [FN37]
. The exemption for stock splits, stock dividends and pro rata rights [FN38] is
expanded to exempt stock dividends paid in the securities of a different issuer,
such as spinoff distributions.
. A transaction that occurs after a person ceases to be an officer or director will
be subject to Section 16 only if it is not otherwise exempt from Section 16(b) and
is executed within six months of an opposite-way transaction subject to Section
16(b) that occurred while the person was an officer or director. [FN39]

*6 II. TRANSACTIONS BETWEEN AN ISSUER AND ITS DIRECTORS OR OFFICERS
  A. General Approach
 The amendments to Rule 16b-3 adopted today implement the approach set forth in the 1995
proposal to align better the regulatory requirements under the rule with the statutory
goals underlying Section 16. [FN40] Moreover, since benefit plans and compensation
payments and programs vary widely in design and purpose, the Commission is convinced that
a "one size fits all" regulatory scheme is impractical. The proliferation of unique plan
features over the last decade has led to legal uncertainty regarding the application of
Rule 16b-3 to these innovations. Rather than react to present plan developments, the
Commission intends to provide greater regulatory flexibility to accommodate future
developments.
 New Rule 16b-3 exempts from short-swing profit recovery any acquisitions and dispositions
of issuer equity securities (including those that occur upon the exercise or conversion of
a derivative security, whether in- or out-of-the-money) [FN41] between an officer or
director and the issuer, subject to simplified conditions. [FN42] A transaction with an
employee benefit plan sponsored by the issuer will be treated the same as a transaction
with the issuer. [FN43] However, unlike the current rule, a transaction need not be
pursuant to an employee benefit plan or any compensatory program to be exempt, nor need it
specifically have a compensatory element.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


 A transaction will be exempt if it satisfies the appropriate conditions set forth among
four alternative categories: Tax-Conditioned and Related Plans; Discretionary
Transactions; Grants, Awards and Other Acquisitions from the Issuer; and Dispositions to
the Issuer. [FN44] New Rule 16b-3 eliminates many of the conditions of current Rule 16b-3,
such as general written plan conditions, [FN45] the prohibition against transfer of
derivative securities, shareholder approval as a general condition for plan exemption, the
six-month holding period as a general condition for the exemption of grant and award
transactions, the disinterested administration or formula plan requirements regarding
grant transactions, and the window period requirement for fund-switching transactions and
stock appreciation right exercises.

   B. Tax-Conditioned Plans The exemption for transactions pursuant to
   tax-conditioned plans [FN46] is adopted substantially as proposed in 1995. This
   exemption is premised on the view that an adequate safeguard against speculative
   abuse is provided when a plan satisfies certain conditions imposed by the Internal
   Revenue Code and ERISA. [FN47] Accordingly, any acquisition or disposition of issuer
   equity securities, except as discussed below, will be exempt without further
   condition it made pursuant to a plan that satisfies the definition of a "Qualified
   Plan," [FN48] an "Excess Benefit Plan," [FN49] or a "Stock Purchase Plan." [FN50]
   Thus, for example, routine acquisitions pursuant to thrift and stock purchase plans
   generally will be exempt under this provision. The tax code coverage and
   participation requirements provide readily accessible, objective standards for
   designing an exempt plan.

**\*7** While most transactions pursuant to tax-conditioned plans may rely on this
exemption, fund-switching and cash withdrawal transactions arising solely from an
insider's volitional investment decision, defined as "Discretionary Transactions,"
instead must satisfy a timing requirement. [FN51]

As proposed, the exemption for tax-conditioned plans would have exempted without
further condition any acquisition pursuant to a plan or transaction that satisfied
the conditions applicable to performance-based compensation imposed by Section
162(m) of the Internal Revenue Code and the regulations thereunder. [FN52]
Commenters expressed divergent views on whether this basis for exemption would be
useful. The Commission is not adopting the Section 162(m) provision, since it
appears unnecessary in view of the expanded availability of the exemption for
grants, awards and other acquisitions. [FN53]

C. Discretionary Transactions

Many contributory employee benefit plans permit a participant to choose one of
several funds in which to invest (e.g., an issuer stock fund, a bond fund, or a
money market fund). Plan participants typically are given the opportunity to engage
in "fund-switching" transactions, permitting the transfer of assets from one fund to
another, at periodic intervals. Plan participants also commonly have the right to
withdraw their investments in cash from a fund containing equity securities of the
issuer. Fund-switching transactions involving an issuer equity securities fund and
cash distributions from these funds [FN54] may present opportunities for abuse
because the investment decision is similar to that involved in a market transaction.


© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

Moreover, the plan may buy and sell issuer equity securities in the market in order
to effect these transactions, so that the real party on the other side of the
transaction is not the issuer but instead a market participant.

In order to foreclose opportunities for abuse, the 1995 proposal contemplated that
such transactions in a tax-conditioned plan would be exempt only if effected
pursuant to an election made at least six months following the date of the most
recent prior such election. As adopted, this provision has been made applicable to
these transactions pursuant to any plan, whether or not tax-conditioned, [FN55]
given that it is the nature of the transaction, without regard to the type of plan,
that presents an opportunity for abuse. Accordingly, these transactions are defined
separately as "Discretionary Transactions," [FN56] and the exemption is placed in a
separate paragraph rather than included with the exemption for tax-conditioned
plans.

As favored by many commenters, the six month condition will apply only to "opposite
way" transactions; i.e., elections that effect acquisitions and dispositions must be
six months apart, but prior "same-way" elections within the preceding six months do
not render the exemption unavailable. [FN57] The six month condition will apply if a
prior election by the officer or director effecting an "opposite way" Discretionary
Transaction was made pursuant to any plan of the issuer in which the officer or
director participates. Some commenters favored an exemption premised on transactions
taking place during a window period. The Commission, however, prefers a more simple
approach that is more consistent with the statutory purpose. **8 The definition of
"Discretionary Transaction" excludes a number of transactions that are primarily for
retirement planning. [FN58] Transactions resulting from an election to receive, or
to defer the receipt of, securities and/or cash in connection with death,
disability, retirement or termination of employment, [FN59] as well as transactions
that effect a diversification or distribution which the Internal Revenue Code
requires an employee benefit plan to make available to a participant, [FN60] need
not comply with the six-month condition. [FN61] Thus, these transactions are
eligible for exemption pursuant to other applicable provisions of the amended rule
(most likely the exemption for tax-conditioned plans). Although such transactions
have an element of volition, the insider's opportunity to speculate in the context
of a death, disability, retirement or termination of employment would seem well
circumscribed, as is also the case with regard to the specified diversification and
distribution elections.

D. Grants, Awards and Other Acquisitions from the Issuer

1. General; Participant-Directed Acquisitions

Plans that authorize "grant and award" transactions provide issuer equity securities
to participants on a basis that does not require either the contribution of assets
or the exercise of investment discretion by the participants. For example, awards of
bonus stock pursuant to a salary-based formula and grants of options or restricted
stock are grant and award transactions. In contrast, a "participant-directed
transaction" requires the participant to exercise investment discretion as to either
the timing of the transaction or the assets into which the investment is made. For

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

example, the exercise of an option and a participant's election pursuant to a thrift
plan to invest either the employee or the employer contribution in issuer equity
securities are participant-directed transactions.
Both the current and the new rules provide a specific exemption for the grant or
award of issuer equity securities. The new rule makes the exemption more readily
available, since only one of three alternative conditions need be satisfied. [FN62]
Commenters responded favorably to this proposal. They expressed concern, however,
that some participant-directed transactions (such as deferrals of bonuses into
phantom stock and other deferred compensation programs) that are exempt under the
current rule [FN63] would lack an exemption under the new rule.
The 1995 proposal was intended to permit such transactions, which ordinarily do not
present opportunities for abuse, an opportunity for exemption. Accordingly, as
adopted, the proposed grant and award exemption has been retitled "Grants, Awards
and Other Acquisitions from the Issuer" to make it clear that participant-directed
acquisitions that are not pursuant to tax-conditioned plans may rely on this
exemption. [FN64] However, if a participant-directed transaction is a "Discretionary
Transaction," as defined in the new rule, it must instead satisfy the conditions
designed specifically for Discretionary Transactions in order to be exempt. [FN65]
*9 2. Alternative Conditions
The new rule provides three alternative bases for exempting the acquisition of
issuer equity securities (including derivative securities). The first two conditions
exempt an acquisition that is either: (i) approved in advance by the board of
directors or a committee of the board composed solely of two or more "Non-Employee
Directors;" [FN66] or (ii) approved in advance, or subsequently ratified not later
than the date of the next annual meeting of shareholders, by shareholders. [FN67] If
a transaction has satisfied more than one of the alternative approval conditions
specified in the new rule (for example, if board approval is followed by shareholder
approval) the issuer may rely on any condition that provides the basis for the
exemption.
Alternatively, an acquisition that does not satisfy any of the approval conditions
will be exempt if the securities acquired are held by the insider for six months
following the date of acquisition, or in the case of a derivative security, at least
six months elapse between the date of acquisition of the derivative security and the
date of disposition of the underlying security. [FN68] The six-month holding period
for dividend equivalent rights ("DERs") and shares purchased pursuant to the
automatic reinvestment of dividends will be deemed to commence on the date of
acquisition of the shares on which the DERs or dividends are paid. [FN69]
Commenters who addressed this segment of the 1995 proposal favorably noted both its
simplicity and flexibility. The Commission is persuaded that satisfaction of any of
the three conditions is a sufficient basis to exempt an acquisition of issuer equity
securities from the issuer.
3. Scope of Approval Required
When the rule requires "Non-Employee Director," [FN70] full board or shareholder
approval, the Commission intends that the approval relate to specific transactions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

rather than the plan in its entirety. However, approval of a plan pursuant to which
the specific terms and conditions of each acquisition are fixed in advance, such as
a formula plan, [FN71] will satisfy this condition, and the exemption also will be
available for a plan with an appendix providing for specific grants to specific
individuals. Note (3) has been added to the new rule, making the specific nature of
the approval required clear.

The note also provides that where the terms of a subsequent transaction are provided
for at the time a transaction is initially approved, the subsequent transaction will
not require further specific approval. If the terms of an award as approved provide
for a subsequent participant-directed election, that election will be exempt without
further condition if effected pursuant to those terms. For example, if an award of
restricted stock as approved permits an insider awardee to defer receipt pursuant to
a related deferred compensation plan, the insider's election to defer will be exempt
without further condition. In the same manner, the acquisition of underlying issuer
equity securities that occurs upon the exercise or conversion of a derivative
security will be exempt, provided that the exercise is pursuant to terms provided in
the derivative security originally approved in its acquisition. [FN72] Similarly, if
an award as originally approved specifically provided for the automatic grant of
reload options, each resultant grant of reload options pursuant to those terms will
not require subsequent approval.

*10 4. Non-Employee Director Definition

With respect to committee approval as a basis for exemption, "Non-Employee Director"
as proposed in 1995 was defined as a director who is not currently an officer of, or
otherwise employed by or a consultant to, the issuer, its parent or its subsidiary.
The 1995 Release further elaborated that, for this purpose, "consultant" would
include attorneys, accountants or others who indirectly receive compensation from
the issuer through firms that provide services to the issuer.

However, commenters criticized the "Non-Employee Director" definition to the extent
that it would prohibit any consulting arrangement with the issuer. These commenters
cited definitional uncertainty, the special expertise provided by retired senior
executives and other consultants, and the absence of problems stemming from such
persons' service as disinterested directors under the current rules [FN73] as
reasons for not imposing an absolute ban on consulting arrangements.

The Commission is persuaded that the reasoning supporting these comments justifies
permitting directors with limited consulting relationships with the issuer to serve
as Non-Employee Directors. Under the rule as adopted, [FN74] a "Non-Employee
Director" will be a director who is not currently an officer or otherwise employed
by the issuer, or a parent or subsidiary of the issuer; does not receive
compensation directly or indirectly from the issuer, its parent or subsidiary for
services rendered as a consultant or in any capacity other than as a director,
except for an amount for which disclosure would not be required pursuant to Item
404(a) of Regulation S-K; [FN75] does not possess an interest in any other
transaction for which disclosure would be required pursuant to Item 404(a) of
Regulation S-K; and is not engaged in a business relationship for which disclosure

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

would be required pursuant to Item 404(b) of Regulation S-K. [FN76] With respect to
a closed-end investment company, a "Non-Employee Director" [FN77] will be a director
who is not an "interested person" of the issuer, as that term is defined in Section
2(a)(19) of the Investment Company Act. [FN78]

Although the new rule would not prohibit Non-Employee Directors or the full board
from awarding themselves grants of issuer equity securities, such grants would be
subject to state laws governing corporate self-dealing. [FN79] The Commission
believes that traditional state law fiduciary duties facilitate compliance with the
underlying purposes of Section 16 by creating effective prophylactics against
possible insider trading abuses.

E. Dispositions to the Issuer

Both as proposed in 1995 and as adopted, the new rule exempts any transaction
involving a disposition of issuer equity securities to the issuer, provided that
such disposition is approved in advance by the board of directors, a committee of
Non-Employee Directors, or the shareholders. [FN80] However, if a disposition is a
Discretionary Transaction, as defined in the new rule, it must instead satisfy the
conditions specifically applicable to Discretionary Transactions to be exempt.
[FN81]

**\*11** The 1994 Release proposed amendments to current Rule 16b-3(f) to exempt exercise
withholding rights and the surrender or withholding of issuer equity securities in
satisfaction of a tax-withholding obligation. These proposed amendments are not
adopted because the same transactions will be exempted pursuant to the broad scope
of the new rule. [FN82] For example, the new rule will exempt dispositions of issuer
equity securities to the issuer pursuant to: (1) the right to have securities
withheld, or to deliver securities already owned, either in payment of the exercise
price of an option or to satisfy the tax withholding consequences of an option
exercise or the vesting of restricted securities, (2) the expiration, cancellation,
or surrender to the issuer of a stock option or stock appreciation right in
connection with the grant of a replacement option or right, or (3) the election to
receive, and the receipt of, cash in complete or partial settlement of a stock
appreciation right. Additionally, the new rule will give the issuer the flexibility
to redeem its equity securities from insiders in connection with non-exempt
replacement grants, and in discrete compensatory situations such as individual
buy-backs in connection with estate planning.

The exemption, which was favorably received by commenters, is adopted substantially
as proposed. [FN83] A note has been added to the new rule to clarify that if the
terms of a subsequent transaction are provided for in the transaction as initially
approved, the subsequent transaction does not require further specific approval.
[FN84] For example, the exemption will apply to the disposition to the issuer of a
derivative security upon its exercise or conversion, if such exercise is pursuant to
the terms provided in the derivative security as initially approved in its
acquisition.

In the context of a merger, the new rule will exempt the disposition of issuer
equity securities (including derivative securities) solely to the issuer, provided

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

the conditions of the rule are satisfied. [FN85] Dispositions of such securities to
parties other than the issuer, such as an acquiror, are not covered by the rule and
consequently would not be eligible for exemption under the rule. The specific terms
of the disposition, including price, will require prior approval of either the full
board, the committee of Non-Employee Directors or shareholders. If shareholder
approval is solicited and is to be the condition relied upon for exemption, the
proxy card and proxy statement both should provide that a vote to approve the merger
also shall constitute a vote to approve insiders' exempt dispositions of issuer
equity securities to the issuer. [FN86]

III. DERIVATIVE SECURITIES
  A. Compensatory Cash-Only Instruments
 The proposal to apply Section 16 and the rules thereunder to compensatory instruments
that can be redeemed or exercised solely for cash ("cash-only instruments") elicited
divergent views. Cash-only instruments provide performance-based cash compensation to
employees, using stock price as a measure of company performance. Although such
instruments do not provide employees with an equity interest in the employer that may be
traded in securities markets, they do provide the equivalent opportunity to profit based
on an increase in market price.
 **\*12** Currently, a cash-only instrument whose value is derived from the market value of an
issuer equity security [FN87] is excluded from the definition of derivative security if
it: (i) is awarded pursuant to an employee benefit plan that satisfies specified
provisions of Rule 16b-3, [FN88] or (ii) may be redeemed or exercised only upon a fixed
date or dates at least six months after award, or upon death, retirement, disability or
termination of employment. [FN89] The 1994 Release included a proposed modification of the
derivative security definition that would have excluded all cash-only instruments issued
in the context of an employer-employee compensation arrangement, including compensation
arrangements between a company and its non-employee directors. As discussed above, [FN90]
the subsequent Cash-Only Release solicited comment as to whether the existing exclusion
for cash-only instruments is overly broad in light of the purposes of Section 16.
 Most commenters responding to the Cash-Only Release favored an unconditional exemption
for cash-only instruments, stressing that such instruments are not transferable and hence
do not give rise to market transactions. However, the 1995 Release indicated that, as a
corollary to broadening the Rule 16b-3 exemption, the Commission contemplated rescinding
the exclusion for cash-only instruments. Such instruments thus would be on a par with
stock options and other instruments settled in stock, and would be both reportable and
eligible for exemption under Rule 16b-3 to the same extent. This approach is consistent
with the purpose of the 1995 proposals to eliminate bias toward compensation paid in cash
by exempting from the short-swing profit recovery provisions of Section 16(b) virtually
all compensatory transactions between an issuer and its officers and directors. Commenters
addressing this aspect of the 1995 proposals divided in their views; some indicated that
the exclusion should be eliminated because the insider retains the same opportunity to
profit as presented by an equity-settled instrument, while most favored retention of the
exclusion because transactions in these instruments do not affect securities markets.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

 As an integral aspect of the 1995 approach, the Commission has determined to rescind Rule
16a-1(c)(3) as contemplated. The Commission believes that because the opportunity for
profit based on price movement in the underlying stock embodied in a cash-only instrument
is the same as for an instrument settled in stock, cash-only instruments should be subject
to Section 16 to the same extent as other issuer equity securities. However, the
Commission also recognizes that cash-only instruments generally are not traded in market
transactions by insiders. Accordingly, transactions in these instruments are made eligible
for exemption on the same basis as other transactions in issuer equity securities between
an issuer and its officers and directors.
 This change renders uniform the application of a simplified set of rules applying to all
compensatory instruments that provide an opportunity to profit based on issuer equity
performance. It is anticipated that, by eliminating the more burdensome aspects of Rule
16b-3 and bringing cash-only instruments within its scope, the rules adopted today will
reduce the regulatory complexity and uncertainty that has discouraged the use of equity as
compensation. Accordingly, although transactions in cash-only instruments will be
reportable following effectiveness of the amended rules, [FN91] such instruments will be
eligible, and should usually qualify, for exemption from Section 16(b) pursuant to new
Rule 16b-3. [FN92] Commenters' concerns regarding the lack of an exemption for
participant-directed transactions in cash-only instruments, such as the deferral of salary
or fees into phantom stock, have been addressed by expanding the proposed exemption for
grants and awards to cover participant-directed acquisitions of issuer equity securities.
[FN93]
 **\*13** B. Over-Allotment Options
 Over-allotment options (sometimes referred to as "Green Shoe options") facilitate public
offerings and do not lend themselves to the speculative abuse Section 16 was designed to
prevent. Accordingly, in 1994 the Commission proposed codification of staff interpretive
relief [FN94] that would specifically exclude from the definition of "derivative security"
options granted to an underwriter in a registered public offering for the purpose of
satisfying over-allotments.
 In response, some commenters suggested that the exclusion should not be limited to
over-allotment options granted in registered public offerings, as proposed. Other
commenters differed in their responses to the request for comment as to whether the
exclusion should be limited specifically to those over-allotment options that comply with
the National Association of Securities Dealers ("NASD") regulation stating that it is
"unfair and unreasonable" for an over-allotment option in connection with a firm
commitment undertaking to exceed 15 percent of the amount of securities offered, exclusive
of the over-allotment option. [FN95] However, given that the primary need for the
exclusion relates to over-allotment options granted in registered public offerings, which
as a practical matter generally are subject to the NASD regulation, the rule is adopted in
the form proposed, [FN96] without a specific requirement for compliance with the NASD
regulation.
          C. Surrender and Withholding Rights in Connection with Exercise or Tax
       Withholding As discussed above, [FN97] the exercise of a right to surrender or
       withhold securities in connection with the exercise of a derivative security or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

satisfaction of a tax obligation will be an exempt disposition of issuer equity securities to the issuer. Whether such a right, when granted, constitutes a derivative security is a separate issue.

Currently, the right to withhold securities in satisfaction of a tax obligation is treated as a derivative security separate from the equity or derivative security to which it relates. [FN98] However, this right, as well as the right to have securities withheld in satisfaction of an exercise price, properly may be viewed as an integral feature of the related security. [FN99] Accordingly, the 1994 Release proposed a new rule that would exclude from the definition of "derivative security" these withholding rights, as well as rights to surrender previously owned securities in satisfaction of either an exercise price or a tax obligation incurred upon the exercise of derivative securities or the vesting of restricted shares.

Commenters suggested that the proposed rule's reference to "restricted shares" circumscribed too narrowly the class of securities, other than derivative securities, to which withholding and surrender rights apply. Commenters indicated that the receipt of a security also could be a taxable event. In response to these comments, the rule as adopted [FN100] has been broadened to exempt also withholding and surrender rights that apply to "equity securities" rather than only "restricted shares," and that arise with respect to the receipt as well as the exercise or vesting of a derivative or equity security. With respect to a tax-withholding right, the exclusion from the definition of "derivative security" is not limited to the insider's marginal tax rate with respect to the underlying transaction. However, the amount withheld must be applied to the tax obligation generated by the underlying transaction.

**\*14** D. Value Derived from Market Price of an Equity Security

In the 1994 Release the Commission proposed an amendment to the definition of "derivative security" [FN101] to codify the staff interpretive position that an instrument is not within the scope of Section 16 if it includes a material non-market price based condition (such as return on equity) to exercise or settlement. [FN102] Although the Commission endorses the application of this analysis to date, the Commission also recognizes the advantage in retaining the interpretive role of the staff to modify or develop further this analysis as may be appropriate with respect to new instruments that may be developed in the future. Accordingly, the proposed amendment is not adopted, and questions regarding this analysis should continue to be addressed to the staff. For purposes of this interpretive analysis, a condition will be considered "material" only if it possesses substance independent of the passage of time or continued employment. Most importantly, the Commission believes that under the new rule much of the incentive to characterize these instruments one way or the other will evaporate. In almost all cases, they will be exempt from Section 16(b) because they will be able to satisfy easily one of the simplified approval conditions. Consequently, the only effect of a particular characterization is on the need for and timing of any reporting under Section 16(a). The Commission does not believe that relief generally will be needed for this purpose.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


  IV. REVISIONS TO REPORTING SYSTEM
    A. Overall Approach
 In the 1994 Release, the Commission stated that it was reconsidering its approach to the
reporting of transactions pursuant to the Section 16 regulatory scheme. The release,
without endorsing a specific proposal, solicited comment on five alternative proposals
seeking to simplify reporting through the following three different basic approaches: (1)
deleting or substantially reducing the reporting of exempt transactions; (2) reducing the
flexibility currently provided Insiders with respect to use of Form 4 or 5 to report a
number of exempt transactions; and (3) requiring issuer annual reporting of Insider
holdings and information as to transactions during the fiscal year.
 These varied approaches highlighted several questions as to what extent, if at all,
investors need information with respect to exempt transactions and whether investors need
a reconciliation of insiders' equity holdings from year to year. The 1994 Release also
requested comment on whether exercises and conversions of derivative securities exempt
from Section 16(b), as well as small acquisitions, should continue to be reported on an
Insider's next required Form 4 or 5, whichever is earlier.
 As a corollary to the amendments to Rule 16b-3 proposed in 1995, the 1995 Release
requested comment on an additional reporting approach. Pursuant to the scheme contemplated
by the 1995 Release, several types of transactions, such as routine acquisitions in
broad-based employer plans, would not need to be reported at all. The remaining
transactions, including grants and awards exempt under Rule 16b-3, generally would be
reported on a Form 4 no later than ten days following the end of the month in which the
transaction occurred. Exempt option exercises either would have remained reportable on an
insider's next required Form 4 or 5, or would have been reported on Form 4.
 **\*15** The approach selected by the Commission is based on the 1995 approach, but includes
elements from the 1994 Release. As outlined in Sections IV.B through D below, the
revisions simplify the reporting framework by providing that several types of transactions
exempt from Section 16(b) no longer will be required to be reported at all. Transactions
exempt from short-swing profit recovery that still must be reported will be reported on
Form 5, and non-exempt transactions will be reported on Form 4, except that exercises and
conversions of derivative securities (whether or not exempt) will be reported on Form 4,
and small acquisitions will be reported on Form 5. There no longer will be a category of
transactions reported on a "next required Form 4 or Form 5, whichever is earlier" basis,
which commenters have criticized as being confusing and possibly leading to inadvertent
late filings. The Commission believes that this new approach simplifies insiders'
reporting obligations without adversely affecting the timing and amount of information
that is significant to investors.
 The 1994 Release solicited comment on whether the Commission should eliminate the "total
holdings" column in Forms 4 and 5 or simplify the data provided by insiders to reconcile
their total holdings. Alternatively, commenters were asked to consider whether a new
column should be added to Forms 4 and 5 requiring insiders to reconcile their current
holdings with those reported in a previous filing, particularly if exempt transactions no
longer were to be reported.
 Although several commenters supported elimination of the total holdings columns, they are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
(Cite as: 1996 WL 290234 (S.E.C. Release No.))

being retained. Form 4 disclosure of total holdings assists users of Section 16
information in evaluating the significance of a transaction to a particular insider, and
Form 5 total holdings provide a useful reconciliation of changes in holdings resulting
from exempt and other types of transactions permitted to be reported on a deferred basis.
 The Commission also has decided not to impose any new reconciliation requirements on
insiders. Instead, as currently, the requirement to report total holdings on Forms 4 and 5
will remain limited to the class of securities to which a transaction is reported, and
changes in holdings associated with transactions eligible for deferred reporting on Form 5
will not have to be reflected in the month-end total holdings reported on Form 4, unless
the transaction voluntarity has been reported earlier on Form 4. [FN103]
 Also in keeping with current practice, insiders will reflect changes in holdings
resulting from transactions that are exempt from Section 16 reporting in the holdings
column of the next otherwise required Form 4 or 5 filed to report a transaction involving
the same class of securities. Insiders may choose, but are not required, to include
footnote disclosure indicating the date and nature of transactions not required to be
reported. To the extent that information about a transaction not required to be reported
under the revised rules is not readily available, the insider should provide a "best
estimate" of the change in holdings resulting from the transaction. [FN104] The purpose of
the best estimate is not indirectly to require insiders to report transactions exempt from
Section 16(a), but rather, to provide users of Section 16 information with holdings
information that is as accurate as reasonably possible. [FN105]
 *16 In a separate effort to facilitate the filing of Section 16(a) reports and encourage
the speedy dissemination of information considered valuable by many members of the
investment community, the Commission has expanded the capacity of the EDGAR system to
accommodate the electronic filing of those reports. [FN106] Insiders have been able to
electronically file their Section 16 reports on a voluntary basis since December 18, 1995.
[FN107]
    B. Transactions No Longer Reported at All
. "Spinoff" or other dividend transactions in which equity securities of a different
issuer are distributed to insiders of an issuer [FN108]
      . Acquisitions pursuant to a dividend or interest reinvestment plan [FN109] .
      Transactions in a tax-conditioned plan, [FN110] except for discretionary intra-plan
      transfers and cash distributions [FN111] . Post-termination transactions by a former
      officer or director that are exempt from Section 16(b) or that do not occur within
      six months of an opposite non-exempt transaction [FN112]
      . Acquisitions or dispositions of securities pursuant to a domestic relations order
      meeting certain conditions of the Internal Revenue Code [FN113]
      . Transactions reflecting a mere change in form of beneficial ownership [FN114]
      . Exempt cancellations or expirations of a long derivative security where no value
      is received [FN115]
      The above are transactions that must be reported under current rules, but will not
      be reported under the revised rules. [FN116] In addition to providing a means for
      enforcing Section 16(b) short-swing profit liability, Section 16(a) reporting serves
      the separate purpose of informing the market of transactions that reflect insiders'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

views of their companies' prospects. Because the transactions listed above generally
do not provide investors meaningful information consistent with this purpose, the
Commission deems it appropriate to relieve insiders from unnecessary burdens by
exempting these transactions from reporting. There was nearly unanimous support
among the commenters for these revisions, which are adopted substantially as
proposed. The revised rules provide a specific exemption from Section 16 for changes
in the form of beneficial ownership (but not in the extent of an insider's pecuniary
interest in the subject securities). [FN117] Although commenters generally supported
the proposal to add a new transaction code to Form 5 to facilitate the reporting of
these transactions, several commenters suggested eliminating any reporting
requirement regarding changes in the form of beneficial stock ownership. Since these
transactions do not reflect any change in an insider's pecuniary interest in an
issuer's equity securities, reporting seems to serve little purpose, and the
Commission has determined that they should be exempt from reporting. [FN118]
C. Transactions to be Reported on Form 5
. Transactions exempt from Section 16(b), except for: (1) transactions listed in
Section IV.B above that are not required to be reported at all pursuant to the
changes being adopted; and (2) exempt exercises and conversions of derivative
securities [FN119]
**\*17** . Small acquisitions [FN120]
A substantial number of commenters supported an alternative reporting approach
described in the 1994 Release involving elimination of the requirement to report
transactions exempt from Section 16(b) liability, and many also supported the
elimination of Form 5. In contrast, however, a number of commenters thought that the
requirement to report exempt transactions should be retained, and indicated that
Form 5 is a useful document.
As discussed above, the Commission is eliminating the reporting of several classes
of exempt transactions, including non-volitional transactions in tax-conditioned
plans. The Commission expects that elimination of reporting of these routine plan
transactions will greatly alleviate insiders' burden of reporting exempt
transactions without resulting in any significant loss of information that users of
Section 16 information find valuable.
The Commission believes, however, that the reporting of other types of exempt
transactions, such as option grants and other acquisitions and dispositions of
securities in plans that are not tax-conditioned, may provide the marketplace with
useful information. These transactions typically are less automatic and may reflect
insiders' views of their companies' prospects. The Commission also believes that
continued annual reporting of these transactions on Form 5 is appropriate.
In view of the change discussed above concerning the treatment of cash-only
instruments that derive value from the market value of equity securities of the
issuer, [FN121] transactions involving such instruments will be reported on Form 4
or 5, depending on whether they are exempt. It is anticipated that most of these
will be exempt pursuant to new Rule 16b-3 and thus reportable on Form 5.
Pursuant to the reporting scheme contemplated by the 1995 Release, exempt grants,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

awards and dispositions of securities in plans that are not tax-conditioned, as well
as intra-plan transfers and cash distributions in tax-conditioned plans, would have
been reported on Form 4 no later than ten days after the close of the month in which
the transaction occurred. The Commission has determined to require reporting of
these transactions on Form 5 rather than Form 4, in view of the remarks of many
commenters who felt that the accelerated reporting of exempt transactions on Form 4
would prove unworkable as the result of the necessary plan information not being
available in sufficient time to meet Form 4 filing deadlines. Further, while some
commenters expressed a preference for reporting transactions on Form 4 rather than
waiting until year-end to file a Form 5 and possibly overlooking a transaction,
others expressed a need for flexibility and indicated that annual reporting is
preferable. Those who prefer voluntarily to report exempt transactions on Form 4, of
course, may continue to do so, as is currently permitted.

The 1995 Release also proposed elimination of the requirement that gifts be
reported. Since some commenters find gift activity to be a useful indication of an
insider's view of the company's prospects (for example, where a large charitable
gift effects a significant disposition) the requirement to report gifts on Form 5 is
retained.

*18 Small acquisitions, which currently are reported on a next required Form 4 or
Form 5 basis, will be reported on Form 5. [FN122] The 1994 Release solicited comment
as to whether reporting could be made more convenient for insiders, consistent with
the informational needs of the investing public, by permitting small acquisitions to
be reported solely on Form 5, and the majority of commenters favored this approach.
[FN123]

Additionally, as proposed in the 1994 Release, the small acquisitions reporting rule
is revised to exclude from the $10,000 threshold acquisitions occurring within the
prior six months of the current acquisition that were exempted by rule from Section
16(b), or previously reported on Form 4 or 5. The revised rule also clarifies, as
proposed, that the current acquisition cannot be disregarded in calculating the
$10,000 threshold. All the commenters remarking on these clarifications supported
them.

D. Transactions to be Reported on Form 4

. Transactions not exempt from Section 16(b), except for small acquisitions [FN124]
. Exercises or conversions of a derivative security, whether or not exempt from
Section 16(b) [FN125] Transactions not exempt from short-swing profit recovery that
currently are reported on Form 4 generally will continue to be reported on Form 4,
including non-exempt exercises and conversions of derivative securities. In
addition, as a change from the current system, exercises and conversions of
derivative securities exempt from short-swing profit recovery under either new Rule
16b-3 or Rule 16b-6(b) always will be reported on Form 4, [FN126] since the
Commission is eliminating the current method of reporting these transactions on a
next Form 4 or Form 5 basis. Reporting of these transactions has been shifted to
Form 4 rather than Form 5 due to concerns expressed by commenters that the timing or
option exercises represents an important indication of insiders' views of their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

companies' prospects.
E. Joint and Group Reporting
Currently, when more than one person subject to Section 16 is deemed to be a
beneficial owner of the same equity securities, all such persons must report as
beneficial owners and file separate reports. To reduce this duplicative reporting,
the Commission is adopting rules that permit such persons to file their reports
either separately or jointly, as proposed in the 1994 Release. [FN127]
Under the new reporting scheme, where persons in a group have reporting obligations,
the filing of collective reports on behalf of all group members is permitted.
[FN128] Such joint and group filings, and any amendments, may be submitted by any
designated constituent beneficial owner. Required Information must be given for each
beneficial owner, and such filings must be signed by, or on behalf of, each
beneficial owner by an authorized person, with statements confirming the delegation
of signature authority attached to the filing.
Beneficial owners making a joint or group filing may authorize one of the beneficial
owners or a third party to sign on their behalf, provided that confirming statements
are attached to the filing, or are provided by amendment as soon as practicable,
with respect to each owner delegating signature authority, unless such a
confirmation still in effect is on file with the Commission. [FN129] Of course, to
the extent a sufficiently broad power of attorney previously was filed, such as with
a Schedule 13D, that power of attorney may be incorporated by reference in a Section
16(a) filing. Each beneficial owner will retain individual liability for compliance
with the filing requirements, including the obligation to assure that the filing is
timely and accurately made. [FN130]
*19 Comment was solicited in the 1994 Release as to whether, in the alternative,
authority to make a group Section 16 filing could be presumed based on the filing of
a group Schedule 13D, such that all group members thereby would be deemed to have
granted authority to any group member to file a Section 16 form. The commenters
rejected the creation of such a presumption under any circumstances other than a
sufficiently broad power of attorney, i.e., one that specifically authorizes the
beneficial owner to file Section 16 reports on his or her behalf. One of the
commenters noted that a Schedule 13D group member could file Section 16 reports on
behalf of another group member who may not even be aware that he or she has become
subject to Section 16, or who may file duplicative reports. Therefore, authority to
make a group Section 16 filing will not be presumed based upon the filing of a group
Schedule 13D.
F. Trust Transactions
Under the revised rules, and as proposed in the 1994 Release, a trust is subject to
Section 16 only if it beneficially owns more than ten percent of a class of
registered equity securities of an issuer. [FN131] The Commission has rescinded the
provision imposing Section 16 reporting obligations on a trust that does not own
more than ten percent of an issuer's securities if it has an insider trustee with
investment control over the issuer's securities held by the trust, and the trustee
or a member of the trustee's immediate family has a pecuniary interest in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

securities. [FN132] Since the primary effect of the current dual reporting standard
is to create duplicative reporting obligations, particularly with respect to family
trusts, the imposition of independent Section 16 obligations on the trusts does not
appear necessary.

There will continue to be some instances where a trust and a trust beneficiary that
both are subject to Section 16 must report separately with respect to the same
transaction because they share investment control. The 1994 Release proposed adding
a new note to the reporting rules to provide that transactions attributed to a trust
beneficiary may be reported by the trustee on behalf of the beneficiary. A commenter
objected to the proposed note on grounds that a trustee should not report on behalf
of a trust beneficiary unless formally authorized to do so. Therefore, the note has
been modified to indicate that, as currently, a trustee may file a separate report
on behalf of a beneficiary if a statement confirming the delegation of signature
authority is filed with the Commission. [FN133] The trustee also may file a
consolidated report on behalf of the trust and one or more trust beneficiaries if
authorized to do so by the beneficiaries. Regardless of whether the trustee reports
on behalf of a beneficiary or the beneficiary personally files reports, the
beneficiary subject to a reporting requirement retains individual liability for
compliance with that requirement.

G. Compliance with the Reporting Requirements

**20** Under the revised rules, as proposed, registrants will be required to set off
any disclosure required by Item 405 of Regulation S-K or S-B of insider
non-compliance with Section 16(a) reporting obligations under an appropriate and
discrete caption. [FN134] In response to commenters' remarks, this new caption will
read "Section 16(a) Beneficial Ownership Reporting Compliance" rather than "Section
16(a) Reporting Delinquencies," as proposed in the 1994 Release. The new caption
should enable interested parties readily to locate this disclosure, which often
consists of only a sentence or two, and prevent the information from being buried
among unrelated disclosure.

In addition, Item 405 is revised to clarify the nature of the issuer's obligation to
review insiders' filings in order to determine whether there are any delinquent
reports that must be disclosed. The issuer is entitled to rely on the Forms 3, 4 and
5 furnished to it, as well as written representations by the insider that no Form 5
is required.

New language has been added, as proposed, to make it clear that the issuer is
obligated to consider the absence of certain forms. [FN135] The absence of a Form 3
is an indication that disclosure is required. Similarly, the absence of a Form 5 is
an indication that disclosure is required, unless the issuer has received a written
representation that no Form 5 is required, or otherwise knows that no such filing is
required. [FN136] While some commenters objected to this clarification on grounds
that it would place an inappropriate burden of investigation on issuers to determine
that a form is not required, the Commission views it merely as a codification of
previous Commission guidance concerning issuers' obligations.

The 1994 Release solicited comment on whether Item 405 should require issuers to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
(Cite as: 1996 WL 290234 (S.E.C. Release No.))

include in their filings an affirmative statement that no Section 16(a)
delinquencies were required to be reported, if such was the case. It had been
suggested that an affirmative statement requirement would prevent issuers from
overlooking the Item 405 disclosure requirement. Since most of the commenters
addressing the issue opposed an affirmative statement requirement, and there is
little evidence that issuers are overlooking Item 405 disclosure, the Commission is
not adopting such a requirement.

Finally, as noted in the 1994 Release, the Commission is aware of and encourages the
practice of many issuers to assist their officers and directors in complying with
their Section 16(a) reporting obligations. [FN137] Since the use of powers of
attorney is permitted, it is also possible for an issuer to coordinate the filing of
its officers' and directors' reports by having the corporate secretary or other
agent obtain powers of attorney from these reporting persons, collect information
every month about their transactions subject to Section 16, and file required
reports by the due date. [FN138] H. Equity Swaps

The 1994 Release contained a section analyzing Section 16 issues relating to equity
swaps, and soliciting comments upon the analysis and related issues. [FN139] Equity
swaps are individually negotiated contracts in which the specific terms may vary
from agreement to agreement. For instance, an equity swap may take the form of an
agreement in which one party holding shares of equity securities agrees to pay, or
"swap," the return [FN140] on those securities in exchange for the return on an
equity index, basket of equities, or an interest rate-based cash flow. Generally,
commenters agreed that the Commission's analysis of equity swaps as involving the
economic equivalent of tandem stock appreciation and depreciation rights reflects
economic reality. Some, however, suggested simplified approaches to analysis and
reporting.

**\*21** The Commission reiterates that Section 16 consequences arise from an equity swap
transaction where either party to the transaction is a Section 16 insider with
respect to a security to which the swap agreement relates. [FN141] The Commission
agrees with commenters, however, that any manner of reporting an equity swap, or an
instrument with similar characteristics, that provides an adequate description is
appropriate. The specific method of reporting described in the 1994 Release is not
the only acceptable method. However, there are certain items of information that
must be set forth for an adequate presentation. To provide an adequate description,
an insider must report the entry into and termination of the equity swap, as well as
any interim events to the extent such events change the insider's call or put
equivalent position. [FN142] To be adequate, each report must provide the following
information: (1) the date of the transaction; (2) the term; (3) the number of
underlying shares; (4) the exercise price (i.e., the dollar value locked in); (5)
the non-exempt disposition (acquisition) of shares at the outset of the term; (6)
the non-exempt acquisition (disposition) of shares at the end of the term (and at
such earlier dates, if any, where events under the equity swap cause a change in a
call or put equivalent position); (7) the total number of shares held after the
transaction; and (8) any other material terms. [FN143]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

Some commenters suggested that equity swaps in general or certain aspects of them
should be regarded as excluded or exempt from Section 16. The Commission is not
persuaded, however, that any exclusion or exemption currently is available or that
equity swaps should be so excluded or exempted.

Numerous issues are raised under the federal securities laws by equity swaps and
other instruments that shift some or all of the economic interests and risks of an
equity security. Since record and beneficial ownership does not necessarily reflect
who holds the voting, investment or income interests of a security, it may be
appropriate in areas other than Section 16 to assure that the regulatory structure
reflects the economic realities of these transactions. The Commission is continuing
to consider the legal and disclosure issues raised by these arrangements under the
federal securities laws, including Schedule 13D reporting, Rule 144, [FN144] Rule
144A, Regulation S, [FN145] and disclosure of security holdings and executive
compensation. [FN146]

I. Changes in Forms and Reporting Codes

As proposed in the 1994 Release, when an insider exercises an option acquired
pursuant to a Rule 16b-3 plan and immediately sells a portion of the shares to pay
the exercise price under a cashless exercise program, the insider will be able to
reflect the sale of the portion of shares necessary to satisfy the exercise price by
using the transaction code for payment of an option exercise price by delivery or
withholding of securities, [FN147] rather than the general sale of security code,
[FN148] provided that the sale is to the issuer. Commenters agreed that it was
appropriate to use the same code for these transactions since they all constitute
cashless exercises.

**\*22** A new transaction code also has been included in Forms 4 and 5 to be used for
transactions in equity swaps and instruments with similar characteristics. [FN149]
This will be in addition to whatever other codes are used to describe the
transaction. [FN150] The new code will assist the Commission and users of Section 16
information in identifying these transactions.

Additionally, the Instructions to Forms 3, 4 and 5 are revised to state that the
forms may be submitted to the Commission in electronic format at the option of the
reporting person. [FN151] The Instructions also are modified to indicate that
insiders may attach a page of 8 1/2 by 11 inch white paper to reflect additional
comments to the forms, if the space provided on the forms is insufficient. [FN152]
The current rules require insiders to reflect supplemental information on additional
copies of the forms.

Several transaction codes have been modified or deleted from the Instructions to
Forms 4 and 5 in accordance with the revisions. [FN153] Finally, Forms 3, 4 and 5
have been revised to accommodate joint and group filing. [FN154]

V. ADDITIONAL EXEMPTIONS AND REVISIONS
  A. Divident or Interest Reinvestment Plans
Current Rule 16b-2 exempts from the short-swing profit recovery provisions of Section
16(b) the acquisition of issuer equity securities resulting from reinvestment of dividends

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

or interest on securities of the same class, if made pursuant to a plan, available on the
same terms to all holders of that class of securities, providing for regular reinvestment
of dividends or interest. Concerns have been expressed that the requirement that the plan
be made available to all holders of the class (the "all-holders requirement") can impose
significant burdens, such as the outlay of significant sums to comply with laws governing
securities offerings in foreign jurisdictions, on companies that wish to allow for insider
participation.

  Accordingly, in 1995 the Commission proposed to modify this requirement, noting that such
a stringent participation requirement did not appear necessary to preclude the opportunity
for speculative abuse by insiders. The rule was proposed to be amended to exempt
acquisitions resulting from reinvestment of dividends or interest on securities of the
same class if made pursuant to a plan that meets three conditions: First, it must provide
for the regular reinvestment of dividends or interest. Second, the plan must be
broad-based and not discriminate in favor of employees of the issuer. [FN155] Third, the
plan must operate on substantially the same terms for all plan participants. [FN156]

  Commenters agreed that the proposed modification is appropriate and serves the goal of
reducing administrative burdens while protecting against possible speculative abuse by
officers and directors. Commenters noted particularly that the "all-holders" provision is
not essential to eliminate abuse, and that modification of this provision would
substantially reduce the costs imposed by the requirement that such plans be made
available to odd-lot holders and shareholders domiciled abroad. The amendment is adopted
as proposed, with minor clarifying changes. [FN157]

   *23 B. New Exemption for Domestic Relations Orders
  The current rules limit the exemption for the disposition of securities pursuant to a
qualified domestic relations order ("QDRO"), as defined in the Internal Revenue Code or
Title I of ERISA, and the rules thereunder, to employee plan securities. [FN158] Since
such dispositions are unlikely to be influenced by access to inside information, this
limitation appears unnecessary. Accordingly, the 1994 proposal included a general
exemption for such dispositions.

  By interpretation, the current exemption has been construed to permit the transfer of
securities, issued under a plan that is not subject to <u>Section 401(a) of the Internal
Revenue Code</u>, pursuant to a "domestic relations order" that satisfies certain conditions
of the Internal Revenue Code, [FN159] but does not satisfy QDRO standards. [FN160] Comment
was requested as to whether the proposed exemption should require satisfaction of the QDRO
standards in all circumstances, or whether satisfaction of the Internal Revenue Code
"domestic relations order" standards would suffice.

  Commenters who addressed this proposal supported it overwhelmingly, noting that these
dispositions are unlikely to give rise to the types of abuse of inside information that
the Section 16 rules are designed to prevent and that satisfaction of the "domestic
relations order" standards should suffice. Commenters also suggested that the rule should
exempt acquisitions as well as dispositions. The Commission is persuaded that the
likelihood of abuse is equally remote whether the transaction is an acquisition or
disposition, so long as the "domestic relations order" standards are satisfied. The rule
as adopted reflects these modifications. [FN161]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**


   C. Exemption for Stock Dividend Transactions
 The Commission proposed in 1994 to expand the exemption for stock splits and stock
dividends to include specifically a stock dividend in which equity securities of a
different issuer are distributed. The primary application of this exemption would be to
"spinoff" transactions, in which assets previously owned by the issuer are distributed pro
rata to shareholders in the form of equity securities of another issuer.
 The Division has interpreted the current rule to apply to stock splits or stock dividends
involving the issuance, on a pro rata basis, of a different class of equity securities of
the same issuer. [FN162] Commenters addressing this proposal expressed support, noting
that this type of dividend involves the distribution of an ownership interest already held
indirectly through the distributing entity, and thus involves a change in the form of
ownership from indirect through the distributing entity to direct by the recipient.
Commenters also noted that since there is no purchase or sale, there is no significant
opportunity for abuse. The proposal is adopted substantially as proposed, with minor
technical revisions. [FN163]

 **\*24** VI. 1995 SOLICITATION OF COMMENT REGARDING THE ON-GOING MERIT OF THE SHORT-SWING
PROFIT RECOVERY PROVISIONS OF SECTION 16
    The 1995 Release solicited comment as to whether the Commission should recommend that
Congress rescind the short-swing profit recovery provisions of Section 16(b). Commenters
were asked to address whether insider trading and market manipulation would be deferred
adequately by Rule 10b-5, as interpreted by case law, and whether state laws establishing
a fiduciary duty on the part of officers and directors would protect adequately the
interests of public company shareholders.
    Although the majority of commenters addressing this issue favored the legislative
rescission of Section 16(b), the Commission is of the view that the short-swing profit
recovery provisions continue to fulfill a useful and effective role in maintaining
investor confidence in the integrity of United States securities markets and accordingly
should be retained. Instead, the Commission has attempted to craft the amended rules in a
manner that retains the market protections provided by Section 16(b) curtailing compliance
costs, thereby striking an appropriate balance between benefits and costs.

   VII. TRANSITION TO NEW RULES
    A. General Application
 All of the rules adopted today, except for new Rule 16b-3, become effective August 15,
1996 (the "Effective Date"). Accordingly, the Section 16 treatment of all transactions
effected on or after the Effective Date will be governed by the new rules. As discussed
below, a phase-in period until November 1, 1996 is provided for new Rule 16b-3. Of course,
to the extent that the new rules codify current interpretive positions, [FN164] those
positions continue to be valid before the Effective Date. Trusts currently subject to
Section 16 that will be relieved of Section 16 obligations under the new rules will not be
subject to any post-termination reporting obligations or required to file a final Form 4
or Form 5. The amendments to Item 405 of Regulations S-K and S-B will apply to documents
containing Item 405 disclosure that are filed after the Effective Date. The new Forms

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

should be used for filings made on and after the Effective Date.

Cash-only instruments excludable from the definition of "derivative security" under
current Rule 16a-1(c)(3) originally issued before the Effective Date will remain exempt
from the reporting requirements of Section 16(a) after the Effective Date. With respect to
such cash-only securities, a transaction on or after the Effective Date that is consistent
with the conditions of the exclusion pursuant to which the security was issued also will
not to be subject to Section 16. [FN165]

Transactions not exempt from Section 16(b) under the current rules that are conducted
prior to the Effective Date will continue to be matchable with non-exempt transactions
conducted after the Effective Date for short-swing profit recovery purposes.

B. New Rule 16b-3

*25 In extending the phase-in date for current Rule 16b-3, the Commission stated that
this period would continue until September 1, 1996. [FN166] However, given the timing of
the adoption of new Rule 16b-3, the Commission is extending the phase-in date until
November 1, 1996. [FN167] While new Rule 16b-3 will become available for issuers that wish
to use it on August 15, 1996, current and former Rule 16b-3 [FN168] will remain available
for transactions effected prior to November 1, 1996. When an issuer adopts a plan that
complies with new Rule 16b-3 or converts one of its existing plans to the new rule, all
plans must be converted, [FN169] provided that any transaction between an issuer and its
officers or directors that occurs outside the scope of a formal plan or pursuant to a plan
that permits only the issuance of cash-only instruments may rely on new Rule 16b-3 without
triggering this conversion requirement. Current and former Rule 16b-3 may not continue to
be relied on by issuers and insiders after November 1, 1996. Transactions exempt under
current and former Rule 16b-3 should be reported as provided by the new rules during the
phase-in period. [FN170]

As stated above, the new Forms should be used for filings made on and after the Effective
Date. Since the new transaction codes are keyed to transactions exempted by new Rule
16b-3, insiders reporting transactions under the former or current rule may either use the
new code most analogous to the transaction or code "J" (for "other" transactions) with an
explanatory footnote.

VIII. COST-BENEFIT ANALYSIS

The amendments adopted herein are expected to decrease significantly the compliance
burden imposed on persons subject to Section 16 and attendant costs without undercutting
the statutory objectives of disclosing information concerning insider trading and
discouraging speculative short-term insider trading.

The simplified treatment of transactions between an issuer and its officers and
directors, whether or not pursuant to a formal employee benefit plan, will constitute the
most important reduction in compliance burden. With respect to these transactions, the
conditions that must be met for an exemption to be available have been substantially
simplified. The amended rules also will simplify issuers' administration of dividend and
interest reinvestment plans, and expand the exemption for stock splits and stock dividends
to include stock dividends in which securities of a different issuer are distributed.

The rules also will reduce compliance costs by: providing that many transactions no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 26524, Release No. 37260, Release No. 34-37260, Release No.
35-26524, Release No. IC - 21997, 62 S.E.C. Docket 138, 1996 WL 290234 (S.E.C.
Release No.)
**(Cite as: 1996 WL 290234 (S.E.C. Release No.))**

longer need be reported at all; permitting joint and group reporting where more than one
person is deemed to be a beneficial owner of the same securities; providing that Section
16 applies to a trust only if the trust beneficially owns more than ten percent of a class
of registered equity securities; and limiting officers' and directors' post-termination
reporting obligations. Where the amendments may increase compliance costs, such as by
requiring reporting with respect to transactions in cash-only securities and by
accelerating the reporting of option exercises, such costs should be outweighed by the
benefit of having additional information available to the public on an accelerated basis,
as well as the ease of compliance with a simplified reporting scheme. The amendments also
will eliminate regulatory complexity and uncertainty that discourages the use of equity as
compensation.

**\*26** IX. SUMMARY OF FINAL REGULATORY FLEXIBILITY ANALYSIS
    The Commission has prepared a final regulatory flexibility analysis in accordance with
5 U.S.C. 604 regarding the adoption of new Rules 16a-11, 16a-12 and 16a-13, and the
changes to Rules 16a-1, 16a-2, 16a-3, 16a-4, 16a-6, 16a-8, 16a-9, 16b-3 and 16b-6, Forms
3, 4 and 5, and Item 405 of Regulations S-B and S-K. A summary of the corresponding
Initial Regulatory Flexibility Analysis was included in the 1994 Release and the 1995
Release. A copy of the final regulatory flexibility analysis may be obtained by contacting
Anne M. Krauskopf, Division of Corporation Finance, U.S. Securities and Exchange
Commission, 450 Fifth Street N.W., Washington, D.C. 20549 at (202) 942-2900.
    As more fully discussed in the analysis, since 1994 the Commission has been engaged in
rulemaking to modify the Rules under Section 16, particularly to alleviate unanticipated
practical difficulties that arose since adoption of the 1991 amendments, simplify Section
16 requirements applicable to employee benefit plans, and codify several staff
interpretive positions. The amendments to Rule 16b-3 adopted today will significantly
expand the exemption as it applies to broad-based non-discriminatory plans, will impose
different conditions applicable to grants, awards and other acquisitions from the issuer,
and will provide new exemptions for the disposition of issuer equity securities to the
issuer.
    Other rule amendments will modify the Section 16(a) reporting system to provide that
most exempt transactions and small acquisitions will be reported annually on Form 5, with
earlier reporting on Form 4 permitted. Exercises and conversions of derivative securities,
whether or not exempt from Section 16(b), will be reported on Form 4. However, routine
transactions pursuant to tax-conditioned plans, dividend or interest reinvestment plan
transactions, transactions pursuant to domestic relations orders and transactions that
change only the form of beneficial ownership will be exempt from reporting. The exemption
for reinvestment transactions pursuant to dividend and interest reinvestment plans is
amended to replace the requirement that such a plan must be available to all holders of
the class of securities with a condition that the plan require both wide participation and
equal treatment of all participants.
    No significant issues were raised by public comment in response to the initial
regulatory flexibility analysis.
    The amendments adopted today primarily will affect individuals who are corporate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.