## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| FTR CONSULTING, INC., derivatively on behalf of MTC TECHNOLOGIES, INC., | |
| Plaintiff, | Civil Action No. 05-00008(KAJ) |
| v. | |
| RAJESH K. SOIN, VISHAL SOIN, AMOL SOIN, INDU SOIN and MTC TECHNOLOGIES, INC., | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO DISMISS

Theodore J. Tacconelli (No. 2678)
FERRY, JOSEPH & PEARCE,P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899

Paul D. Wexler
BRAGAR WEXLER EAGEL &
 MORGENSTERN, P.C.
885 Third Avenue
New York, New York 10022

Glenn F. Ostrager
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.
250 Park Avenue
New York, New York 10177

Dated: November 10, 2005                    Attorneys for Plaintiff

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Preliminary Statement.......................................................................................................... 1

Background Facts................................................................................................................... 2

      A.      The Purchase Transaction ............................................................................ 2

      B.      The Sale Transaction..................................................................................... 4

Section 16(b) and Rule 16b-3(d)......................................................................................... 5

Standards on a Rule 12(b)(6) Motion ................................................................................. 6


**POINT I**
THE RULE DOES NOT APPY TO THIS PURCHASE ...................................................... 7

      A.      The Rule Does Not Apply Unless the Transaction Is Between
               An Officer or Director of the Issuer and the Issuer........................................ 7

      B.      Even If The Transaction Is Deemed To Have Been Made By Rajesh,
               The Exemption Would Still Be Unavailable ................................................. 8

**POINT II**
RULE 16b-3(d) IS INVALID AS IT IS BEYOND
THE SEC'S AUTHORITY TO ENACT .............................................................................. 10

      A.      The Authority of the SEC to Issue Exemptions From
               Section 16(b) is Narrowly Circumscribed ..................................................... 10

      B.      The SEC's Rationale for Rule 16b-3 Is Inconsistent With
               Congess's Intent As Expressed in the Legislative History ............................ 13

**POINT III**
RULE 16b-3(d) CANNOT HAVE ANY RETROACTIVE EFFECT.................................... 17

Conclusion      .............................................................................................................. 19

## TABLE OF AUTHORITIES

### Cases

*American Standard, Inc. v. Crane Co.*
510 F.2d 1043 (2d Cir. 1974)....................................................................................... 14

*Bankers Trust New York Corp. v. U.S.*
225 F.3d 1368 (Fed. Cir. 2000)................................................................................... 13

*Blau v. Lehman*
368 U.S. 403 (1962)..............................................................................................11, 15

*Blau v. Lehman*
286 F.2d 786 (2d Cir. 1961)....................................................................................... 16

*Bowen v. Georgetown Univ. Hospital*
488 U.S. 204 (1988).................................................................................................... 17

*Brand X Internet Servs. v. Fed. Communications Comm'n*
345 F.3d 1120 (9th Cir. 2003) ................................................................................... 13

*Caruso v. Blockbuster-Sony Music Entertainment Centre at Waterfront*
193 F.3d 730 (3d Cir. 1999)....................................................................................... 18

*Chevron U.S.A., Inc. v. Natural Resource Defense Council*
467 U.S. 837 (1984).................................................................................................... 10

*Conley v. Gibson*
355 U.S. 41 (1957)........................................................................................................ 6

*Donoghue v. Casual Male Retail Group, Inc.*
375 F. Supp.2d 226 (S.D.N.Y. 2205)..................................................................... 7, 8, 9

*Feder v. Martin Marietta Corp.*
406 F.2d 260 (2d Cir. 1969) ...................................................................................... 10

*Foremost-McKesson, Inc. v. Provident Secs. Co.*
423 U.S. 232 (1976) ................................................................................................... 11

*Goldman v. Belden*
754 F.2d 1059 (2d Cir. 1985)...................................................................................... 6

*Gollust v. Mendell*
  501 U.S. 115 (1991) ............................................................................................ 11, 13

*Greene v. Dietz*
  247 F.2d 689 (2d Cir. 1957).................................................................................. 15

*Gryl v. Shire Pharm. Group PLC*
  298 F.3d 136 (2d Cir. 2002) ................................................................................. 7

*Intl. Brotherhood of Teamsters v. Daniel*
  439 U.S. 551 (1979) ............................................................................................. 10

*Jahn v. 1-800-Flowers.com, Inc.*
  284 F.3d 807 (7th Cir. 2002) ............................................................................... 17

*Kehr Packages Inc., v. Fidelcor, Inc.*
  926 F.2d 1406 (3d Cir. 1991)................................................................................ 6

*Kern County Land Co. v. Occidental Petroleum Corp.*
  411 U.S. 582 (1973).......................................................................................... 12, 14

*La. Public Serv. Comm 'n v. FCC*
  476 U.S. 355 (1986)............................................................................................... 10

*Levy v. Sterling Holdings, Inc.*
  314 F.3d 106 (3d Cir. 2002)............................................................................*passim*

*National Cable & Telecommunications Association*
  __U.S. __, 125 S. Ct. 2688 (2005)............................................................................ 18

*Neal v. U.S.*
  516 U.S. 284 (1996)................................................................................................ 18

*Perlman v. Timberlake*
  172 F. Supp. 246 (S.D.N.Y. 1959).................................................................11, 14, 15

*Rattner v. Lehman*
  193 F.2d 564 (2d Cir. 1952)................................................................................... 15

*Reliance Electric Co. v. Emerson Electric Co.*
  404 U.S. 418 (1972) ........................................................................................... 11, 12

*Smolowe v. Delendo Corp.*
  136 F.2d 231 (2d Cir.1943).................................................................................... 10

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*
    140 F.3d 478 (3d Cir. 1998)........................................................................................ 6

*Walsh v. McGee*
    918 F. Supp. 107 (S.D.N.Y. 1986)............................................................................. 6

*White v. United States*
    989 F.2d 643 (3d Cir, 1993)....................................................................................... 10

*Whittaker v. Whittaker Corp.*
    639 F.2d 516 (9th Cir.), *cert. denied,*
    454 U.S. 1031 (1981)................................................................................................. 4

    .

## STATUTES AND RULES

Securities Exchange Act of 1934 §16(b)
15 U.S.C. §78(p). ...............................................................................................................*passim*

15 U.S.C. §78b(4) .......................................................................................................... 13

SEC Rule 16a-1(a)(2) .................................................................................................... 8

SEC Rule 16a-1(a)(2),(ii)(A) ......................................................................................... 4

SEC Rule 16b-3(d)................................................................................................... *passim*

17 C.F.R. § 240.16b-3(d)(1) ...............................................................................................*passim*

17 C.F.R. § 240.16a-1(a)(1)(v),
Release No. 34-29131, April 26, 1991,
56 F.R. 19925 (SEC Rule 16a-1(a)(v))........................................................................ 8

17 C.F.R. § 240.16a-1(a)(1)(v),
Release No. 34-39538, January 16, 1998,
63 FR 2868.................................................................................................................. 8

Fed.R.Civ.P. 16(b)(6)..................................................................................................... 6

## OTHER SOURCES

Hearings Before the Committee on Banking and Currency
on S.Res. No. 84 and S.Res. Nos. 56 and 97
73rd Cong 6555 (1933). ......................................................................................................... 13

Hearings before Committee on Interstate and Foreign
Commerce on H.R. 7852 and H.R. 8720
73rd Cong. 135 (1933). ......................................................................................................... 13

Interpretive Release on Rules Applicable to Insider Reporting and Trading,
Exchange Act Release No. 18114,
1981 SEC LEXIS 679 at *2 (Sept. 24, 1981) ........................................................................ 12

Ownership Reports and Trading By Officers, Directors and Principal Stockholders,
Exchange Act Rel. No. 34-37260, 35-26524,
61 Fed.Reg 30376, 30377. ................................................................................................. 7, 12

Ownership Reports and Trading By Officers, Directors and Principal Stockholders,
Exchange Act Rel. No. 34-36356
60 Fed.Reg 53832, 53835. ..........................................................................................9, 12, 13

American Bar Association
SEC No-Action Letter
1999 WL 61837 (January 10, 1999) ....................................................................................... 8

The Genius of Section 16: Regulating the Management
of Publicly Held Companies, S. Thel, 42 Hastings L.J. 391 (1991) ..................................... 12

Section 16 of the Securities Exchange Act, A. S. Jacobs ...................................................... 11

## Preliminary Statement

Plaintiff FTR Consulting, Inc. submits this memorandum of law in opposition to the motion of defendants Rajesh Soin ("Rajesh"), Vishal Soin ("Vishal"), Amol Soin ("Amol") and Indu Soin to dismiss the complaint. Defendants argue that the purchase of MTC stock made by Vishal, Amol and Indu on October 1, 2003 is exempted by SEC Rule 16b-3(d)(the "Rule") and thus there is no purchase to which §16(b) liability can attach. As we show below, for a variety of reasons, the motion should be denied.

First, and most importantly, the Rule is not applicable here. Defendants' brief is aimed almost exclusively at supporting the proposition that the newest SEC rulemaking trumps the Circuit ruling in *Levy v. Sterling Holdings, Inc.*, 314 F.3d 106 (3d Cir. 2002), ("*Levy*"), which limited the Rule to grants of stock from the issuer for compensatory purposes. Defendants overlook the fact that the viability of *Levy* is of no moment in this case, as no reading of the Rule would permit the exemption to be applied for the benefit of anyone other than officers or directors. As there is no dispute that Rajesh's wife and children were not officers or directors of MTC, the exemption is simply not available. (Point I, *infra*)

Second, in the alternative, the Rule cannot be enforced because it is beyond the SEC's power. The power given to the Commission by Congress to exempt transactions under §16(b) is very limited and does not extend to allowing the issuer's board of directors to give insiders immunity from §16(b) liability. (Point II, *infra*).

Finally, even if the Rule was applicable to these facts and within the scope of its authority, the SEC cannot use the rule making process to overturn retroactively the precedent established in this Circuit by *Levy*. (Point III, *infra*).

1

## BACKGROUND FACTS

The complaint alleges a violation of Section 16(b) of the Securities Exchange Act of 1934 ("§16(b)"), 15 U.S.C. §78(p), as follows:

At all relevant times, defendant Rajesh K. Soin ("Rajesh") was the Chairman of the Board of Directors and majority shareholder of MTC Technologies, Inc ("MTC"). Defendants Vishal Soin ("Vishal"), Amol Soin ("Amol") and Indu Soin ("Indu") are former shareholders of International Consultants, Inc. ("ICI"), an information technology service provider located in Dayton, Ohio. Rajesh organized ICI in or about 1987. Rajesh designated Indu, his wife, and his then minor children, Vishal and Amol, to be ITC's principal shareholders. At all relevant times, Vishal, Amol and Indu owned 100% of the stock of ICI. Although Rajesh was the person responsible for operating ICI, he designated his wife and children as the shareholders.

### A.    The Purchase Transaction

Pursuant to a Stock Purchase Agreement dated October 1, 2003, Vishal, Amol and Indu sold their ICI stock to MTC (the "Purchase Agreement"). As of the date of the Purchase Agreement, Indu owned approximately 46.67% of ICI's outstanding capital stock; Vishal and Amol each owned approximately 26.67% of ICI's outstanding capital stock. The purchase price for the ICI acquisition consisted of an aggregate of up to $19.0 million, consisting of: (i) an initial payment of $9.9 million, which consisted of the repayment of ICI's indebtedness of $7.5 million and shares of MTC common stock with a market value of $2.4 million, (ii) contingent payments of up to $5.1 million in the aggregate, 22% of which was payable in cash and 78% of which was payable in shares of

2

MTC common stock, based on the successful transition of certain revenues, and (iii)

contingent "earn-out" payments of up to $4.0 million in the aggregate, 22% of which was

payable in cash and 78% of which was payable in shares of MTC common stock, based

on gross profit. The market value of the shares of MTC common stock received by

Vishal, Amol and Indu was based on the average closing price of a share of MTC

common stock on the Nasdaq National Market for the twenty-trading-day period prior to

a specified date.

On or about October 1, 2003, in accordance with the Purchase Agreement, Vishal,

Amol and Indu. received an aggregate of $2.4 million in shares of MTC common stock

(98,079 shares at $24.47 per share), allocated as follows:  Indu – 45,770 shares; Vishal –

26,155 shares; and Amol – 26,154 shares.

On or about January 5, 2004, Rajesh filed a Form 4 "Statement of Changes of

Beneficial Ownership" which disclosed that, pursuant to the Purchase Agreement, Vishal,

Amol and Indu had received additional "earn-out" shares of MTC common stock

(103,732 shares at $26.63 per share) allocated as follows: Indu – 48,408 shares; Vishal –

27,662 shares; and Amol – 27,662 shares.  On or about March 5, 2004, Rajesh filed a

Form 4 "Statement of Changes of Beneficial Ownership" which disclosed that, pursuant

to the Purchase Agreement, Vishal, Amol and Indu had received an aggregate of

approximately $800,000 in shares of MTC common stock (29,342 shares at $27.28 per

share) allocated as follows: Indu – 13,693 shares; Vishal – 7,825 shares; and Amol –

7,824 shares.

The transactions described above represent total purchases of MTC stock as

follows: 107,870 to Indu; 61,642 to Vishal; and 61,640 to Amol.  The complaint further

alleges that pursuant to SEC Rule 16a-1(a)(2)(ii)(A), as well as the case law, Rajesh is

the beneficial owner of all of the MTC shares purchased by his wife. In addition, Rajesh

is deemed to be the beneficial owner of all shares purchased by Amol and Vishal, as he

maintained the power to control those shares and the ability to profit from their sale. *See*,

*Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981).

### B.    The Sale Transaction

On or about February 19, 2004, pursuant to a public offering by MTC, Rajesh

sold 1,500,000 shares of MTC's common stock on the open market at a price of $26.53

per share. At the time of this sale, Rajesh was a majority owner of all outstanding shares

of MTC's common stock and thus was a statutory insider.

### SECTION 16(b) AND RULE 16b-3(d)

Section 16(b) of the Exchange Act provides that if a person, while beneficially

owning more than 10 percent of a class of equity securities of an issuer, purchases and

sells or sells and purchases shares of any equity security of such issuer within a period of

less than six months, any profits arising from those transactions are recoverable by the

issuer or by a shareholder suing derivatively on its behalf. Because the purchases of

stock by Indu, Vishal and Amol are attributed to Rajesh, Rajesh purchased and sold MTC

common stock within a six month period commencing with the October 1, 2003 Purchase

Agreement, at times when he was a statutory insider. Accordingly, pursuant to §16(b), he

is liable to disgorge the profits to the Company. The complaint alleges that these

purchase and sale transactions are matchable and lead to disgorgeable profits ranging

from approximately $2.8 million to $3.2 million.

Defendants' motion relies solely on the Rule, which by its terms, provides for an

exemption for acquisitions of stock by a director or officer from the issuer if the

transaction is meets certain specific conditions. The Rule provides in pertinent part as

follows:

> Rule 16b-3, entitled "Transactions between an issuer and its
> officers or directors," provides, as relevant to this case:
>
> (a) *General*. A transaction between the issuer (including an
> employee benefit plan sponsored by the issuer) and an
> officer or director of the issuer that involves issuer equity
> securities shall be exempt from section 16(b) of the Act if
> the transaction satisfies the applicable conditions set forth
> in this section.
>
> \*    \*    \*
>
> (d) *Grants, awards and other acquisitions from the issuer*.
> Any transaction involving a grant, award or other
> acquisition from the issuer (other than a Discretionary
> Transaction) shall be exempt if:
> (1) The transaction is approved by the board of directors of
> the issuer, or a committee of the board of directors that is
> composed solely of two or more Non-Employee Directors;
>
> (2) The transaction is approved or ratified, in compliance
> with section 14 of the Act, by either: the affirmative votes
> of the holders of a majority of the securities of the issuer
> present, or represented, and entitled to vote at a meeting
> duly held in accordance with the applicable laws of the
> state or other jurisdiction in which the issuer is
> incorporated; or the written consent of the holders of a
> majority of the securities of the issuer entitled to vote;
> *provided that* such ratification occurs no later than the date
> of the next annual meeting of shareholders; or
>
> (3) The issuer equity securities so acquired are held by the
> officer or director for a period of six months following the
> date of such acquisition, *provided that* this condition shall
> be satisfied with respect to a derivative security if at least
> six months elapse from the date of acquisition of the
> derivative security to the date of disposition of the
> derivative security (other than upon exercise or conversion)
> or its underlying equity security

Quoted in *Levy,* at 120 –121. The Rule is codified at 17 C.F.R. § 240.16b-3(d)(1).

In *Levy,* the Court of Appeals held that the exemption was limited to transactions in which the grant of stock from the issuer to the insider had a compensatory purpose. Finding that there was no compensatory purpose to the transaction, the *Levy* Court reversed a grant of summary judgment and sent the matter back to the district court for trial. The SEC's petition for rehearing *en banc* of the panel ruling was denied. The *Levy* defendants' petition for a writ of certiorari to the Supreme Court was denied as well.

Not happy with the *Levy* holding, in June 2004, the SEC proposed a new rule, identical to the old rule, which added a footnote stating in pertinent part, "[t]hese exemptions are not conditioned on the transaction being intended for a compensatory or other particular purpose". In August 2005, the new Rule was adopted.

## Standards on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985). A Rule 12(b)(6) motion is designed to "test the formal sufficiency of the statement of claim for relief. The motion is viewed with disfavor and is rarely granted". *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1986) (quoting *Wright & Miller* §1350). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint". *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). The moving party has the

6

burden of persuasion. *See, Kehr Packages Inc., v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## POINT I

### THE RULE DOES NOT APPLY TO THIS PURCHASE

#### A. The Rule Does Not Apply Unless the Transaction Is Between An Officer or Director of the Issuer and the Issuer

As noted above, defendants' motion is premised on the assumption that the Rule, as re-worked by the 2005 rule-making, provides an exemption for the October 2003 purchase by Indu, Amol and Vishu. That premise is plainly incorrect. As noted in *Levy*, the Rule, as it states in its title, is limited to *"Transactions between the issuer and its officers and directors"*. Subsection (a) provides that a "transaction between the issuer (including an employee benefit plan sponsored by the issuer) *and an officer or director of the issuer* that involves issuer equity securities shall be exempt from section 16(b)" (emphasis added). The purchase in this case was not between the issuer and a director or officer as neither Indu, Amol and Vishu were officers or directors. Thus, on its face, the Rule is inapplicable, irrespective of the compensatory purpose issue raised by *Levy*.[1] That is a sufficient basis to deny the motion.

---

[1] The cases are to the same effect. *Gryl v. Shire Pharmaceuticals Group* PLC, 298 F.3d 136, 141 (2d Cir. 2002)("defendant must be a director or officer at the time of the transaction" for exemption to apply); *Donoghue v. Casual Male Retail Group, Inc.*, 375 F. Supp.2d 226 (S.D.N.Y. 2005)(rejecting application of exemption because defendant was not an officer or director of issuer). The SEC's rationale for the Rule is "that transactions between the issuer and its officers and directors...are not vehicles for the speculative abuse that section 16(b) was designed to prevent". *Ownership Reports and Trading by Officers, Directors and Principal Stockholders*, Exchange Act Release No. 34-37260, 35-26524, 61 Fed. Reg. 30376 at 30377    (June 14, 1996)

**B.    Even If The Transaction Is Deemed to Have Been Made By Rajesh,
The Exemption Would Still Be Unavailable**

Defendants' brief is unclear as to why they believe the Rule is applicable at all.

But even if the transaction could be characterized as a purchase by an officer or director

by virtue of Rajesh's beneficial ownership of the stock purchased by his family, it is plain

that the board's approval of the transaction is not sufficient to immunize the transaction.

*Donoghue v. Casual Male Retail Group, Inc.,* 375 F. Supp.2d 226 (S.D.N.Y. 2005) is

right on point. In *Casual Male,* the defendant Jewelcor had made purchases and sales of

Casual Male securities, which led to disgorgable profits under §16(b). Jewelcor, a

corporation, obviously, was neither an officer nor director of the issuer. However,

Jewelcor argued, it was entitled to the protection of Rule 16b-3 because its 93%

shareholder (and thus the indirect beneficial owner of the Causal Male shares), was a

director of Causal Male at the time of the transaction. The court rejected that analysis.

The court relied upon an American Bar Association, SEC No-Action Letter, 1999

WL 61837 (January 10, 1999) which inquired whether Rule 16b-3 "'may be relied upon

to exempt an insider's indirect pecuniary interest in transactions with the issuer conducted

through other parties such as a corporation in which beneficial ownership of the securities

is reportable by the insider pursuant to Rule 16a-1(a) (2)". 375 F.Supp.2d at 235. The

SEC replied as follows:

> In order to satisfy the specificity requirements of Note 3
> to Rule 16b-3 for purposes of applying the approval conditions
> of Rules 16b-3(d) and 16b-3(e) to these transactions, *the
> approving entity must know and the document evidencing the
> approval must specify:*
> • *the existence and extent of the officer's or director's indirect
> interest in the transaction; and*

8

> • *that the approval is granted for purposes of making the transaction exempt under Rule 16b-3.* (emphasis added)
>
> *Donoghue v. Casual Male Retail Group, Inc.,* 375 F.Supp.2d 226, at 235 (S.D.N.Y.2005)

Judge Wood found that the approval given by the Casual Male board was not specific enough to meet the terms of the Rule and held that the exemption was not available to the transaction.

The holding of *Casual Male* is dispositive of any similar argument that defendants could make here. There is nothing in the record to indicate that the MTC board was made aware of Rajesh's beneficial ownership of the shares owned by his family members. Nor is there any indication that the MTC board gave its approval of the transaction for purposes of granting an exemption to Rajesh under the Rule. None of the documents submitted on this motion by defendants shows that these conditions have been satisfied. Thus, even if Rajesh is considered the actual purchaser rather than his family members, the exemption would still be unavailable. Accordingly, the motion should be denied.[2]

---

[2] Even if the Rule was otherwise applicable, there are issues of fact as to whether it would be appropriate to allow this exemption on these facts. The Rule requires, *inter alia*, that the Board or a committee of non-employee directors of the Board approve the transaction in advance and in good faith, as a gate-keeper, with an eye toward preventing speculative abuse by its officers and directors. The SEC notes in the proposing Release that is has sought to craft a rule that, consistent with the statutory purpose of Section 16(b), by erecting meaningful safeguards against the abuse of inside information by officers and directors without impeding their participation in legitimate compensatory transactions that do not present the possibility of such abuse, and facilitates compliance. *Ownership Reports and Trading by Officers, Directors and Principal Stockholders,* Exchange Act Release No. 36356, 60 Fed. Reg. 53832, 53835, 60 SEC Docket 1393, 1396, 1995 WL 597472 at *3, *7 (Oct. 11, 1995) There is simply no factual basis on this record to conclude that the MTC board properly performed its function in good faith.

## POINT II

### RULE 16b-3(d) IS INVALID AS IT IS BEYOND
### THE SEC'S AUTHORITY TO ENACT

### A.    The Authority of the SEC to Issue Exemptions From
### Section 16(b) is Narrowly Circumscribed

Government agencies have only that authority vested in them by statute. *See La.*

*Public Serv. Comm 'n v. FCC,* 476 U.S. 355, 374 (U.S. 1986) ("[A]n agency literally has

no power to act ...unless and until Congress confers power upon it."). To the extent an

agency issues a rule exceeding its statutory authority or inconsistent with the underlying

statutory scheme, the rule is void as being arbitrary and capricious. *See White v. United*

*States,* 989 F.2d 643, 647 (3d Cir, 1993) ("We must set aside agency action that is

arbitrary or capricious, contrary to constitutional right or power, or in excess of statutory

jurisdiction or authority."). The deference allowed to administrative agencies by

*Chevron U.S.A., Inc. v. Natural Resource Defense Council,* 467 U.S. 837,842-43

(1984) does not vest the SEC with absolute authority to decide whether an exemption conforms

to the statutory purpose of §16(b). Instead, "any deference is constrained by our

obligation to honor the clear meaning of the statute, as revealed by its language,

purpose and history." *Intl. Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 556 n.20

(1979). "If a court, employing traditional tenets of statutory construction, ascertains

that Congress had an intention on the precise question at issue, that intention is the law

and must be given effect." *Chevron,* 467 U.S. at 843 n.9.

The power given by Congress to the SEC to exempt transactions under the statute

is narrowly circumscribed, allowing an exemption only for transactions "not

comprehended within the purpose' of §16(b)." *Feder v. Martin Marietta Corp., 406*

10

F.2d 260, 268 (2d Cir. 1969) (quoting 15 U.S.C. §78p(b)). This limited grant of authority

requires that the SEC's "regulations be consistent with the expressed purpose of the

statute." *Smolowe v. Delendo Corp.,* 136 F.2d 231, 240 (2d Cir. 1943). *See also Perlman*

*v. Timberlake,* 172 F. Supp. 246, 254 (S.D.N.Y. 1959) ("The Commission's authority

was narrowly circumscribed by Congress in this field ...."). In fact, Congress was

careful not to give the SEC any enforcement or adjudicative authority over Section *16(b)*

*(see Gollust v. Mendell,* 501 U.S. 115 (1991))[3]

There is no question that Congress did not intend to allow a blanket exemption

for all transactions between an issuer and its insiders. "Prohibiting short-swing trading

by insiders with nonpublic information was an important part of Congress' plan in the

1934 Act to 'insure the maintenance of fair and honest markets' and to eliminate such

trading." *Gollust v. Mendell,* 501 U.S. at 121 (quoting 15 U.S.C. §78b). "Congress

thought that *all* short-swing trading by directors and officers was vulnerable to abuse

because of their intimate involvement in corporate affairs." *Foremost-McKesson, Inc. v.*

*Provident Secs. Co.,* 423 U.S. 232, 253 (1976) (emphasis added). There was no intent

to allow a "special pass" for officers and directors. On the contrary, it was officers and

directors that Congress was most concerned with.

Congress adopted §16(b) based upon evidence that "insiders actually

manipulated the market price of their stock by causing a corporation to follow financial

---

[3] It should come as no surprise that the Supreme Court has consistently *rejected* the
views of the SEC when it comes to interpreting the proper scope of §16(b) liability.
*See Gollust, supra; Reliance Electric, 404* U.S. 418, 426-27 (1972); *Blau v. Lehman,*
368 U.S. 403, 413 (1962). Indeed, *Gollust* reflects *a post-Chevron* rejection of a
proposed SEC rule to govern standing to sue in §16(b) actions. *See A.* S. Jacobs,
*Section 16 of the Securities Exchange Act,* §3:36 at 3-301 (July 2002) (SEC proposed a
Rule 16a-1(h) with a different rule of standing than the one adopted in *Gollust).*

11

policies calculated to produce sudden changes in market prices in order to obtain short

swing profits." *Interpretative Release on Rules Applicable to Insider Reporting and*

*Trading,* Exchange Act Release No. 18114, 1981 SEC LEXIS 679 at *2 (Sept. 24,

1981) (the "1981 Release"). Section 16(b) destroys this incentive by depriving insiders

of the ability to profit from short-term price fluctuations. *See S.* Thel, *The Genius of*

*Section 16: Regulating the Management of Publicly Held Companies,* 42 Hastings L. J.

391, 433 & n.141 (1991). *See also Kern County,* 411 U.S. at 591. However, Congress

believed that it would be difficult, if not impossible to prove such actual speculative

abuse by insiders in the trading of the issuer's stock. Instead, "the only method

Congress deemed effective to curb the evils of insider trading was a flat rule taking

the profits out of a class of transactions in which the *possibility of abuse* was believed to

be intolerably great." *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422

(1972) (emphasis added). It is for that reason that § 16(b) liability attaches *"without*

*proof of actual abuse of insider information, and without proof of intent to profit on the*

*basis of such information." Kern County,* 411 U.S. at 596 (emphasis added). The Rule is

completely at odds with the stated Congressional purposes. [4]

    In enacting the Rule, the SEC claimed that transactions between the issuer and

officers and directors did not present the opportunity for speculative abuse that market

---

[4] The SEC has often stated its antipathy to §16(b) and at one point considered asking
Congress to repeal it. *Ownership Reports and Trading by Officers, Directors and
Principal Stockholders*, Exchange Act Release No. 34-36356, 60 Fed. Reg. 53832,
53835, 60 SEC Docket 1393,1396, 1995 WL 597472 at (Oct. 11, 1995) However, it
abandoned that position shortly after the Release was issued and embarked upon a
campaign to *de facto* repeal the statute itself by gutting it with exemptions, such as the
new Rule. *Ownership Reports and Trading by Officers, Directors and Principal
Stockholders*, Exchange Act Release No. 34-37260, 61 Fed. Reg. 30,376 1996 WL
290234 (May 30, 1996)

transactions did *Ownership Reports and Trading by Officers, Directors and Principal Stockholders*, Exchange Act Release No. 34-36356, 60 Fed. Reg. 53832, 53835, 1995 WL -----at (Oct. 17, 1995). This finding is clearly inconsistent with Congress' belief.[5] As noted above, when Congress enacted the statue, it covered transactions between the issuer and its officers and directors. In fact, it was such transactions that led to the passage of the statute in the first place. Hearings before the Committee on Banking and Currency on S.Res. No. 84, 72d Cong., 2d Sess., and S.Res. Nos. 56 and 97, 73d Cong., 1st and 2d Sess. 6555, 6558, 6560-- 6561; Hearings before Committee on Interstate and Foreign Commerce on H.R. 7852 and H.R. 8720, 73d Cong., 2d Sess. 135-137. It is not the SEC's place to decide that Congress was wrong.

## B.    The SEC's Rationale for Rule 16b-3 Is Inconsistent With Congress' Intent As Expressed in the Legislative History

The SEC's rationale for the Rule is that there is no opportunity for speculative abuse inherent in transactions between issuers and their officers and directors. *See, e.g., 15 U.S.C. §78b(4). Accord, Gollust, supra.* There is no support for this proposition in the legislative history or logic. Indeed, the identical risks of insider trading and related manipulation of share prices exist regardless of who is on the other side of the transaction. The cases are replete with claims against officers and directors who dealt

---

[5]    It is contrary to what the Third Circuit believes also as the *Levy* court noted that the exemption is inconsistent with the purpose of the statute because:

> The potential for self-dealing could be great: in a closely held corporation, directors or a majority of shareholders could arrange for the acquisition of stock in advance of an IPO, and turn around and sell shares shortly after the IPO. Because of their insider status, there would be a concern. 314 F.3d at 124.

13

directly with the issuer. "It is difficult to see how the opportunity for short-swing profits,

present when the insider equipped with inside information goes out in the market and

buys, vanishes because armed with the same information, he goes to the corporation and

buys ...." *Perlman v. Timberlake,* 172 F. Supp. 246, 256 (S.D.N.Y. 1959).

Nor is it sufficient, as the SEC states, that it believes that state law remedies will

suffice to replace §16(b) liability for officers and directors. Congress adopted §16(b)

specifically because it believed that state law provided insufficient remedies to prevent

improper insider trading. *See, e.g., Kern County,* 411 U.S. at 592 n.3 (quoting S. Rep.

No. 1455, 73 Cong. 2d Sess. 55 (1934)). As the Second Circuit Court of Appeals has

stated:

> The rather short legislative history of the present s16(b)
> indicates that this 'anti-Wiggin statute'as it was popularly
> called, dealt with the speculative practices of those captains of
> finance who had taken advantage of confidential inside
> information to trade in the securities of their own companies
> to the abuse of their own 'outside stockholders.' *Congress was
> concerned about the 'outside' owners of securities which were
> being cavalierly traded by fiduciaries whom the stockholders
> had elected to positions of trust. The stress was on fiduciary
> responsibility. The purpose of s 16(b) was to prevent
> directors, officers and principal stockholders 'from
> speculating in the stock of the corporations to which they
> owed a fiduciary duty.'*
> S. Rep. No. 1455, 73rd Cong.2d Sess. 68 (1934).
> Congress imposed liability for his profits upon the statutorily
> presumed faithless trustee without proof of actual loss. The
> profits were to be restored to the presumptively aggrieved
> cestui que trust, the issuer of the securities. The prize could be
> given to no other, for an alternative would have required proof
> of actual injury. If the asset of the corporation--secret
> information--was improperly taken, the profits were to be
> restored to the cestui. See Judge Learned Hand in Gratz v.
> Claughton, 187 F.2d 46, 49--50 (2 Cir. 1951), cert. denied,
> 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951).

*American    Standard,    Inc.    v.    Crane    Co.*    510    F.2d    1043,    1060 (2d

14

Cir.1974)(emphasis added)(footnote omitted)

State law remedies are not a substitute for §16(b) liability and the SEC has no

power to substitute its judgment for Congress'. [6] *Rattner v. Lehman*, 193 F.2d 564 (2d

Cir. 1952) (rejecting SEC's attempt to use one of its rules to exempt a director from

liability). As the Supreme Court has stated in similar circumstances:

> Congress can and might amend §16(b) if the Commission would
> present to it the policy arguments it has presented to us, but we think
> that Congress is the proper agency to change an interpretation of the
> Act unbroken since its passage, if the change is to be made.
>
> *Blau v. Lehman*, 368 U.S. 403, 413 (1962)

The SEC has often overstepped its authority in §16(b) cases and courts have

not been reluctant to invalidate SEC rules. In *Greene v. Dietz*, 247 F.2d 689 (2d

Cir. 1957), the Second Circuit found doubtful the validity of an early version of

Rule 16b-3(d) finding that the exemption it provided was an abuse of its

authority. Although the Court did not have to reach the ultimate question of

invalidity, it "express[ed] doubt as to the power of the Commission to

promulgate Rule X-16B-3 inasmuch as the Rule's broad language may permit

acts by insiders sought to be prevented by the Securities Exchange Act". 247

F.2d at 692. Later, in *Perlman v. Timberlake*, 172 F. Supp. 246 (S.D.N.Y. 1959),

the district court invalidated a new version of the same regulation on the same

---

[6] State law breach of fiduciary duty claims are subject to procedural difficulties not
present under §16(b) including business judgment rule defenses, contemporaneous
ownership requirements by the shareholder and scienter requirements. State law is hardly
a substitute for the efficient remedy provided by §16(b), nor will it serve the prophylactic
purposes of the federal statute.

basis. The Court noted that the SEC was not empowered to repeal §16(b) through the constant expansion of exemptions. *See, Blau v. Lehman*, 286 F.2d 786 (2d Cir. 1961), where the Second Circuit rebuffed the SEC's efforts to extend §16(b) liability beyond what Congress intended.

So it is here. If the Rule is not invalidated, insiders will be able to grant themselves immunity from §16(b) liability with the stroke of a pen. This is plainly not the intent of Congress and the Commission should not be allowed to repeal the statute through the exemptive process.

## POINT III

### RULE 16b-3(d) CANNOT HAVE ANY RETROACTIVE EFFECT

The SEC's purpose in enacting the new Rule was to overcome the Circuit

decision in *Levy* that 16b-3(d) is inapplicable to purchases by insiders from the issuer that

do not have a compensatory purpose. It is undisputed that the purchase in this case did

not have a compensatory purpose. Thus, if the new Rule is not applied retroactively, the

defense would be unavailable in this case. As a matter of statutory construction, even if

the Rule is valid, it cannot be applied retroactively, notwithstanding the SEC's intention

to do so.

Agency rules can be applied retroactively only where an agency has received an

express grant of authority from Congress to promulgate such retroactive rules. *Bowen v.*

*Georgetown University Hosp.*, 488 U.S. 204, 208 (1988) (*citing*, *Brimstone R. Co. v.*

*U.S.*, 276 U.S. 104, 122 (1928) ("The power to require readjustments for the past is [so]

drastic. It . . . ought not to be extended so as to permit unreasonably harsh action

without very plain words."). Here, §16(b), pursuant to which the SEC is making its

proposed rule, contains no such express grant of authority for retroactive rulemaking.

*See,* 15 U.S.C. §78p(b). Therefore, as a matter of law, the SEC's proposed rule would

not apply to this case. *Accord Jahn v. 1-800-Flowers.com, Inc.*, 284 F.3d 807, 810 (7th

Cir. 2002) ("Federal regulations do not, indeed cannot, apply retroactively unless

Congress has authorized that step explicitly.")

Moreover, no matter what the SEC says or does at this point, the doctrine of

*stare decisis* controls this Court's determination of the scope of the exemption. Thus, the

Supreme Court has explicitly held that:

17

> In these circumstances, we need not decide what, if any,
> deference is owed the Commission in order to reject its
> alleged contrary interpretation.  Once we have determined
> a statute's meaning, we adhere to our ruling under the
> doctrine of *stare decisis*, and we assess an agency's later
> interpretation of the statute against that settled law.

*Neal v. U.S.*, 516 U.S. 284, 295 (1996).  Here, the Third Circuit has conclusively

determined the meaning of Rule 16b-3(d)(1).  Instead, this Court continues to be bound

by the Third Circuit's decision in *Levy. See, Caruso v. Blockbuster-Sony Music*

*Entertainment Centre at Waterfront*, 193 F.3d 730, 737 (3d Cir. 1999) (citations omitted).

"An agency is not allowed to change a legislative rule retroactively through the process

of disingenuous interpretation of the rule to mean something other than its original

meaning."

      The cases cited by defendants do not require a different result. For example,

*National Cable & Telecommunications Association*, __U.S.__, 125 S. Ct. 2688 (2005)

holds that a later agency interpretation of a statute or rule will be deemed to overrule a

court decision only where the court was interpreting an ambiguous statute, not where it

found the meaning clear. The *Levy* court did not state that it found the Rule ambiguous.

On the  contrary, it state in a footnote when discussing the Rule that it was "clear that the

surrounding language is concerned with compensation. *Levy* at 123, fn. 13. The other

cases cited by defendants relate to "clarifying amendments." Def Br, at 9-11. Despite the

SEC's characterization of the new Rule as clarifying, it is plain, in light of Levy, that the

change was substantive and thus cannot be applied retroactively.

      Here, despite the SEC's pronouncement, it is obvious that the Rule is intended not

as a clarification of existing law, but to overrule *Levy.*  Accordingly, the proposed new

rule cannot be retroactive because the SEC has no power to do so.

18

## CONCLUSION

Defendants' motion to dismiss the complaint should be denied.

Dated: November 10, 2005

Respectfully submitted,

FERRY, JOSEPH & PERARCE, P.A.

Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
Local counsel for Plaintiff

-and-

Paul D. Wexler, Esq.
BRAGAR WEXLER EAGEL &
 MORGANSTERN P.C.
885 Third Avenue, Suite 3040
New York, New York 10022
(212) 308-5858

-and-

Glenn F. Ostrager, Esq.
OSTRAGGER, CHONG FLAHERTY
 & BROITMAN P.C.
250 Park Avenue, Suite 825
New York, New York 10177

Co-Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2005, I electronically filed Plaintiff's Memorandum of Law In Opposition To Motion To Dismiss with the Clerk of Court using the CM/ECF which will send notification of such filings to the following:

Robert J. Stearn, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

Richard Horwitz, Esquire
Erica L. Niezgoda, Esquire
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

I hereby certify that on November 10, 2005, I have mailed, by United States Postal Service, the document to the following non-registered participant:

Geoffrey Ritts, Esquire
Jones Day
North Point
901 Lakeside Ave.
Cleveland, OH 44144

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
ttacconelli@ferryjoseph.com