# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FTR CONSULTING, INC., derivatively on    )
behalf of MTC TECHNOLOGIES, INC.    )
         )
         Plaintiff,    )      C. A. No. 05-00008 (KAJ)
         )
         v.    )
         )
RAJESH K. SOIN, VISHAL SOIN,    )
AMOL SOIN, INDU SOIN and    )
MTC TECHNOLOGIES, INC.,    )
         )
         Defendants.    )

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

                                 Richard L. Horwitz (#2246)
                                 Melony R. Anderson (#4377)
                                 POTTER ANDERSON & CORROON LLP
                                 Hercules Plaza
                                 1313 North Market Street
                                 Wilmington, Delaware 19801
                                 Tel: (302) 984-6000

Of Counsel:                              Attorney for Defendants Rajesh K. Soin,
                                     Vishal Soin, Amol Soin and Indu Soin

Geoffrey J. Ritts
Salim A. Kafiti
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939

Dated: November 30, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    AMENDED RULE 16B-3 APPLIES TO THIS TRANSACTION AND
      THESE DEFENDANTS ...................................................................................... 3

II.   ALL THE CONDITIONS FOR EXEMPTION UNDER AMENDED
      RULE 16B-3 HAVE BEEN SATISFIED ............................................................. 6

III.  THE SEC'S ADOPTION OF AMENDED RULE 16B-3 IS PLAINLY
      WITHIN ITS RULE-MAKING AUTHORITY ...................................................... 9

IV.   AMENDED RULE 16B-3 APPLIES TO THE TRANSACTIONS
      ALLEGED IN THE COMPLAINT HERE ......................................................... 12

      A.   Amended Rule 16b-3 Clarifies What The Rule Has Meant All
           Along, And It Therefore Applies To Transactions That Occurred
           Before The Amendment Was Adopted ................................................... 13

      B.   The Third Circuit Opinion In *Levy* Does Not Preclude Applying
           Amended Rule 16b-3 Here ................................................................... 14

CONCLUSION .......................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

Page(s)

*American Standard, Inc. v. Crane Co.*,
510 F.2d 1043 (2d Cir. 1974)...............................................................................11

*Auer v. Robbins*,
519 U.S. 452 (1997)........................................................................................ 9-10

*Blau v. Lehman*,
368 U.S. 403 (1962).............................................................................................11

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988).............................................................................................13

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)......................................................................................*passim*

*Clay v. Johnson*,
264 F.3d 744 (7th Cir. 2001) ..........................................................................13, 14

*Donoghue v. Casual Male Retail Group, Inc.*,
375 F. Supp. 2d 226 (S.D.N.Y. 2005)...............................................................5, 8

*Dreiling v. American Express Travel Related Servs. Co.*,
351 F. Supp. 2d 1077 (W.D. Wash. 2004)....................................................4, 9, 11

*Feder v. Martin Marietta Corp.*,
406 F.2d 260 (2d Cir. 1969).................................................................................11

*First Nat'l Bank v. Standard Bank & Trust*,
172 F.3d 472 (7th Cir. 1999) ...............................................................................13

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
423 U.S. 232 (1976).............................................................................................11

*Gollust v. Mendell*,
501 U.S. 115 (1991).............................................................................................11

*Gryl v. Shire Pharms. Group PLC*,
298 F.3d 136 (2d Cir. 2002),
*cert. denied*, 537 U.S. 1191 (2003).................................................................*passim*

*Indeck Me. Energy, L.L.C. v. ISO N. Eng. Inc.*,
   167 F. Supp. 2d 675 (D. Del. 2001) ............................................................. 7

*Jahn v. 1-800 Flowers.com, Inc.*,
   284 F.3d 807 (7th Cir. 2002) .................................................................. 13

*Levy v. Sterling Holding Co., LLC*,
   314 F.3d 106 (3d Cir. 2002),
   *cert. denied*, 540 U.S. 947 (2003) ................................................... *passim*

*Levy v. Sterling*,
   No. 00-994 (GMS), 2004 WL 2251268 (D. Del. Sept. 27, 2004) .................. 2-3, 14, 15

*Manhattan Gen. Equip. Co. v. Commissioner*,
   297 U.S. 129 (1936) ............................................................................ 13

*National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   125 S. Ct. 2688 (2005) ........................................................................ 15

*Neal v. United States*,
   516 U.S. 284 (1996) ....................................................................... 15-16

*Orr v. Hawk*,
   156 F.3d 651 (6th Cir. 1998) ................................................................ 13

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
   368 F.3d 269 (3d Cir. 2004) ................................................................... 6

*Perlman v. Timberlake*,
   172 F. Supp. 246 (S.D.N.Y. 1959) ......................................................... 11

*Pope v. Shalala*,
   998 F.2d 473 (7th Cir. 1993) ................................................................ 13

*Rattner v. Lehman*,
   193 F.2d 564 (2d Cir. 1952) ................................................................. 11

*Reliance Elec. Co. v. Emerson Elec. Co.*,
   404 U.S. 418 (1972) ........................................................................... 11

*Smolowe v. Delendo Corp.*,
   136 F 2d 231 (2d Cir. 1943) ................................................................. 11

*Soo Line R.R. v. St. Louis S.W. Ry.*,
   125 F.3d 481 (7th Cir. 1997) .................................................................. 6

*Stampone v. Freeman Decorating Co.,*
   No. Civ. A. 04CV4241 (DMC), 2005 WL 2216977 (D.N.J. Sept. 12, 2005) ............ ......... 7

*United States v. Mead Corp.,*
   533 U.S. 218 (2001) ........................................................................................ 2, 10, 11, 12

## STATUTES & RULES

Securities Exchange Act of 1934

15 U.S.C. § 78p(b) ........................................................................................ 2, 10, 11

21 U.S. § 841 .............................................................................................................. 15

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 7

SEC Rule 16b, 17 C.F.R. § 124.16b

17 C.F.R. § 240.16b-3 ........................................................................................ *passim*

17 C.F.R. § 240.16b-3(d) .................................................................................... *passim*

17 C.F.R. § 240.16b-7 .............................................................................................. 13

## REGULATIONS

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,*
   69 Fed. Reg. 35,982 (June 24, 2004) ............................................................... 13-14

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,*
   70 Fed. Reg. 46,080 (Aug. 9, 2005) ................................................................. 1, 9, 14

## MISCELLANEOUS AUTHORITY

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders,*
   Exchange Act Release No. 34-37260, 62 SEC Docket 138, 1996 WL 290234
   (May 31, 1996) ............................................................................................... 10

SEC's Mem. *Amicus Curiae* Supp. Appellee's Petition Reh'g Or Reh'g *En Banc, Levy v.*
   *Sterling,* No. 02-1698 (3d Cir. Feb. 27 2003) ................................................... 2, 7

## INTRODUCTION

Plaintiff raises the same arguments it raised in opposing Defendants' Motion to Stay. This Court granted that motion, and it should do the same here. The clarifying amendments to Securities and Exchange Commission ("SEC") Rule 16b-3 remove any doubt that Rule 16b-3 completely disposes of all of plaintiff's claims. *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 70 Fed. Reg. 46,080 (Aug. 9, 2005) ("Adopting Release").

First, all of the conditions required for exemption under Rule 16b-3(d)(1) are satisfied here. Plaintiff's argument that the "purchase" was not made by an officer or director of MTC Technologies, Inc. ("MTC") contradicts the express allegations in the complaint that form the basis for all of plaintiff's claims. The complaint alleges only one "purchase" of MTC securities and expressly states that this "purchase" should be considered a "purchase" by Rajesh K. Soin ("Rajesh") (¶ 19) (D.I. 1), a director of MTC at all relevant times. (¶ 3.) Because Rajesh was a director of MTC, Rule 16b-3 applies to exempt his alleged "purchase" of MTC securities from Section 16(b) liability. Plaintiff's argument that MTC's board failed to approve the transaction in the manner prescribed by Rule 16b-3 ignores the express language of Rule 16b-3 and undisputed facts. MTC's board resolutions and public filings clearly show that all of the procedural safeguards of Rule 16b-3 were met when the board approved MTC's acquisition of International Consultants, Inc. ("ICI"): The board knew of Rajesh's relationship with Amol, Indu and Vishal Soin and with ICI at that time, and it independently approved the alleged "purchase" in a manner consistent with the terms of Rule 16b-3.

Second, Rule 16b-3 is plainly within the SEC's rule-making authority. Most of plaintiff's argument amounts to disagreement with the SEC over its policy considerations in promulgating Rule 16b-3. However, Congress has specifically granted the SEC authority to

1

promulgate exemptive rules to protect against Section 16(b) sweeping too broadly to transactions "not comprehended within the purpose of [that] subsection." 15 U.S.C. § 78p(b). Exemptive rules such as Rule 16b-3 are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *accord Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). Plaintiff does not (and cannot) establish that Rule 16b-3 (in either its pre-amendment or post-amendment form) fails to meet this standard. Amended Rule 16b-3 is therefore valid, and it applies here.

Third, plaintiff argues that the rule is not a clarifying amendment but instead a substantive change in the law that may not be applied retroactively to transactions that occurred before the rule was adopted. Plaintiff ignores the SEC's consistent statements (e.g., in the text of the amendment to Rule 16b-3 itself; in releases interpreting both the pre-amendment and post-amendment versions of Rule 16b-3; and in the SEC's amicus curiae brief in *Levy v. Sterling*, No. 02-1698 (3d Cir. Feb. 27, 2003)) that there is no "compensatory-purpose" requirement for exemption under Rule 16b-3 and that the amendments merely clarify that the rule never contemplated any such extra-textual requirement. Plaintiff also ignores this Court's prior determination that "the SEC's proposed clarifying amendment to SEC Rule 16b-3 is likely to be of significant relevance to the issues in dispute in this case" (Order dated May 10, 2005 ("Stay Order") (D.I. 17) (staying the present case pending formal adoption of amended Rule 16b-3) (emphasis added)) and a similar ruling in *Levy v. Sterling*, No. 00-994 (GMS), 2004 WL 2251268, at *2-3 (D. Del. Sept. 27, 2004) (Sleet, J.), which also granted defendants' motion to

stay pending SEC adoption of its amendments to Rule 16b-3.[1]  All of this authority clearly

demonstrates that the amendments merely clarify what Rule 16b-3 has said all along, and the

Third Circuit and Supreme Court cases cited in defendants' opening memorandum hold that

there is no concern about applying a clarifying amendment like this one retrospectively to

transactions that occurred before the amendment was adopted.

For these reasons, Rule 16b-3 is a valid rule; it applies to the parties and the transactions

alleged here; and it exempts the only "purchase" alleged in the complaint from Section 16(b)

liability.  The complaint must be dismissed in its entirety and with prejudice.

## ARGUMENT

## I.   AMENDED RULE 16B-3 APPLIES TO THIS TRANSACTION AND THESE DEFENDANTS.

Plaintiff leads with a bewildering assertion -- that SEC Rule 16b-3 does not apply to this

transaction because "[t]he purchase in this case was not between the issuer and a director or

officer." (Opp'n at 7) (D.I. 28).  If this argument were true, then there is no need for defendants

even to invoke Rule 16b-3 in the first place, and this case should be dismissed.  If there truly was

no "purchase" of MTC securities by an officer or director of the company, as plaintiff now

asserts, then Rajesh, a director of MTC, cannot have violated Section 16(b).

Plaintiff's argument contradicts the express allegations of its complaint -- allegations that

make up the core of the Section 16(b) claim.  The complaint alleges only one "purchase" of

securities.  It states that shares of MTC common stock were received by Vishal, Amol and Indu

Soin, the sole owners of ICI, in connection with MTC's October 1, 2003 acquisition of ICI.

---

[1] Indeed, the exact same issues presently before this Court have already been briefed in *Levy* and were argued before Judge Sleet on November 1, 2005.  A ruling in that case will likely be issued before this Court has heard and decided the present motion.

(Compl. ¶¶ 11-17.)  There is no other "purchase" of securities to match with Rajesh's alleged

"sale" of MTC securities on February 19, 2004 for purposes of Section 16(b).  (¶ 18.)  The

complaint expressly alleges that "the purchases of stock by Indu, Vishal and Amol are attributed

to Rajesh" (¶ 19), and that "[a]t all relevant times since the Company was formed, defendant

Rajesh . . . was MTC's Chairman of the Board of Directors."  (¶ 3.)  Plaintiff's opposition

memorandum echoes the point:  "Because the purchases of stock by Indu, Vishal and Amol are

attributed to Rajesh, Rajesh purchased and sold MTC common stock within a six-month period."

(Opp'n at 4) (emphasis added).  Thus, Rule 16b-3 applies to the "purchase" transaction because

Rajesh is a director of MTC and the complaint alleges that the "purchase" of MTC securities by

Indu, Vishal and Amol was actually a "purchase" by Rajesh.

 Plaintiff cannot have it both ways.  Either the "purchase" of securities by Indu, Vishal

and Amol is deemed a purchase by Rajesh, a director of MTC, and Rule 16b-3 applies, or it is

not, and the complaint fails to allege a matching purchase and sale of MTC securities within a

six-month period to ground any claim for Section 16(b) liability.  Either way, the complaint must

be dismissed.  *See, e.g., Dreiling v. American Express Travel Related Servs. Co.*, 351 F. Supp. 2d

1077, 1079, 1089-90 (W.D. Wash. 2004) (exempting "purchase" of securities issued during

acquisition of defendant corporation where defendant was neither a director nor officer of issuer

but had "deputized" one of its own executive officers to represent defendants' interests on

issuer's board of directors); *Gryl v. Shire Pharms. Group PLC*, 298 F.3d 136, 138-39, 146 (2d

Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003) (affirming dismissal of plaintiff's Section 16(b)

4

claims);[2] *see also Levy v. Sterling Holding Co.*, LLC, 314 F.3d 106, 109, 112-13, 120-24 (3d Cir.

2002) (finding the rule applicable, but not satisfied for lack of a compensatory nexus, where

defendant corporations were not themselves members of the issuer's board of directors, but

merely designated directors pursuant to a stockholder's agreement), *cert. denied*, 540 U.S. 947

(2003).

　　　Plaintiff's citation to *Donoghue v. Casual Male Retail Group, Inc.*, 375 F. Supp. 2d 226

(S.D.N.Y. 2005), does not cure this critical flaw in its argument. In *Donoghue*, a defendant

corporation, Jewelcor, purchased and sold securities of the issuer within a six month period in

violation of Section 16(b). *Id.* at 229. Jewelcor was never an officer or director of the issuer, but

it was a greater-than-10% owner of the issuer. *Id.* There were no allegations that anyone other

than Jewelcor purchased or sold any securities of the issuer in violation of Section 16(b). While

Jewelcor's major shareholder later became a director of the issuer, he was not a named defendant

and the plaintiff did not allege that he made any "purchase" or "sale" of issuer securities that

should be attributed to Jewelcor or vice versa. *Id.* at 234. Not so here -- the very foundation of

the complaint is its charge that the October 1, 2003 acquisition of MTC shares was really a

purchase by Rajesh, such that "Rajesh purchased and sold MTC common stock within a six-

month period." (Opp'n at 4.) That is what the complaint affirmatively alleges (¶¶ 17, 19), and

---

[2] *Gryl*, 298 F.3d 136, does not support plaintiff's assertion that Rule 16b-3 is inapplicable here. First, the defendants in *Gryl* (except for the nominal defendant, Shire Pharmaceutical Group, PLC) were all directors of the issuer. *Id.* at 139. There were no allegations against non-director defendants, as here, that their purchases should be attributed to a director or officer. The individual defendants in *Gryl* became members of the issuer's board and acquired issuer securities directly from the issuer through a merger agreement with their former corporation. *Id.* Their relationship with the issuer did not differ from Rajesh Soin's relationship with MTC in any material way. Accordingly, the *Gryl* court applied Rule 16b-3 and affirmed dismissal of plaintiff's Section 16(b) claims against all defendants because, as alleged here, the issuer's securities were acquired by defendants through a plan of merger that was approved by the issuer's board of directors. *Id.* at 140-41.

because Rajesh is a director of MTC (¶ 3), Rule 16b-3 applies and exempts the "purchase" from liability under Section 16(b).

What plaintiff is trying to do here is to defeat a motion to dismiss by contradicting the allegations of its own complaint, and that is not allowed. *See, e.g., Parilla v. IAP Worldwide Services VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (denying plaintiff's motion to dismiss appeals of defendants for lack of standing because plaintiff expressly conceded the relevant facts in her complaint); *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997) (noting the "well-settled rule that a party is bound by what it states in its pleadings"). Plaintiff made this same exact argument once before in opposing defendant's Motion to Stay. (Pl.'s Opp'n Mot. Stay at 7) (D.I. 10). This Court nevertheless granted that motion, and it should do the same here.

## II.   ALL THE CONDITIONS FOR EXEMPTION UNDER AMENDED RULE 16B-3 HAVE BEEN SATISFIED.

Plaintiff also argues that the acquisition of ICI was not approved by MTC's Board of Directors in the manner prescribed by Rule 16b-3. (Opp'n at 9.) To reach this conclusion, plaintiff ignores the express language of MTC's public filings and board resolutions (which describe the board's independent approval of the transaction consistent with Rule 16b-3) and reads a purpose-specific approval requirement (which does not exist) into Rule 16b-3.

First, plaintiff's opposition incorrectly states that "[t]here is nothing in the record to indicate that the MTC board was made aware of Rajesh's beneficial ownership of the shares owned by his family members." *Id.* This is plainly false. MTC's Form 8-K, dated October 1, 2003 details some of the measures that were taken to approve the ICI acquisition precisely because the board was aware of the relationship between Rajesh, his family members and ICI:

> ICI's selling shareholders are family members of Rajesh K. Soin,
> MTCT's [sic] Chairman of the Board and majority stockholder.
> As a result, Rajesh K. Soin was not involved in the negotiation of
> the acquisition of ICI, the directors other than Mr. Soin elected a

> special committee of independent non-management directors to
> consider and approve the acquisition of ICI, engaged separate legal
> counsel to represent and advise them and engaged Raymond James
> & Associates, Inc. as a financial advisor to issue a fairness opinion
> on the fairness of the ICI acquisition to the MTCT stockholders.

MTC Technologies, Inc., 8-K, Oct. 1, 2003; *see also* MTC Technologies, Inc., Definitive Proxy

Statement, Mar. 22, 2004 (attached to Decl. of Richard L. Horwitz) (D.I. 24); Def's Reply Br.

Supp. Mot. Stay at 3 (D. I. 13); Decl. of Therese Mohn, Mar. 4, 2005, ¶¶ 3-5 & Exs. A-C

(Resolutions of the Independent Directors, which formally authorize the transaction in

accordance with Delaware law) (D. I. 14).[3]

    Second, to the extent that plaintiff has read a purpose-specific approval requirement into

Rule 16b-3 (Opp'n at 8-9), it has done so in error. Nothing in Rule 16b-3(d) (whether before or

after its recent amendments) requires board approval to contain any magic words that

specifically invoke the exemption. *See Gryl*, 298 F.3d at 144-45 (Rule 16b-3 does not require

that the "board approve the [transaction] with an express indication that its approval was

intended to invoke the exemption"); SEC's Mem. *Amicus Curiae* Supp. Appellee's Petition

Reh'g Or Reh'g *En Banc*, *Levy v. Sterling*, No. 02-1698 (3d Cir. Feb. 27 2003), at 24-26 (Mem.

Ex. B) (D.I. 23). Of course, the SEC No-Action Letter cited by plaintiffs (Opp'n at 8-9) has zero

precedential value. *See, e.g., Gryl*, 298 F.3d at 144-45 (noting that "SEC no-action letters

constitute neither agency rule-making nor adjudication and thus are entitled to no deference

beyond whatever persuasive value they might have" and refusing to require a purpose-specific

approval to invoke exemption under Rule 16b-3).

---

[3] The Court may take judicial notice of public filings, such as SEC filings, and consider them on a motion to dismiss, without converting the motion to a motion for summary judgment. *Indeck Me. Energy, L.L.C. v. ISO N. Eng. Inc.*, 167 F. Supp. 2d 675, 678-79 (D. Del. 2001); *Stampone v. Freeman Decorating Co.*, No. Civ. A. 04CV4241 (DMC), 2005 WL 2216977, at *1 (D.N.J. Sept. 12, 2005) ("In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider . . . matters of public record.")

Plaintiff's reliance on the *Donoghue* case is again misplaced. The court in *Donoghue* did not require a purpose-specific approval by the issuer's board of directors. *Donoghue*, 375 F. Supp. 2d at 236. The New York court merely held that the board's approval of a Stock Option Agreement granting Jewelcor the right to elect to exercise options at any time within a period of over three years did not exempt the transaction under Rule 16b-3 simply because the majority shareholder of Jewelcor later became a member of the issuer's board of directors, where (1) the majority shareholder was not a director or officer of the issuer at the time the Stock Option Agreement in question was approved, and (2) the board approval did not even mention him, or reference the extent of his interest in Jewelcor or in the transaction. *Id.* at 235-36. In this case, MTC's board approval of the ICI acquisition clearly referred to Rajesh, identified him as a current member of MTC's board, and recognized his relationship with Indu, Vishal and Amol Soin and ICI. (*See* MTC Technologies, Inc., 8-K, Oct. 1, 2003; Definitive Proxy Statement, Mar. 22, 2004; Decl. of Therese Mohn, Mar. 4, 2005 ¶¶ 3-5 & Exs. A-C.) Nothing more is contemplated by Rule 16b-3(d).

Rule 16b-3(d) merely requires that any one of three alternative conditions (i.e., board approval, shareholder approval or retention of the securities for a period of at least six months) be met to exempt a transaction from Section 16(b) liability. In relevant part, the Rule provides that

> [a]ny transaction . . . involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if: The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors.

17 C.F.R. § 240.16b-3(d)(1). All of the express conditions relating to board approval have been met here (plaintiff does not argue otherwise), and the complaint does not allege any facts to

establish that the issuance of MTC securities in connection with MTC's acquisition of ICI is beyond the exemption afforded by Rule 16b-3(d)(1).

Third, plaintiff's suggestion that there must be a judicial determination that the board of directors acted in "good faith" before the Rule 16b-3 exemption can apply is wrong.  (Opp'n at 9 n.2.)  Nothing in the text of the rule indicates that a judicial determination of good faith on the part of the issuer's board of directors is required for the exemption to apply.  To the contrary, it says that a transaction "shall be exempt if" it is "approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors."  C.F.R. § 240.16b-3(d)(1).  No other prerequisites for exemption are set forth.  The SEC intended that the exemptions reduce uncertainty about potential transactions (Adopting Release, 70 Fed. Reg. at 46,081, 46,086), and implying an extra-textual requirement for a judicial finding of good faith by the directors would run directly contrary to that purpose.  Thus, it is no surprise that other courts have dismissed lawsuits on the basis of the Rule 16b-3 exemption, without inquiring into whether the independent directors approving the transaction acted in good faith. *See, e.g., Dreiling*, 351 F. Supp. 2d 1077; *Gryl*, 298 F.3d 136.  In any event, if there were grounds to believe that directors in a particular case did not act in good faith in approving a transaction with an insider, state corporation law would offer the mechanism for addressing any such failure by the directors.

Accordingly, Rule 16b-3 exempts from Section 16(b) coverage the only "purchase" of MTC securities alleged in the complaint, so the complaint must be dismissed.

## III.    THE SEC'S ADOPTION OF AMENDED RULE 16B-3 IS PLAINLY WITHIN ITS RULE-MAKING AUTHORITY.

Plaintiff ignores the Third Circuit and Supreme Court cases cited in defendants' opening brief, which hold that an agency's interpretation of its own regulation is "***controlling*** unless

plainly erroneous or inconsistent with the regulation." (Mem. at 10-16 (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (emphasis added; internal quotation marks omitted))). Instead, plaintiff's opposition attacks the validity of amended Rule 16b-3 on the grounds that the SEC has exceeded its statutory authority by adopting it. That argument has no merit.

As with any agency, the SEC's authority to promulgate exemptive rules is circumscribed by the scope of authority vested in it by Congress. With respect to Section 16(b), Congress has expressly authorized the SEC to exempt "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b). These exemptive rules are to be afforded great weight and they are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Mead*, 533 U.S. at 227; *see also Chevron*, 467 U.S. at 843-44; *Levy*, 314 F.3d at 112 (exemptive rules promulgated under Section 16(b) are entitled to *Chevron* deference).

The SEC's conclusion that the types of transactions described in Rule 16b-3 were "not vehicles for the speculative abuse that Section 16(b) was designed to prevent," provided that certain "objective gate-keeping conditions" were satisfied (*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34-37260, 62 SEC Docket 138, 1996 WL 290234, at *3 (May 31, 1996) (D.I. 23 Ex. D)), is entirely consistent with the SEC's statutory mandate to enact exemptive rules for transactions that are "not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b). The SEC's expert determination that board approval, shareholder approval, or retention of the securities for at least six months (*see* 17 C.F.R. § 240. 16b-3(d)(1)-(3)), effectively vitiate the possibility of

speculative abuse where a director or officer acquires issuer equity securities from an issuer is binding. *See Mead*, 533 U.S. at 219.

Plaintiff does not cite any cases holding that the SEC's rationale for adopting Rule 16b-3 nearly ten years ago is so "manifestly contrary to the statute" as to be unworthy of deference under *Chevron*. Indeed there is no language in the *Gryl*, *Dreiling* or *Levy* cases, all of which squarely decided whether Rule 16b-3 applied to transactions with no compensatory nexus, that remotely implies that the SEC exceeded its statutory authority by enacting the rule.

The older cases cited by plaintiff[4] all predate *Chevron* (1984) and apply a different standard for deciding how much deference is due an agency's interpretation of its statutory authority. Only *Gollust v. Mendell*, 501 U.S. 115, 121 (1991), was decided post-*Chevron*, and the ruling in that case did not even reference an SEC rule, let alone strike one down for exceeding the authority vested in the SEC under Section 16(b).

Likewise, the legislative history of Section 16(b) cited in plaintiff's opposition does not support plaintiff's argument. As explained in defendants' opening brief, Congress adopted a prophylactic rule of strict liability for the class of transactions where it believed the risk of speculative abuse was the greatest -- i.e., insiders purchasing and selling securities within a six-month period -- but recognized that exemptions promulgated by the SEC were necessary to prevent Section 16(b) from sweeping too broadly. (Mem. at 16-17.) Of course, the legislative history supports Congress's view that the rule should have broad application. It does not address the specific procedural safeguards underlying Rule 16b-3, which the SEC promulgated much

---

[4] See, for example, *Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir. 1943); *Rattner v. Lehman*, 193 F.2d 564 (2d Cir. 1952); *Perlman v. Timberlake*, 172 F. Supp. 246 (S.D.N.Y. 1959); *Blau v. Lehman*, 368 U.S. 403 (1962); *Feder v. Martin Marietta Corp.*, 406 F.2d 260 (2d Cir. 1969); *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418 (1972); *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043 (2d Cir. 1974); *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232 (1976).

later in time. Nothing in the legislative history supports the notion that Rule 16b-3, in its pre-amendment or post-amendment form, is beyond the express rule-making authority granted to the SEC by Congress.

Most of plaintiff's argument amounts to disagreement with the SEC over its policy considerations in promulgating Rule 16b-3. However, mere disagreement with the SEC's expert judgment cannot be grounds for invalidating Rule 16b-3, because Congress has expressly delegated authority to the SEC to use that judgment to promulgate such exemptive rules. *See Chevron*, 467 U.S. at 843-44, 864 ("Such policy arguments are more properly addressed to legislators or administrators, not to judges."). These rules are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Mead*, 533 U.S. at 227; *Chevron*, 467 U.S. at 843-44; *Levy*, 314 F.3d at 112 (exemptive rules promulgated under Section 16(b) are entitled to *Chevron* deference). Plaintiff does not (and cannot) establish that the SEC's adoption of Rule 16b-3 or the clarifying amendments were "arbitrary, capricious, or manifestly contrary to the statute." *Id.* Amended Rule 16b-3 is therefore valid, and it applies here.

## IV.   AMENDED RULE 16B-3 APPLIES TO THE TRANSACTIONS ALLEGED IN THE COMPLAINT.

Plaintiff makes the same arguments against the so-called "retroactive" application of Rule 16b-3 that it raised unsuccessfully in opposing defendant's Motion to Stay. (*Compare* Opp'n at 17-18 *with* Pl.'s Opp'n Mot. Stay at 10-11). The Court should reject these arguments again and grant defendants' motion to dismiss.

A.    **Amended Rule 16b-3 Clarifies What The Rule Has Meant All Along, And It Therefore Applies To Transactions That Occurred Before The Amendment Was Adopted.**

Citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988) and *Jahn v. 1-800 Flowers.com, Inc.*, 284 F.3d 807 (7th Cir. 2002), plaintiff argues that amended Rule 16b-3 cannot be applied retroactively. (Opp'n at 17.) Plaintiff fails to note that "*Bowen's* ban on retroactivity" does not apply to clarifying amendments, which "restate[] what the law according to the agency is and has always been." *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (quoting *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) and citing *Bowen*, 488 U.S. at 208 and *First Nat'l Bank v. Standard Bank & Trust*, 172 F.3d 472, 478 (7th Cir. 1999)); *see also Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998). "A clarifying rule, therefore, can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand." *Clay*, 264 F.3d at 749; *see also Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 135 (1936).

Plaintiff does not even attempt to distinguish the cases cited in defendants' opening brief. Instead, its opposition mischaracterizes the amended rule by asserting that "it is obvious that the Rule is intended not as a clarification of existing law, but to overrule *Levy*." (Opp'n at 18.) This statement is discernibly false. As the SEC's release explained:

> [T]he [Third Circuit's] *Levy v. Sterling* opinion reads Rules 16b-3 and 16b-7 to require satisfaction of conditions that are neither contained in the text of the rules nor intended by the Commission. The resulting uncertainty regarding the exemptive scope of these rules has made it difficult for issuers and insiders to plan legitimate transactions. *We seek to resolve any doubt as to the meaning and interpretation of these rules by reaffirming the views we have expressed previously regarding their appropriate construction.* The amendments to the text of the rules we propose in this release will *clarify* the regulatory conditions that apply to these exemptions consistent with our previously expressed views.

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 69

Fed. Reg. 35,982, 35,982-83 (June 24, 2004) (emphasis added) (footnote omitted); *see also*

Mem. at 5-7 (citing SEC releases and cases consistently interpreting the pre-amendment and

post-amendment versions of Rule 16b-3 as not containing a compensatory nexus requirement).

Courts "give great deference to the promulgating agency's expressed intent as to whether its rule

changes the law or merely clarifies it." *Clay*, 264 F.3d at 749. In addition, Judge Sleet has

already determined in *Levy* that the proposed amendment to Rule 16b-3 is meant to clarify

existing law and would apply retrospectively to render this case moot. *See Levy*, 2004 WL

2251268, at *2-3. This Court made a similar determination by granting defendant's Motion to

Stay. Stay Order (staying the present case because "the SEC's proposed <u>clarifying</u> amendment

<u>to</u> <u>SEC</u> <u>Rule</u> <u>16b-3</u> is likely to be of significant relevance to the issues in dispute in this case")

(emphasis added).

Because the amendments do not change the law, but merely clarify what it has been and

continues to be, they present no real issue of retroactivity; the law is now as it was before.

Therefore, as the SEC's Adopting Release recognizes, amended Rule 16b-3 applies to any and

all transactions — including the transaction at issue in this case — occurring after the effective

date of the *pre-amendment* version of the rule. *See* Adopting Release, 70 Fed. Reg. at 46,080;

(Mem. at 8-9; citing relevant Third Circuit and Supreme Court cases).

### B. The Third Circuit Opinion In *Levy* Does Not Preclude Applying Amended Rule 16b-3 Here.

Just as in its response to Defendants' Motion to Stay, plaintiff argues that the Third

Circuit decision in *Levy* precludes this Court from considering the SEC's amendments to

Rule 16b-3. (*Compare* Opp'n at 17-18 *with* Pl.'s Opp'n Mot. Stay at 11). Plaintiff's citation to

*Neal v. United States*, 516 U.S. 284 (1996), is not relevant, because *Neal* involved an agency's

interpretation of a statute, not an interpretation of the agency's own regulation. *See Neal*, 516 U.S. at 294-95 (reviewing interpretation of 21 U.S.C. § 841). Plaintiff also cites *National Cable & Telecommunications Association v. Brand X Internet Services*, 125 S. Ct. 2688 (2005), a case that completely undercuts its argument.

As explained in defendants' opening brief (Mem. at 14-15), the Supreme Court held in *Brand X* that a later agency interpretation of a statute or regulation will override a court decision unless the prior judicial ruling "unambiguously forecloses the agency's interpretation." *Id.* at 2699-700. The *Levy* court's prior ruling hardly meets this high standard. To the contrary, the Third Circuit found the rule ambiguous. *See Levy*, 314 F.3d at 112 ("In this case, however, the SEC has not set forth its interpretation clearly so our threshold challenge is to ascertain what in fact was its interpretation."). The clear holding of *Brand X* requires that *Chevron* deference be afforded to amended Rule 16b-3.

In fact, Judge Sleet of this District Court has already determined as much in holding that the Third Circuit opinion will not prevent the Court from considering the amendments to Rule 16b-3. *See Levy*, 2004 WL 2251268, at *2-3 (explaining that "the proposed amendments to Rule 16b-3 will not limit the exemption to transactions that have some compensation-related aspect" and thus the proposed amendments "could materially affect the issues in this case"); *see also* Stay Order (staying this case pending final action by the SEC on proposed clarifying amendments). In accordance with these earlier determinations and the recent, controlling *Brand X* case, the Court should defer to the SEC's interpretation of the amendments to Rule 16b-3 as being clarifying, and apply the amended rule to the allegations of the complaint.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss

plaintiff's complaint in its entirety and with prejudice.

Respectfully submitted,

*Melony R. Anderson*

Richard L. Horwitz (#2246)
Melony R. Anderson (#4377)
POTTER, ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, Delaware 19801
Tel:  (302) 984-6027
Fax:  (302) 658-1192

Attorney for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin

Of Counsel:

Geoffrey J. Ritts
Salim A. Kafiti
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel:  (216) 586-3939
Fax:  (216) 579-0212

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Melony R. Anderson, hereby certify that on November 30, 2005, the attached

document was served via hand delivery and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification of such filing(s) to the following and the document

is available for viewing and downloading from CM/ECF:

Theodore J. Tacconelli            Robert Stearn, Jr.
FERRY, JOSEPH & PEARCE, P.A.      RICHARDS, LAYTON & FINGER
824 Market Street                 One Rodney Square
Suite 904                         920 North King Street
P.O. Box 1351                     Wilmington, Delaware 19801
Wilmington, Delaware 19899

I hereby certify that on November 30, 2005, the attached document was served via first

class mail to the following non-registered participants:

Paul D. Wexler                    Glenn F. Ostrager
BRAGAR WEXLER EAGEL &             OSTRAGER CHONG FLAHERTY &
MORGENSTERN, P.C.                 BROITMAN P.C.
885 Third Avenue                  250 Park Avenue
New York, New York 10022          New York, New York 10177-0899

By: _Melony R. Anderson_

Melony R. Anderson (#4377)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com

Attorney for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin

709352v1

17