# EXHIBIT A

# 05-5271-CV

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

**MARC BRUH,**

*Plaintiff - Counter-Defendant - Appellant,*

v.

**BESSEMER VENTURE PARTNERS III L.P.,**

*Defendant - Counterclaimant - Appellee,*

**VISTACARE, INC.,**

*Defendant.*

---

**On Appeal from the United States District Court
for the Southern District of New York**

---

**BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE*, SUBMITTED AT THE REQUEST OF THE COURT
AND IN SUPPORT OF AFFIRMING THE DECISION BELOW**

---

**BRIAN G. CARTWRIGHT**
General Counsel

**JACOB H. STILLMAN**
Solicitor

**ERIC SUMMERGRAD**
Deputy Solicitor

**ALLAN A. CAPUTE**
Special Counsel to the Solicitor
Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549-8010
(202) 551-5122 (Capute)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    UNDER RULE 16a-1(c), THE PURCHASE OF VISTACARE
      COMMON STOCK TOOK PLACE ON DECEMBER 17, 2002 . . . . . . . . 3

II.   BESSEMER'S COMMON STOCK ACQUISITION CAME
      ABOUT IN A RECLASSIFICATION THAT WAS EXEMPT
      FROM SECTION 16(b), UNDER BOTH  PRE - 2005
      AMENDMENT AND POST - 2005 AMENDMENT
      RULE 16b-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    The History of the Exemption of Reclassifications from
            Section 16(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    The Commission's 2005 Amendment to Rule 16b-7 Merely
            Clarified Existing Law, and Thus Is Properly Applicable
            to Conduct Occurring Prior to Adoption of the Amendment.  . . . . . 15

      C.    Rule 16b-7, Prior to the 2005 Amendment, Implicitly
            Exempted Reclassifications Under the Same Conditions
            Applicable to Mergers and Consolidations, the Same
            Standard Made Explicit in the Amendment, and
            Exempted the Reclassification Here. . . . . . . . . . . . . . . . . . . . . . . . . 21

III.  THE COMMISSION'S EXEMPTION OF RECLASSIFICATIONS
      IN RULE 16b-7 WAS WITHIN ITS STATUTORY EXEMPTIVE
      AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

STATUTORY APPENDIX

CERTIFICATE OF SERVICE

CERTIFICATE OF CONCERNING COMPLIANCE WITH FED.
    R. APP. P. 32(a)(7)(C)

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 32(a)(1):
    BRIEFS IN DIGITAL FORMAT

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page</u>

Association of Accredited Cosmetology Schools v. Alexander,
  979 F.2d 859 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

At Home Corp. v. Cox Communications, Inc., __ F.3d __, 2006
  WL 1148512 (2d Cir. Apr. 28, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 29, 31

Auer v. Robbins, 519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Bershad v. McDonough, 428 F.2d 696 (7th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . 28

Blau v. Lamb, 363 F.2d 507 (2d Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988) . . . . . . . . . . . . . 15

Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945) . . . . . . . . . . . . . . . . . . 23

DeMaria v. Andersen, 318 F.3d 170 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 23

Encarnacion ex rel. George v. Barnhart, 331 F.3d 78 (2d Cir. 2003) . . . . . . . . . . . 24

First National Bank of Chicago v. Standard Bank & Trust,
  172 F.3d 472 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Foremost-McKesson, Inc. v. Provident Securities Co.,
  423 U.S. 232 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Gollust v. Mendell, 501 U.S. 115 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29

Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136 (2d Cir. 2002) . . . . . . . . . 29

Halperin v. eBanker USA.com, Inc., 295 F.3d 352 (2d Cir. 2002) . . . . . . . . . . . . . 25

Hayes v. Sampson, [1980 Transfer Binder] Fed. Sec. L. Rep.
  (CCH) ¶ 97,693, 1980 WL 1460 (S.D.N.Y. Nov. 18, 1980) . . . . . . . . . . . . . . . . . . . 9

Heimmermann v. First Union Mortgage Corp.,
  305 F.3d 1257 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES (CONTINUED)

**Cases (Continued)**                                                                    **Page**

Heublein, Inc. v. Gen. Cinema Corp., 722 F.2d 29 (2d Cir. 1983) . . . . . . . . . . . . . .  29

Kern County Land Co. v. Occidental Petroleum Corp.,
    411 U.S. 582 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

King v. American Airlines, Inc., 284 F.3d 352 (2d Cir. 2002) . . . . . . . . . . . . . . . . .  16

LaFleur v. Whitman, 300 F.3d 256 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Landgraf v. USI Film Products, 511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . .  17

Levy v. Southbrook International Investments, Ltd.,
    263 F.3d 10 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Levy v. Sterling Holding Co.,
    314 F.3d 106 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 12, 13, 21, 22, 24, 32

Manhattan General Equip. Co. v. Commissioner, 297 U.S. 129 (1936) . . . . . . . . . .  16

Martin v. Occupational Safety & Health Rev. Com'n.,
    499 U.S. 144 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

National Cable & Telecommunications Association v. Brand X
    Internet Services, 125 S.Ct. 2688, __ U.S. __, (2005) . . . . . . . . . . . . . . . . . . . . . .  18

National Mining Association v. Department of Interior,
    177 F.3d 1 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

National Mining Association v. Department of Labor,
    292 F.3d 849 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92 (2d Cir. 2004) . . . . . . . . . .  25

Piamba Cortes v. American Airlines, Inc.,
    177 F.3d 1272 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Pope v. Shalala, 998 F.2d 473 (7th Cir. 1993), overruled on
    other grounds, Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999) . . . . . . . . . . . .  16, 17

## TABLE OF AUTHORITIES (CONTINUED)

**Cases (Continued)**                                                    **Page**

Press v. Quick & Reilly, Inc., 218 F.3d 121 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . .  23

Reliance Electric Co. v. Emerson Electric Co.,
  404 U.S. 418 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27, 28

Roberts v. Eaton, 212 F.2d 82 (2d Cir. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Rothenberg v. United Brands Co., [1977 Transfer Binder]
  Fed. Sec. L. Rep. (CCH) ¶ 96,045, 1977 WL 1014
  (S.D.N.Y. May 11, 1977), *aff'd*, 573 F.2d 1295 (2d Cir. 1977) . . . . . . . . . . . . . . . .  9

Semerenko v. Cendant Corp., 223 F.3d 165 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . .  25

Sweet v. Sheahan, 235 F.3d 80 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Taylor v. Vt. Dept. of Educ., 313 F.3d 768 (2d Cir. 2002) . . . . . . . . . . . . . .  16, 20, 24

United States v. Sepulveda, 115 F.3d 882 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . .  16

White v. Shalala, 7 F.3d 296 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**Commission Releases**

Exemption of Certain Transactions from Section 16b,
  Exchange Act Release No. 4717, 17 Fed. Reg. 5501
  (June 19, 1952, as corrected July 18, 1952 at 17 Fed. Reg. 6579) . . . . . . . . . . . . . .  10

Exemption of Certain Transactions from Section 16(b),
  Exchange Act Release No. 4696, 17 Fed. Reg. 3177
  (April 10, 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 28

Form 8-K Disclosure of Certain Management Transactions,
  Exchange Act Release No. 45742, 67 Fed. Reg. 19914
  (Apr. 23, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Interpretive Release on Rules Applicable to Insider Reporting
  and Trading, Exchange Act Release No. 18114, 1981 WL 31301
  (Sept. 24, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

## TABLE OF AUTHORITIES (CONTINUED)

**<u>Commission Releases (Continued)</u>**                                                    <u>Page</u>

Ownership Reports and Trading By Officers, Directors and
  Principal Security Holders, Exchange Act Release No. 28869,
  56 Fed. Reg. 7242 (Feb. 21, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

Ownership Reports and Trading by Officers, Directors and
  Principal Security Holders, Exchange Act Release No. 49895,
  69 Fed. Reg. 35982 (June 25, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ownership Reports and Trading by Officers, Directors and Principal
  Security Holders, Exchange Act Release No. 52202,
  70 Fed. Reg. 46080 (Aug. 9, 2005) . . . . . . . . . . . . . . . 2, 7, 11, 14, 19, 20, 22-24, 27, 30

**<u>Statutes and Rules</u>**

<u>Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.</u>

      Section 16, 15 U.S.C. 78p . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Section 16(b), 15 U.S.C. 78p(b). . . . . . . . . . . . . . 2-4, 6, 9, 10, 14, 17, 18, 22, 25-32
      Section 21E(b), 15 U.S.C. 78u-5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      Section 21E(c), 15 U.S.C. 78u-5(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Rules Under the Securities Exchange Act of 1934, 17 C.F.R. 240.01, et seq.</u>

      Rule 16a-1, 17 C.F.R. 240.16a-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Rule 16a-1(c), 17 C.F.R. 240.16a-1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
      Rule 16a-1(c)(6), 17 C.F.R. 240.16a-1(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
      Rule 16b-3, 17 C.F.R. 240.16b-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      Rule 16b-6(a), 17 C.F.R. 240.16b-6(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
      Rule 16b-6(b), 17 C.F.R. 240.16b-6(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      Rule 16b-7, 17 C.F.R. 240.16b-7 . . . . . 2, 6-12, 14, 15, 17, 19-25, 27, 28, 30, 32

<u>Federal Rules of Appellate Procedure</u>

      Rule 35(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      Rule 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES (CONTINUED)

**Miscellaneous**                                                                 **Page**

H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) . . . . . . . . . . . . . . . . . . . . . . . . .  29

Hearings on Stock Exchange Practices before the Senate Committee
  on Banking and Currency, 73d Cong., 1st Sess. pt. 15, 6557 (1934). . . . . . . . 27, 29

Memorandum of the Securities and Exchange Commission,
  Amicus Curiae, in Support of Appellees' Petition for Rehearing
  or Rehearing En Banc, filed in, Levy v. Sterling Holding Co.,
  LLC., 314 F.3d 106 (3d Cir. 2002), cert. denied, 540 U.S. 947 (2003),
  available at www.sec.gov/litigation/briefs/levy-sterling022703.htm. . . . . . . . . . .  13

Miranda S. Schiller, SEC Rule 16(b) Amendments: Eliminating
Uncertainty of "Sterling," New York Law Journal, Vol. 235
(Jan. 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
  109 Stat. 737 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

S. Rep. 792, 73d Cong., 2d Sess. 21 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Securities Exchange Act of 1934, Pub. L. 73-291,
  48 Stat. 881 (June 6, 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Summary of Comments to Proposed Rulemaking, 2005 WL 1923122
  (July 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

No. 05-5271-cv

MARC BRUH,

*Plaintiff - Counter - Defendant - Appellant,*

v.

BESSEMER VENTURE PARTNERS III L.P.,

*Defendant - Counterclaimant - Appellee,*

VISTACARE, INC.,

*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE*, SUBMITTED AT THE REQUEST OF THE COURT
AND IN SUPPORT OF AFFIRMING THE DECISION BELOW

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION

Pursuant to the Court's order of April 19, 2006, requesting a brief *amicus curiae*

from the Securities and Exchange Commission, the Commission submits this brief

addressing legal issues specified in the order: "(1) whether the parties' establishment

of a conversion agreement in 1999 constituted a 'purchase' within the meaning of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78p(b) (Appendix A); (2) whether the conversion of preferred stock into common stock was a 'reclassification' within the meaning of SEC Rule 16b-7, 17 C.F.R. 240.16b-7; and (3) whether recent amendments to Rule 16b-7 are permissibly retroactive."

In addition, the Commission addresses two other issues in the case: the standards applicable in applying Rule 16b-7 to reclassifications prior to the 2005 amendments to the Rule, *see Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 52202, 70 Fed. Reg. 46080, 46085 (Aug. 9, 2005), and whether the Commission had the authority to exempt certain reclassifications under its statutory exemptive authority. These issues involve a challenge to the Commission's authority to engage in rulemaking, and offer constructions of a Commission rule under Section 16(b). They thus implicate matters of obvious importance to the Commission regarding the exercise of its rulemaking power.

## ARGUMENT

### I.   UNDER RULE 16a-1(c), THE PURCHASE OF VISTACARE COMMON STOCK TOOK PLACE ON DECEMBER 17, 2002.

The district court incorrectly held that the purchase by Bessemer of VistaCare common stock took place in 1995, far earlier than six months before the sale in 2003, and that the transactions thus could not be subject to Section 16(b).  As the plaintiff argues, under Commission rules, the purchase took place on December 17, 2002, when the price at which the common stock was acquired was fixed.

In 1995, Bessemer acquired preferred stock in VistaCare's predecessor company, Vista Hospice Care, Inc. ("VHS") (A-19, 30, 37, 46-78, 849, 1505).  At that time the preferred stock was not convertible to common stock.   Thus, the purchase of this non-convertible preferred stock in 1995 did not constitute a "purchase" of the underlying common stock within the meaning of Section 16(b).

In 1998 VHS became a wholly owned subsidiary of VistaCare and Bessemer acquired non-convertible VistaCare preferred stock (A37-38, 849, 1506).  On December 23, 1999, VistaCare filed a Restated Certificate of Incorporation ("Restated Certificate") (A173-217) which provided that, upon the closing of an initial public offering of VistaCare common stock, the VistaCare preferred stock would automatically convert to common stock.  The conversion price was to be determined

by a formula in which one element was the IPO price (A209-10). The IPO price, and hence the conversion price, was set at $12.00 per share on December 17, 2002.

Under the Commission's rules, the acquisition of "derivative securities" is considered to be an acquisition of the underlying securities for purposes of Section 16(b). *See* Rule 16a-1(c), 17 C.F.R. 240.16a-1(c); Rule 16b-6(a), 17 C.F.R. 240.16b-6(a) (Appendix B). Under Commission Rule 16a-1, 17 C.F.R. 240.16a-1, the term "derivative securities" is defined to mean "any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege at a price related to an equity security, or similar securities with a value derived from the value of an equity security * * *." Rule 16a-1(c) (emphasis added). However, Rule 16a-1(c)(6) excludes from the definition of derivative securities "rights with an exercise or conversion privilege at a price that is not fixed." 17 C.F.R. 240.16a-1(c)(6) (Appendix C). Thus, the parties establishment of convertible preferred stock in 1999 was not a purchase of the underlying common stock within the meaning of Section 16 because the convertible preferred did not satisfy the definition of "derivative security" at the time. Rather, the preferred stock became a derivative security, and the underlying common stock was deemed to be acquired, when the conversion price was fixed on December 17, 2002.

Defendant Bessemer argues that "[t]he reclassification's sole effect on Bessemer's holdings was to change its preferred stock into an equivalent value of common stock" (Appellee's Br. at 6). By this the defendant means an equivalent *aggregate* value. This does not mean that a fixed price "derivative security" was established before December 17, 2002. Indeed, the defendant acknowledges that to maintain this equivalent *aggregate* value, the number of common shares receivable by Bessemer would decline proportionately to a common stock price increase. The *per share* price of common stock thus would fluctuate along with the IPO price, 1/ consistent with a floating price rather than a fixed price derivative security. 2/ The December 17, 2002 purchase of VistaCare stock by Bessemer would, if not exempted, be matchable with Bessemer's sale of VistaCare common stock within six months during a secondary offering of VistaCare common stock on May 13, 2003. 3/

---

1/    As the IPO price rose, so would the price per share of common stock received in the conversion. The aggregate price of all common shares received would be kept stable by reducing the number of shares received.

2/    The Commission explained the intent of Rule 16a-1(c)(6) as follows, "The definition [of 'derivative security'] has been clarified to exclude securities without a fixed exercise price. Rights without a fixed exercise price do not provide an insider the same kind of opportunity for short-swing profit since the purchase price is not known in advance." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 28869, 56 Fed. Reg. 7242, 7252 (Feb. 21, 1991).

3/    The Rule 16b-6(a) provision exempting the fixing of the exercise price of a right initially issued without a fixed price, where the date the price is fixed is
                                                                      (continued...)

That the purchase and sale of the common stock took place within six months does not necessarily mean that Section 16(b) liability ensues. The defendant may be correct that, given the nature of the reclassification, there was no meaningful opportunity for it to engage in insider trading. That, however, does not mean the purchase did not take place. The analysis must focus on whether an exemption for the purchase was available; specifically in this case the exemption for certain reclassifications under Rule 16b-7. Since the district court incorrectly dismissed this case on the basis of the timing of the common stock purchase, it did not consider that exemption.

## II.  BESSEMER'S COMMON STOCK ACQUISITION CAME ABOUT IN A RECLASSIFICATION THAT WAS EXEMPT FROM SECTION 16(b), UNDER BOTH  PRE - 2005 AMENDMENT AND POST - 2005 AMENDMENT RULE 16b-7.

Bessemer contends that the reclassification by which it received VistaCare common stock was an exempt reclassification pursuant to Commission Rule 16b-7 (Appellee's Br. at 21-24). The plaintiff first contends (Appellant's Br. 9) that the conversion of Bessemer's preferred stock to common stock was not, under Delaware

---

3/(...continued)
   not known in advance and is outside the control of the recipient, is available
   only with respect to an offsetting transaction within the six months *prior* to the
   date the price is fixed. This exemption is not available here where the
   offsetting transaction occurred within the six months *after* the date the price
   was fixed.

law, a reclassification at all, and thus is not eligible for Rule 16b-7.  Plaintiff argues

that Delaware law required the conversion to be approved by shareholders.  The

application of Rule 16b-7, however, does not turn on application of state law criteria,

but on the exemptive conditions of the rule.  The Commission declined to adopt a

specific definition of the term "reclassification" for purposes of Rule 16b-7 "[i]n

order to preserve flexibility to apply the rule appropriately to evolving forms of

transactions," but explained:

> [T]ransactions that are exempt as reclassifications generally include
> transactions in which the terms of the entire class or series are changed, or
> securities of the entire class or series are replaced with securities of a different
> class or series of securities of the company, and all holders of the reclassified
> class or series are entitled to receive the same form and amount of
> consideration per share.

*Ownership Reports*, 70 Fed. Reg. at 46085.  Those standards are met in this case.  The

conversion of VistaCare securities was a classic reclassification.  It encompassed the

simple exchange of one entire series of stock, VistaCare preferred stock, for another

series of stock, VistaCare common stock, under circumstances where the holders of

the preferred stock received the same form and amount of consideration per share.

As such, the fixing of the price on December 17, and the related conversion on

December 23, constituted a reclassification for purposes of the federal securities laws. 4/

The plaintiff next contends that, if the common stock was acquired in a reclassification, whether it is exempt under Rule 16b-7 should be judged under the pre-2005 amendment version of the rule, on the ground that the 2005 amendment cannot be applied to a transaction that occurred in 2002. The standards under the pre-amendment version, plaintiff argues, are those in the Third Circuit's decision in *Levy v. Sterling Holding Co.,* 314 F.3d 106 (3d Cir. 2002) (Appellant's Br. at 54-56; Appellant's Reply Br. at 13-17).

The Commission disagrees with all the plaintiff's contentions. First, it believes that the 2005 amendment merely clarified the existing standards under the rule, and can be applied to conduct occurring before its adoption. Second, even if the amendment does not apply, the Commission believes that the *Levy* decision was incorrect, and should not be adopted by this Court. Finally, it believes that even the Third Circuit, which took the position it took in *Levy* only in light of what it believed

_____

4/    Both the December 17 fixing of the conversion price and the December 23 conversion of preferred into common are eligible for the Rule 16b-7 exemption, since they were both steps in the reclassification. While the December 17 fixing of the conversion price is not eligible for an exemption under any other Commission rule, the December 23 conversion of preferred into common is also eligible for exemption under Rule 16b-6(b) (exempting the exercise or conversion of a fixed price derivative security that is not out of the money).

-8-

to be the absence of clear guidance from the Commission, would construe the pre-amendment version of Rule 16b-7 differently, now that the Commission resolved any doubt as to the meaning and interpretation of the rule.

Before addressing these issues, we review the history of the treatment of reclassifications under Section 16(b).

## A.     The History of the Exemption of Reclassifications from Section 16(b).

Even before there were any Commission statements or rules regarding reclassifications under Section 16(b), this Court regularly exempted reclassifications under the "unorthodox transaction" doctrine, a court-developed doctrine which exempts transactions not considered to present the risk of insider trading at which Section 16(b) is directed. *See, e.g., Roberts v. Eaton*, 212 F.2d 82 (2d Cir. 1954); *Hayes v. Sampson*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,693, 1980 WL 1460 (S.D.N.Y. Nov. 18, 1980); *Rothenberg v. United Brands Co.*, [1977 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,045, 1977 WL 1014 (S.D.N.Y. May 11, 1977), *aff'd*, 573 F.2d 1295 (2d Cir. 1977). *See also Blau v. Lamb*, 363 F.2d 507 (2d Cir. 1966). In endorsing the unorthodox transaction doctrine in 1973, the Supreme Court noted that "[t]he term ['unorthodox transaction'], has been applied to stock conversions, exchanges pursuant to mergers and other corporate reorganizations, *stock reclassifications*, and

-9-

dealings in options, rights, and warrants." *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 593 n.24 (1973)(emphasis added). 5/

Rule 16b-7 was first adopted effective June 9, 1952. *See Exemption of Certain Transactions from Section 16b,* Exchange Act Release No. 4717, 17 Fed. Reg. 5501 (June 19, 1952, as corrected July 18, 1952 at 17 Fed. Reg. 6579). In the proposing release, the Commission noted that certain transactions are of relatively minor significance to shareholders, do not present significant opportunities to insiders to profit by advance information, and do not significantly alter economically the insider's previous investment. *Exemption of Certain Transactions from Section 16(b),* Exchange Act Release No. 4696, 17 Fed. Reg. 3177 (April 10, 1952). The proposing release stated that "the essential determination is whether the enterprise is materially different in character from what it was prior to the merger or consolidation." *Id. See also Exemption of Certain Transactions from Section 16b,* Exchange Act Release No. 4717, 17 Fed. Reg. 5501 (June 19, 1952) (in adopting the rule the Commission similarly stated that "[t]he

---

5/    The defendant alternatively argues that the reclassification here is exempt
      under the unorthodox transaction doctrine. The Commission takes no
      position on this contention, in light of an exemptive rule that specifcally
      addresses and exempts the transaction. It also notes that the Court has
      recently reaffirmed that in this Court the doctrine only applies to insiders who
      have no access to inside information. *See At Home Corp. v. Cox Communications,
      Inc.,* __ F.3d __, 2006 WL 1148512, at *4 (2d Cir. Apr. 28, 2005).

exemption is granted whenever a merger or consolidation does not result in any

significant change in the character or structure of the company.")

As originally adopted, Rule 16b-7 applied to mergers and consolidations, 6/

but did not specifically explicitly address reclassifications. In a 1981 interpretive

release, the staff stated that "Rule 16b-7 does not require that the security received in

exchange be similar to that surrendered, and the rule can apply to transactions

involving reclassifications." *Interpretive Release on Rules Applicable to Insider Reporting and*

*Trading*, Exchange Act Release No. 18114, 1981 WL 31301, at *57 (Sept. 24, 1981).

In 1991, the Commission amended the title of Rule 16b-7 to include

"reclassifications" along with mergers and consolidations. *See Ownership Reports and*

*Trading By Officers, Directors and Principal Security Holders*, Exchange Act Release No.

28869, 56 Fed. Reg. 7242, 7273 (Feb. 21, 1991).7/ The 1991 adopting release

indicates that the change was not intended to effect any "substantive" changes to the

rule, and reaffirmed the staff's 1981 view that the rule applies to reclassifications. *Id.*

at 7261-62.

---

6/    As the Commission explained last year, the rule is typically relied on where a
      company reincorporates in a different state or reorganizes its corporate
      structure. *See Ownership Reports*, 70 Fed. Reg. at 46084.

7/    In 2002, the Commission reiterated the view that Rule 16b-7 exempts
      reclassifications. *See Form 8-K Disclosure of Certain Management Transactions,*
      Exchange Act Release No. 45742, 67 Fed. Reg. 19914, 19919 (Apr. 23, 2002).

While reclassifications were listed in the title of the rule in 1991, the text of the rule before 2005 only referred to mergers and consolidations. 8/ Thus, the rule did not explicitly address whether the standards imposed on mergers and consolidations also applied to reclassifications. The issue of what standards to apply to reclassifications arose in the Third Circuit case *Levy v. Sterling Holding Co.*, 314 F.3d at 117. The Third Circuit held that because the rule itself did not, in its view, contain standards for reclassifications, the court had to determine what the Commission intended when it adopted the rule. Instead of applying the standards applied to mergers and consolidations, the *Levy* court construed Rule 16b-7 not to exempt an acquisition where a reclassification (a) results in the insiders owning equity securities (common stock) with different risk characteristics from the securities extinguished in the transaction (preferred stock), where the preferred stock previously had not been convertible into common stock, and (b) involves an increase in the percentage of the insiders' pre-existing common stock ownership because the reclassification extinguished the insiders' preferred stock in exchange for common stock. *Id.* at 116-117.

---

8/    Rule 16b-7, as it existed before the 2005 amendment, is reprinted in Appendix
      D. Amended Rule 16b-7 is reprinted in Appendix E.

The Commission was unaware of the *Levy* case before the Third Circuit panel's decision, but afterward filed an *amicus* brief in support of defendant's petition for rehearing and rehearing *en banc*. *See Memorandum of the Securities and Exchange Commission, Amicus Curiae, in Support of Appellees' Petition for Rehearing or Rehearing En Banc*, at *4, *filed in, Levy v. Sterling Holding Co., LLC.*, 314 F.3d 106 (3d Cir. 2002), *cert. denied*, 540 U.S. 947 (2003), *available at* www.sec.gov/litigation/briefs/levy-sterling022703.htm. ("*Levy Amicus Brief*"). In that brief, the Commission noted that the court's restrictions were not found anywhere in the language of the rule. *Levy Amicus Brief*, Id. at 9. The Commission stated that it would be inappropriate to impose upon reclassifications conditions that would not apply to mergers. *Id.* at 12. This is precisely what the panel did in *Levy* by requiring substantial similarity between the securities received and those surrendered in the reclassification. The Commission argued that the panel's decision misapplies and misconstrues the rule and is inconsistent with prior Commission statements on the subject (a fuller summary of the argument is contained below). *Id.*

The Third Circuit, without comment, denied the petition for rehearing. 9/ The panel's decision unsettled what had been a settled view of the law. One author

---

9/    Although the plaintiff characterizes the decision as a rejection of the Commission's views, it may merely have reflected the view that the case did not merit rehearing or rehearing *en banc* under the standards in Fed. R. App. P. 35(b)(1)and Fed. R. App. P. 40.

-13-

stated that "[t]he [*Levy*] decision had the effect of exposing insiders to §16(b) liability

in just about any reclassification transaction that was followed by a §16(b) purchase

or sale within six months, including acquisitions of securities that arguably are

involuntary." Miranda S. Schiller, *SEC Rule 16(b) Amendments: Eliminating Uncertainty of*

*"Sterling,"* New York Law Journal, Vol. 235 (Jan. 30, 2006).

     To address the confusion engendered by the decision, the Commission in

August 2005 amended Rule 16b-7. *See Ownership Reports*, 70 Fed. Reg. 46080.

Among the commenters supporting the proposal, there was a general consensus that

this rulemaking was necessary to eliminate the uncertainty generated by the Third

Circuit's construction of the rules in *Levy*. The American Bar Association commented

that the *Levy* decision had made it difficult for insiders wishing to "engage in

legitimate transactions in reliance on prior Commission interpretations of these two

rules." 10/ As noted, in adopting the amendments, the Commission agreed that after

*Levy* "[t]he resulting uncertainty regarding the exemptive scope of these rules [*i.e.*,

---

10/   Comment letters to that effect include those from the American Bar
      Association, the Securities Industry Association, the New York State Bar
      Association, the American Society of Corporate Secretaries, and seven law
      firms (out of ten firms that commented). *See Summary of Comments to Proposed*
      *Rulemaking*, 2005 WL 1923122 at *1 n.7 (July 15, 2005). The other three law
      firms, all of whom represent plaintiffs in Section 16(b) actions (including the
      plaintiff's lawyers in this case), argued that *Levy* set forth the correct reading of
      the rule so that no amendment was needed. *Id.* at *2 n.25.

both Rules 16b-3 and 16b-7] has made it difficult for issuers and insiders to plan

legitimate transactions * * * ." *Ownership Reports*, 70 Fed. Reg. at 46081. 11/

The adopting release thus makes it clear that the amendment makes no

substantive change to the law, but is only intended to clarify the existing meaning of

the Rule, and to dispel the uncertainty caused by the *Levy* decision. The amendment

to Rule 16b-7 added the word "reclassification" to the phrase "merger or

consolidation" wherever it appears in the text of the rule, explicitly making clear what

had been implicit before - - that reclassifications are exempt under the same

standards as mergers and consolidations. 12/

**B.    The Commission's 2005 Amendment to Rule 16b-7 Merely Clarified Existing Law, and Thus Is Properly Applicable to Conduct Occurring Prior to Adoption of the Amendment.**

The plaintiff argues that the 2005 amendment to Rule 16b-7 cannot be applied

here because that would be an impermissible retroactive application (Appellant's Br.

at 40-45l; Appellant's Reply Br. at 16-21). While an agency may not promulgate

"retroactive" rules absent express congressional authority, *see Bowen v. Georgetown*

---

11/    Rule 16b-3, 17 C.F.R. 240.16b-3, exempts certain transactions between an officer or director and the issuer. It is not claimed here because the rule's requirements were not met.

12/    In addition, the Commission added new subpart (c) to Rule 16b-7 which makes it clear that the exemption "is not conditioned on the transaction satisfying any other conditions" than those in the rule. (Former subpart (c) was redesignated as subpart (d)).

*University Hospital*, 488 U.S. 204, 208 (1988), "'[c]oncerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law.'" *King v. American Airlines, Inc.*, 284 F.3d 352, 358 n.3 (2d Cir. 2002) (*quoting Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1283 (11ᵗʰ Cir. 1999)). "A rule simply clarifying an unsettled or confusing area of the law * * * does not change the law, but restates what the law *according to the agency* is and has always been: 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Pope v. Shalala*, 998 F.2d 473, 483 (7ᵗʰ Cir. 1993)(emphasis added), *overruled on other grounds, Johnson v. Apfel,* 189 F.3d 561 (7ᵗʰ Cir. 1999) (*quoting Manhattan General Equip. Co. v. Commissioner*, 297 U.S. 129, 135 (1936)). *Accord Taylor v. Vt. Dept. of Educ.*, 313 F.3d 768, 780 n.8 (2d Cir. 2002) (finding an amended rule to be clarifying); *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1260 (11ᵗʰ Cir. 2002) (*quoting Pope v. Shalala, supra,* and *Manhattan General Equip. v. Commissioner, supra*). Clarifying rules are necessary "'to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases.'" *Piamba Cortes v. American Airlines, Inc.*, 177 F.3d at 1283 (*quoting United States v. Sepulveda*, 115 F.3d 882, 885 n.5 (11ᵗʰ Cir. 1997)). 13/

---

13/    Plaintiff contends that the appropriate analysis for the court to use when
        determining whether the amended rule may be applied to past conduct is that
                                                                (continued...)

The 2005 amendment merely clarified the meaning of Rule 16b-7 as it existed, and thus is not a legislative rule.  While the plaintiff contends that the amendment "overturned" the Third Circuit's opinion as to the meaning of the rule in *Levy*, that decision was never a conclusive determination of what Rule 16b-7 required.  The *Levy* court stated that it was only articulating standards under the rule because, in its view, the Commission had not made clear what standards were to be applied in exempting reclassifications.  It stated that "[i]n this case, however, the SEC has not set forth its interpretation clearly so our threshold challenge is to ascertain what in fact was its interpretation."  314 F.3d at 112.  The court went on to state that "[i]n the absence of specific SEC guidance about which reclassifications are exempt from section 16(b) under Rule 16b-7" it would reach its own conclusion as to standards the Commission

_____

13/(...continued)
found in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994).  The Seventh Circuit properly rejected the same argument, holding that *Landgraf* "deals with legislative rulemakings, not clarifying amendments.  *Landgraf* simply reaffirmed the ban on retroactive application of legislative rules.  * * *  *Landgraf* in no way undercuts [the holding in *Pope v. Shalala*, 998 F.3d at 483] that we defer to an agency's clarifying/legislative classification, and that clarifying amendments may have retroactive effect."  *First National Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 478 n.7 (7th Cir. 1999).  Unlike clarifying rule amendments, "legislative rules are those that 'create new law, rights, or duties, in what amounts to a legislative act.'"  *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d. Cir. 2000) (*quoting White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993)).

-17-

would apply. *Id.* at 114. The court did not suggest that it would or could undertake this analysis if the Commission itself clarified the rule. 14/

The situation is very different now. In 2005 the Commission provided its specific interpretation clarifying the standards to be applied to reclassifications. The clarification, applying the same standards as are applied to mergers and consolidations, is hardly a new standard in a rule that since 1991 has expressly dealt with all three types of transactions.

Having clarified this area, the Commission's interpretation supplants the interpretation offered by the *Levy* court. This is so even though the *Levy* decision came first. Even in matters of statutory interpretation under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court has held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.*" *National Cable & Telecommunications Association v. Brand X Internet Services*, 125

_____

14/    The court noted that "section 16(b) explicitly authorizes the SEC to exempt 'any transaction * * * as not comprehended within the purpose of' the statute.'" *Levy*, 314 F.3d at 112. It then emphasized that "[t]his section is critical for courts defer to an agency's interpretation of statutes, particularly where the statute provides the agency with authority to make the interpretation." *Id.*

S.Ct. 2688, 2700, ___ U.S. ___, (2005)(emphasis added).  The same certainly holds true

for an agency's interpretation of *its own rule*, even in the face of a prior judicial

decision. 15/

The adopting release for the 2005 amendments repeatedly states that the

Commission was only supplying a clarifying interpretation of an existing rule.  It

further stated that since the amendment to Rule 16b-7 "clarifies regulatory conditions

that applied to that exemption since it was amended effective May 1, 1991, it is

available to any transaction on or after May 1, 1991 that satisfies the regulatory

conditions so clarified." *Ownership Reports*, 70 Fed. Reg. 46080.

As the Commission explained, it was acting to dispel confusion as to the

appropriate standards for reclassification.  The Commission noted that after *Levy*,

"[t]he resulting uncertainty regarding the exemptive scope of [Rule 16b-7] has made it

difficult for issuers and insiders to plan legitimate transactions * * *.  With the

clarifying amendments to [Rule 16b-7] that we adopt today, we resolve any doubt as

to the meaning and interpretation of [the rule] by reaffirming the views we have

consistently expressed previously regarding [its] appropriate construction." *Ownership*

---

15/   The plaintiff argues that only the view of the Commission that added
      reclassifications to the rule matters, and that the views of the 2005
      Commission do not.  Thus, it argues that the Third Circuit's view of what the
      1991 Commission meant is significant, while the current Commission's view is
      not.  But a properly constituted Commission always has authority to construe
      the meaning of a Commission rule.

*Reports*, 70 Fed. Reg. at 46081. Resolving doubt and confusion as to what existing law provides is the *sine qua non* of a clarifying amendment. The Commission's view as to what it believed it was doing by the amendment, a view supported by the weight of comment on the proposed rule, is highly significant. See *Taylor v. Vt. Dept. of Educ.*, 313 F.3d at 780 n.8.

A law is impermissibly retroactive only where it establishes new standards of conduct. "In the administrative context, a rule is [impermissibly] retroactive if it "takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past.""" *National Mining Association v. Department of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002) (*quoting National Mining Association v. Department of Interior*, 177 F.3d 1, 8 (D.C. Cir. 1999) (*quoting Association of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 864 (D.C. Cir. 1992))). The 2005 amendment did nothing like this. Instead, it is consistent with prior Commission statements about Rule 16b-7. It is not inconsistent with decisions in this Court. And it is not even inconsistent with *Levy,* which, as noted, only adopted standards in what the court of appeals viewed was the absence of Commission clarification.

**C.  Rule 16b-7, Prior to the 2005 Amendment, Implicitly Exempted Reclassifications Under the Same Conditions Applicable to Mergers and Consolidations, the Same Standard Made Explicit in the Amendment, and Exempted the Reclassification Here.**

Even if the 2005 amendment is not properly applied here, the pre-2005 amendment already exempted reclassifications under the same conditions applicable to mergers and consolidations. The standards applied in *Levy* should be rejected for the reasons set forth in the Commission's *amicus* brief filed in *Levy*. *Levy Amicus Brief* at 9-15.

In its *amicus* brief, the Commission noted that the test applied by the panel in *Levy* nullified the Rule 16b-7 exemption for all but a few reclassifications, since almost all reclassifications have at least one, and usually both, of the characteristics that the court held to be disqualifying. *Id.* at 9. Indeed, if the original security and the security for which it is being exchanged were precisely the same, there typically would be little need for a reclassification at all. *Id.*

The Commission noted that the *Levy* test would never exempt preferred-for-common reclassifications, since the court viewed preferred stock and common stock as having substantially different risk characteristics because one enjoyed a fixed dividend and the other did not. *Id.* at 14. Excluding all such transactions could hardly have been the Commission's intent in explicitly adding reclassifications to the Rule. The Commission also noted that if this were a relevant distinction for

-21-

reclassifications, the same would be true for mergers and consolidations. A merger, after all, involves the exchange of securities of one company for those of another, and the exchange could readily involve a swap of preferred stock for common stock. *Id.* at 13. Yet nothing in the rule excludes such a merger from exemption under the rule. To interpret Rule 16b-7 to require the securities received by an insider to have the same risk characteristics as those exchanged is contrary to the language of the rule and introduces elements of subjectivity that would make it difficult to plan transactions in reliance on the exemption. *Id.* at 14-15.

The Commission also noted that it and the Commission staff have long interpreted Rule 16b-7 as exempting reclassifications where these transactions only act to change the form of an insider's investment, affect an entire class or series of securities, and do not present significant opportunities for the abuse of inside information. *Id.* at 11-12. *See Ownership Reports*, 70 Fed. Reg. at 46084.

Although before the 2005 amendment the rule's text did not contain a specific reference to reclassifications (even though the title did), the Commission noted in its *Levy amicus* brief that the standards for mergers and consolidations had been applied to reclassifications. *Id.* at 11-12. In general terms, the rule provided that the acquisition of a security pursuant to a merger or consolidation is not subject to Section 16(b) if the security being relinquished is in a company that, prior to the merger or consolidation, owned 85% of either the stock or assets of all of the other

-22-

companies party to the merger and consolidation. In relevant respects a reclassification is little different from a merger exempted by Rule 16b-7. In both cases, all stock in a class is exchanged on terms that have been approved by the board and/or shareholders. The exchange occurs on a class-wide basis. In the case of a merger subject to the rule, the combining companies were already 85% cross-owned, so that the combination effects no major change in the acquiring company's business. In a reclassification, the issuing company remains identical – there is no change in the business. Indeed, the similarities between the two can be readily seen by the fact that a reclassification could also be effected by the issuer creating a new shell company, capitalizing it, merging the old company into the new, and then exchanging stock in the old company for stock in the new. *Id.* at 12. *See also Ownership Reports*, 70 Fed. Reg. at 46084. Applying the same standards to reclassifications provides the same protection against improper insider trading.

This Court has repeatedly held that it is "'bound by the SEC's interpretations of its regulations * * * , unless they are 'plainly erroneous or inconsistent with the regulation[s].'" *DeMaria v. Andersen*, 318 F.3d 170, 175 (2d Cir. 2003) and *Levy v. Southbrook International Investments, Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001)(*both cases quoting Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 128 (2d Cir. 2000)) (referring to Commission interpretations found in *amicus* briefs). In *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), the Supreme Court first established the principle that

-23-

an agency's interpretation of one of its own regulations commands substantial judicial deference such that the agency's interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *See also Auer v. Robbins,* 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of a regulation presented in an *amicus* brief was entitled to controlling deference). As this Court explained:

> [W]e recognized that an agency's interpretation of its own regulations is entitled to considerable deference, irrespective of the formality of the procedures used in formulating the interpretation. *See Taylor v. Vt. Dept. of Educ.,* 313 F.3d 768, 779-80 (2d Cir. 2002) (*citing Auer v. Robbins,* [*supra,* at 461]); *LaFleur v. Whitman,* 300 F.3d 256, 277 (2d Cir. 2002)). We defer to an agency's interpretation of its own regulations because we 'presume that the power authoritatively to interpret [the agency's] own regulations is a component of the agency's delegated lawmaking powers.' *Martin v. Occupational Safety & Health Rev. Com'n.,* 499 U.S. 144, 151 [] (1991).

*Encarnacion ex rel. George v. Barnhart,* 331 F.3d 78, 86 (2d Cir. 2003).

The Commission has numerous times articulated the interpretation of Rule 16b-7 that is articulated above, including before the December 2002 acquisition involved here. *See supra,* at 9-10. In addition to arguments made in the *amicus* brief filed in *Levy* and in this *amicus* brief, the Commission construed former Rule 16b-7 as applying to reclassifications meeting the same standards as mergers and consolidations in its releases proposing and adopting the 2005 amendments, *see Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Exchange Act Release No. 49895, 69 Fed. Reg. 35982 (June 25, 2004); *Ownership Reports,* 70 Fed. Reg. 46080. Thus, even if the court will not apply the 2005 amendment to prior

-24-

conduct, it should give binding deference to the Commission's views in releases as to what the *pre*-amendment law was, as well as to this *amicus* brief and the Commission's other statements on the matter. 16/

## III.  THE COMMISSION'S EXEMPTION OF RECLASSIFICATIONS IN RULE 16b-7 WAS WITHIN ITS STATUTORY EXEMPTIVE AUTHORITY.

The plaintiff argues that the exemption of reclassifications in Rule 16b-7 is beyond the Commission's exemptive authority in Section 16(b) (Appellant's Br. at 52-56; Appellant's Reply at 16-22). Section 16(b) grants the Commission the authority to exempt from the provision "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

---

16/    In addition to the exemption granted under Rule 16b-7, defendant argues that its purchase was also exempt under the unorthodox transaction doctrine. In making this argument defendant contends that it only had access to forward-looking information, and that such information is never material. Although appropriate cautionary language may insulate an issuer from liability for forward looking statements, *see, e.g., P. Stolz Family Partnership L.P. v. Daum,* 355 F.3d 92, 96-97 (2d Cir. 2004); *Halperin v. eBanker USA.com, Inc.,* 295 F.3d 352, 357, 360 (2d Cir. 2002), there is no basis to conclude that forward-looking information cannot be material. *See, e. g., Semerenko v. Cendant Corp.,* 223 F.3d 165, 182 (3d Cir. 2000). *See also Private Securities Litigation Reform Act of 1995,* Pub. L. No. 104-67, 109 Stat. 737, *codified at,* Section 21E(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78u-5(b) (excluding some forward looking statements from the safe harbor provided by the Act for forward looking statements) and Section 21E(c), 15 U.S.C. 78u-5(c) (distinguishing between material and immaterial forward-looking statements for purposes of liability).

The plaintiff first argues that because reclassifications are a form of "purchase," and Section 16(b) applies to "any" purchase, reclassifications cannot be exempt. He contends that "[i]f Congress had intended to exempt *all* reclassifications they were quite capable of accomplishing that goal by inserting such an exemption into the statutory text of Section 16(b)" (Appellant's Br. at 54). Having not done so, he argues "the SEC is not free to do so on its own" (Appellant's Brief at 55).

This argument is almost too frivolous to merit a response. That the Congress did not exempt reclassifications in the statute itself is meaningless. As adopted, the statute provided virtually no exemptions in the statute itself. 17/  Instead it delegated to the Commission the authority to exempt transactions it believed were "not comprehended within the purpose" of the statute. If an exemption had to be in the statute to be valid, it would render the exemptive authority that Congress vested in the Commission meaningless.

Plaintiff likewise argues that "Section 16(b) specifically limits the SEC's exemptive authority to transactions outside the scope of the statute" (Appellant's Br. 56). This too makes no sense. If a transaction is outside the "scope" of Section 16(b), there would be no need to exempt it from the statute by rule. Nor is this the

_____

17/   As originally enacted, the only exemption specified in the statute was for a transaction where "such security was acquired in good faith in connection with a debt previously contracted." *Securities Exchange Act of 1934,* Pub. L. 73-291, 48 Stat. 881 (June 6, 1934).

-26-

language that Congress "specifically" used. The actual language Congress used was that the Commission must determine that the transaction is "not comprehended *within the purpose* of this subsection" (emphasis added). In applying Rule 16b-7 to reclassifications, the Commission carefully explained why this exemption is consistent with the purpose of Section 16(b). *See Ownership Reports*, 70 Fed. Reg. at 46083-85.

The Supreme Court has stated that Congress' concern when it enacted Section 16(b) was that corporate "[i]nsiders could exploit information not generally available to others to secure quick profits," *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 591-92 (1973), and that "'the only method Congress deemed effective to curb the evils of insider trading was a flat rule *taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great,*'" *id.* at 592 (*quoting Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422 (1972)) (emphasis added). *Accord, Gollust v. Mendell*, 501 U.S. 115, 121 (1991), *quoting Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 243 (1976). Thus, in enacting Section 16(b), Congress did not dictate that all risk of insider trading be eliminated, only that an "intolerably great" risk be eliminated.

The six-month rule was described by its drafters as a "crude rule of thumb." *Hearings on Stock Exchange Practices before the Senate Committee on Banking and Currency*, 73d Cong., 1st Sess. pt. 15, 6557 (1934) (testimony of Thomas Corcoran as spokesman

-27-

for the drafters of the Exchange Act). As the Commission explained in 1952 when it

first proposed Rule 16b-7, a six-month period was chosen because:

> Short swing speculation is deemed to involve incentives and
> opportunities to profit improperly to a degree not present in connection
> with the long term investment and changes in investment position. The
> arbitrary period of six months was selected as roughly marking the
> distinction between short swing speculation and long term investment.

*Notice of Proposal to Adopt a Rule Exempting from the Operation of Section 16(b) Certain*

*Acquisitions and Dispositions of Securities Pursuant to Mergers or Consolidations*, Exchange Act

Release No. 4696, 17 Fed. Reg. 3177 (April 10, 1952).

Because Section 16(b) can be harsh in imposing liability without fault,

"Congress itself limited carefully the liability imposed by §16(b)." *Foremost-McKesson,*

*Inc.*, 423 U.S. at 252 (*quoting Bershad v. McDonough*, 428 F.2d 696 (7ᵗʰ Cir. 1970)). *See*

*also Gollust v. Mendell*, 501 U.S. 115, 122 (1991); *Reliance Electric Co. v. Emerson Electric*

*Co.*, 404 U.S. at 422-23. "Even an insider may trade freely without incurring the

statutory liability if, for example, he spaces his transactions at intervals greater than

six months." *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. at 252.

Beyond that, the Supreme Court has cautioned that "[w]hen Congress has so

recognized the need to limit carefully the 'arbitrary and sweeping coverage' of §16(b)

* * * courts should not be quick to determine that  * * *  Congress intended the

section to cover a particular transaction." *Foremost-McKesson, Inc. v. Provident Securities*

*Co.*, 423 U.S. at 252. *See also Gollust v. Mendell*, 501 U.S. at 122; H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934).

In adopting Section 16(b), Congress made it clear that "[t]he expressed purpose of [Section 16(b)] is to prevent the unfair use of inside information. The Commission may exempt transactions not falling within this purpose." *See* S. Rep. 792, 73d Cong., 2d Sess. 21 (1934). More specifically, in light of the principles articulated above, it is consistent with that purpose to exempt transactions that, while involving purchases and sales within six months, have other characteristics that make the transactions unlikely vehicles for the misuse of inside information. Since Congress intended to remove the profit from transactions that posed an "intolerably great" opportunity for insider trading, it makes no sense to argue that the only permissible exemption would be limited to transactions that eliminate all possibility of insider trading. That this is the appropriate view of the purpose of the section was confirmed recently by this Court in its decision in *At Home*, where the Court adopted with approval the Commission's statement that the section was aimed at transactions where the risk of insider trading is "intolerably great," 2006 WL 1148512 at *5, and went on to note that "while there may be evils to be redressed arising out of [a] kind of corporate maneuvering, § 16(b) is simply not an antidote to all the ills that may plague the securities market." 2006 WL 1148512 at *6 (*quoting Heublein, Inc. v. Gen. Cinema Corp.*, 722 F.2d 29, 31 (2d Cir. 1983)). *See also Gryl v. Shire Pharmaceuticals Group*

-29-

*PLC*, 298 F.3d 136, 142 (2d Cir. 2002) (applying an exemption from Section 16(b), this Court noted that where securities are "granted to all eligible holders, without regard to status, as a means of fully effecting and overarching, value-adding corporate event (e.g., a merger)," there is a "diminished risk that the securities grants are not motivated by a legitimate corporate purpose * * *.")

In adopting the 2005 amendment to Rule 16b-7, the Commission stated that "Rule 16b-7 is based on the premise that the exempted transactions are of relatively minor importance to the shareholders of a particular company and *do not present significant opportunities to insiders to profit by advance information* concerning the transaction." *Ownership Reports*, 70 Fed. Reg. at 46085 (emphasis added). "Indeed," the Commission continued, "by satisfying either of the rule's 85% ownership tests, an exempted transaction does not significantly alter the economic investment held by the insider before the transaction." *Id.* Thus, the Commission focused on only exempting transactions where profit recovery would not serve the purpose of the statute. And it is certainly generally true that reclassifications resulting in the exchange of an entire class of stock such as, in this case, as part of the preparation for an initial public offering, take place for a legitimate corporate purpose.

Contrary to plaintiff's assertion, the Commission's position on the purpose of

the statute is entitled to controlling deference.  The analysis begins with *Chevron,*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  As the

Supreme Court has recently summarized:

> In *Chevron,* this Court held that ambiguities in statutes within an agency's
> jurisdiction to administer are delegations of authority to the agency to
> fill the statutory gap in reasonable fashion.  Filling these gaps, the Court
> explained, involves difficult policy choices that agencies are better
> equipped to make than courts. 467 U.S., at 865-866, 81 L. Ed. 2d 694,
> 104 S. Ct. 2778. If a statute is ambiguous, and if the implementing
> agency's construction is reasonable, *Chevron* requires a federal court to
> accept the agency's construction of the statute, even if the agency's
> reading differs from what the court believes is the best statutory
> interpretation. *Id.* at 843-844, and n. 11, 104 S. Ct. 2778.

*National Cable & Telecommunications Assoc., v. Brand X Internet Services,* __ U.S. __, 125

S.Ct. 2688, 2699 (2005).  While the plaintiff contends that the statute is plain on its

face, Congress left it open to the Commission to determine what transactions may be

exempted within the purposes of the statute.  So long as the Commission's analysis is

reasonable, it is entitled to conclusive deference. 18/

--------------------------------

18/  The plaintiff contends that since the Commission does not enforce Section
16(b), its views on the scope of the statute should not be entitled to any
deference.  But the quote above speaks of the "implementing" agency.
Congress has expressly delegated to the Commission the authority to exempt
transactions not within the statute's purpose.  This Court has recently called
the Commission "an agency uniquely experienced in confronting short-swing
profiteering." *See At Home Corp.,* 2006 WL 1148512 at *5.  While the plaintiff
purports to cite several cases where the Commission's position was rejected by
(continued...)

Finally, the plaintiff argues that the Commission is claiming to "nullify" the Third Circuit's decision in *Levy*. This, the plaintiff claims, raises separation of powers problems. There is, however, no separation of powers problem arising from the adoption or amendment of regulations. Even pure executive branch entities commonly act in a "legislative" fashion by issuing, amending, or clarifying regulations. Of course, Congress may always nullify any regulation by legislation, and a court may overturn it if it is beyond the drafter's power or improperly adopted. In taking these regulatory actions, the Commission is not seeking to exercise "control" over the judiciary. The Commission is not directing that *Levy* be overturned. This Court may not overturn a decision of the Third Circuit. Instead, the Commission is arguing that the *Levy* decision is wrong and should not be adopted by this Court. To the extent that the Commission's views on Section 16(b) and Rule 16b-7 are entitled to binding deference, it is because the Supreme Court and this Court adopted the standards of deference in *Chevron* and *Auer* and their progeny. The Commission is not seeking to exercise judicial power.

---

18/(...continued)
the Supreme Court, those cases did not involve exercise of the Commission's exemptive authority, and, to the extent they did reject a Commission position, turned on the Court's finding that the Commission's view was inconsistent with the plain language of the statute, and/or involved a matter not implemented by the Commission, such as statutes of limitations in private cases.

CONCLUSION

The judgment of the district court should be affirmed consistent with the

positions of the Commission expressed above.

Respectfully submitted,

BRIAN G. CARTWRIGHT
General Counsel

JACOB H. STILLMAN
Solicitor

ERIC SUMMERGRAD
Deputy Solicitor

ALLAN A. CAPUTE
Special Counsel to the Solicitor

Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549-8010
(202) 551-5122 (Capute)

May 2006

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

No. 05-5271-cv

MARC BRUH,

*Plaintiff - Counter-Defendant - Appellant,*

v.

BESSEMER VENTURE PARTNERS III L.P.,

*Defendant - Counterclaimant - Appellee,*

VISTACARE, INC.,

*Defendant.*

CERTIFICATE OF SERVICE

I, Allan A. Capute, am a member of the bars of Maryland and the District of Columbia, and I hereby certify that on 12th day of May, 2006, I caused to be served two copies of the BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION, *AMICUS CURIAE*, SUBMITTED AT THE REQUEST OF THE COURT AND IN SUPPORT OF AFFIRMING THE DECISION BELOW to counsel for the parties of record at the addresses below, by Federal Express.

Allan A. Capute

COUNSEL FOR THE APPELLANT
Jeffrey S. Abraham, Esq.
Mitchell M.Z. Twersky, Esq.
Ximena Skovron, Esq.
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, New York 10119

-2-

COUNSEL FOR THE APPELLEE
Frederick R. Kessler, Esq.
Vincent Chang, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

No. 05-5271-cv

MARC BRUH,

*Plaintiff - Counter-Defendant - Appellant,*

v.

BESSEMER VENTURE PARTNERS III L.P.,

*Defendant - Counterclaimant - Plaintiff - Appellee,*

VISTACARE, INC.,

*Defendant.*

CERTIFICATE OF CONCERNING COMPLIANCE
WITH FED. R. APP. P. 32(a)(7)(C)

I hereby certify that, pursuant to Federal Rules of Appellate Procedure 29(d) and 32(a)(7)(C), the attached BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION, *AMICUS CURIAE*, SUBMITTED AT THE REQUEST OF THE COURT AND IN SUPPORT OF AFFIRMING THE DECISION BELOW is proportionally spaced, has a typeface of 14 points, and contains 8088 words. Because the brief exceeds the word limit of the Rule 32(a)(7)(C), the Commission has filed with its brief the MOTION OF THE SECURITIES AND EXCHANGE COMMISSION TO EXCEED THE WORD LIMIT.

Allan A. Capute
Securities and Exchange Commission
100 F. Street, N.E.
Washington, D.C. 20549-0606
(202) 551-5122

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
———————————————

No. 05-5271-cv
———————————————

MARC BRUH,

*Plaintiff - Counter-Defendant - Appellant,*

v.

BESSEMER VENTURE PARTNERS III L.P.,

*Defendant - Counterclaimant - Plaintiff - Appellee,*

VISTACARE, INC.,

*Defendant.*
———————————————————————————————

CERTIFICATE OF COMPLIANCE WITH  LOCAL RULE 32(a)(1):
BRIEFS IN DIGITAL FORMAT
———————————————————————————————

I certify that THE BRIEF OF THE SECURITIES AND EXCHANGE
COMMISSION, AMICUS CURIAE, SUBMITTED AT THE REQUEST OF THE
COURT AND IN SUPPORT OF AFFIRMING THE DECISION BELOW, as
submitted in digital format, has been scanned for viruses and that no viruses have been detected as
required by Local Rule 32(a)(1).


                                      ———————————————————
                                      Allan A. Capute
                                      Special Counsel to the Solicitor
                                      Securities and Exchange Commission
                                      100 F. Street, N.E.
                                      Washington, D.C. 20549-8010
                                      (202) 551-5122