# EXHIBIT A

Westlaw.

--- F.3d ----                                                                                                        Page 1

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
**(Cite as: --- F.3d ----)**

**H**
Briefs and Other Related Documents

United States Court of Appeals,Ninth Circuit.
Thomas R. DREILING, on behalf of InfoSpace Inc., Plaintiff-Appellant,
v.
AMERICAN EXPRESS COMPANY, a New York corporation, including its divisions and subsidiaries, Defendant,
andInfoSpace, Inc., a Delaware Corporation; American Express Travel Related Services Company Inc., Defendants-Appellees.
No. 04-35715.

Argued and Submitted May 3, 2006.
Filed Aug. 14, 2006.

**Background:** Shareholder sued another shareholder under Securities Exchange Act, seeking to recover on behalf of corporation short swing profits received by sued shareholder from purchase and sale of corporation's stock. The United States District Court for the Western District of Washington, 351 F.Supp.2d 1077,Thomas S. Zilly, J., granted sued shareholder's motion to dismiss. Suing shareholder appealed.

**Holdings:** The Court of Appeals, McKeown, Circuit Judge, held that:

9(1) rule establishing board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders was validly promulgated;

16(2) remand was required to determine whether sued shareholder was a director by deputization, and, if so, whether corporation, in approving the general merger transaction, intended to approve a specific insider-issuer transaction with respect to sued shareholder, within rule establishing board approval exemption from liability for short-swing profit-taking by issuer insiders.

Reversed and remanded.

**[1] Securities Regulation 349B ⊕⇒53.13**

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)6 Insider Reporting and Short-Term Trading
        349Bk53.12 Insider Trading
          349Bk53.13 k. In General. Most Cited Cases
Congress enacted statute relating to recovery of short-swing profits by insider as part of the Securities Exchange Act to prevent corporate insiders from exploiting their access to information not generally available to others. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[2] Securities Regulation 349B ⊕⇒53.13**

349B Securities Regulation
  349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)6 Insider Reporting and Short-Term Trading
        349Bk53.12 Insider Trading
          349Bk53.13 k. In General. Most Cited Cases
In passing the statute relating to recovery of short-swing profits by insider, Congress recognized that short-swing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to insure the maintenance of fair and honest markets. Securities Exchange Act of 1934, §§ 2, 16(b), 15 U.S.C.A. §§ 78b, 78p(b).

**[3] Securities Regulation 349B ⊕⇒53.13**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                    Page 2
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
**(Cite as: --- F.3d ----)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)6 Insider Reporting and Short-Term Trading
           349Bk53.12 Insider Trading
              349Bk53.13 k. In General. Most Cited Cases
Statute relating to recovery of short-swing profits by insider flatly prohibits a class of transactions in which the possibility of abuse was believed to be intolerably great, and does so by imposing a strict prophylactic rule with respect to insider, short-swing trading. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[4] Securities Regulation 349B €═►53.16(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)6 Insider Reporting and Short-Term Trading
           349Bk53.12 Insider Trading
              349Bk53.16 Transactions Subject to Regulation
                  349Bk53.16(2) k. Purchase and Sale, Existence and Time Of. Most Cited Cases

**Securities Regulation 349B €═►53.16(5)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)6 Insider Reporting and Short-Term Trading
           349Bk53.12 Insider Trading
              349Bk53.16 Transactions Subject to Regulation
                  349Bk53.16(5) k. Intent; Use of or Access to Inside Information. Most Cited Cases
Statute relating to recovery of short-swing profits by insider is over-inclusive in that it imposes strict liability regardless of motive, including trades not actually based on inside information, and it is under-inclusive in that there is no liability for trades made on inside information if more than six months transpire between purchase and sale. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[5] Securities Regulation 349B €═►3**

349B Securities Regulation
   349BI Federal Regulation
      349BI(A) In General
         349Bk3 k. Administrative Rules and Regulations. Most Cited Cases
In analyzing exemption from Securities Exchange Act's ban against short-swing profit-taking by issuer insiders based on board of directors' approval of transaction, the Court of Appeals gives the Securities and Exchange Commission's (SEC) view controlling weight, unless the regulation is arbitrary, capricious, or manifestly contrary to the statute, because Congress has explicitly left a gap for the agency to fill. 17 C.F.R. § 240.16b-3.

**[6] Securities Regulation 349B €═►53.17(1)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)6 Insider Reporting and Short-Term Trading
           349Bk53.12 Insider Trading
              349Bk53.17 Exempt Transactions
                  349Bk53.17(1) k. In General. Most Cited Cases
The text of statute relating to recovery of short-swing profits by insider does not explicitly exempt board-approved insider-issuer transactions, as written in Securities and Exchange Commission (SEC) rule, but neither does it explicitly bar the SEC from enacting such an exemption; Congress has not directly spoken to the precise question at issue, so statute's silence on board-approved insider-issuer transactions is not the end of the matter. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

**[7] Statutes 361 €═►219(2)**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k213 Extrinsic Aids to Construction
           361k219 Executive Construction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                           Page 3
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
**(Cite as: --- F.3d ----)**

           361k219(2) k. Existence of Ambiguity. Most Cited Cases

**Statutes 361 ☞219(4)**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k219 Executive Construction
                    361k219(4) k. Erroneous Construction; Conflict with Statute. Most Cited Cases
Reviewing an administrative agency's construction of a statute, the Court of Appeals considers first the question of whether Congress had directly spoken to the precise question at issue; if so, the court must give effect to the unambiguously expressed intent of Congress but, if not, the second consideration is whether the agency's construction of the statute is permissible.

**[8] Administrative Law and Procedure 15A☞416.1**

15A Administrative Law and Procedure
    15AIV Powers and Proceedings of Administrative Agencies, Officers and Agents
        15AIV(C) Rules and Regulations
            15Ak416 Effect
                15Ak416.1 k. In General. Most Cited Cases
If Congress has expressly delegated authority to an administrative agency to elucidate a specific provision of the statute by regulation, the court must give the regulations controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

**[9] Securities Regulation 349B ☞3**

349B Securities Regulation
    349BI Federal Regulation
        349BI(A) In General
            349Bk3 k. Administrative Rules and Regulations. Most Cited Cases
Rule establishing board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders was validly promulgated; Congress delegated to the Securities and Exchange Commission (SEC) the express authority to elucidate statute relating to recovery of short-swing profits by insider by regulation, SEC publicly and carefully considered whether board-approved insider-issuer transactions posed significant risk of abusive insider trading with less informed investors before finalizing exemption, and SEC promulgated rule based on a full notice-and-comment process. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

**[10] Securities Regulation 349B ☞53.17(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)6 Insider Reporting and Short-Term Trading
                349Bk53.12 Insider Trading
                    349Bk53.17 Exempt Transactions
                        349Bk53.17(1) k. In General. Most Cited Cases
The Securities and Exchange Commission (SEC) need not show that the transactions exempted from Securities Exchange Act's ban against short-swing profit-taking by issuer insiders pose absolutely no risk of speculative abuse. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[11] Securities Regulation 349B ☞3**

349B Securities Regulation
    349BI Federal Regulation
        349BI(A) In General
            349Bk3 k. Administrative Rules and Regulations. Most Cited Cases
The Supreme Court's interpretations of statute relating to recovery of short-swing profits by insider are relevant to determining if a Securities and Exchange Commission (SEC) rule is consistent with statutory purpose because the judiciary is the final authority on issues of statutory construction.

**[12] Securities Regulation 349B ☞53.22**

349B Securities Regulation
    349BI Federal Regulation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 4
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
**(Cite as: --- F.3d ----)**

    349BI(C) Trading and Markets
        349BI(C)6 Insider Reporting and Short-Term Trading
            349Bk53.22 k. Questions of Law or Fact; Jury Questions. Most Cited Cases
Whether a company is a director by deputization, for purposes of imposing liability under short-swing insider profits statute, is a question of fact to be settled case by case and not a conclusion of law. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[13] Securities Regulation 349B ⚖═53.15**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)6 Insider Reporting and Short-Term Trading
                349Bk53.12 Insider Trading
                    349Bk53.15 k. Insiders Subject to Regulation. Most Cited Cases
For purposes of imposing liability under short-swing insider profits statute, a company may be a director by deputization without intending to be and without acknowledging that a deputy represents its interests on the issuer's board. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b).

**[14] Securities Regulation 349B ⚖═53.17(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)6 Insider Reporting and Short-Term Trading
                349Bk53.12 Insider Trading
                    349Bk53.17 Exempt Transactions
                        349Bk53.17(1) k. In General. Most Cited Cases
Directors by deputization are entitled to seek the protection of rule establishing board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders to the same extent, and on the same terms, as an individual director or officer. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

**[15] Securities Regulation 349B ⚖═3**

349B Securities Regulation
    349BI Federal Regulation
        349BI(A) In General
            349Bk3 k. Administrative Rules and Regulations. Most Cited Cases
Securities and Exchange Commission's (SEC) interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation, even if the SEC's interpretation is presented in the form of an amicus brief.

**[16] Federal Courts 170B ⚖═947**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk943 Ordering New Trial or Other Proceeding
                170Bk947 k. Further Evidence, Findings or Conclusions. Most Cited Cases
Remand was required to determine whether shareholder was a director by deputization, and, if so, whether corporation, in approving the general merger transaction, intended to approve a specific insider-issuer transaction with respect to shareholder, within rule establishing board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders, in action brought on behalf of corporation to recover short swing profits received by shareholder from purchase and sale of corporation's stock. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

**[17] Securities Regulation 349B ⚖═53.17(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)6 Insider Reporting and Short-Term Trading
                349Bk53.12 Insider Trading
                    349Bk53.17 Exempt Transactions
                        349Bk53.17(1) k. In General. Most Cited Cases
It is imperative, for the purposes of rule establishing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706  
(Cite as: --- F.3d ----)

Page 5

board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders, that the members of any corporate board know when another person serving on the same board is deputized by another person or entity to carry out its interests. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

[18] Securities Regulation 349B ⇐53.17(1)

349B Securities Regulation  
    349BI Federal Regulation  
        349BI(C) Trading and Markets  
            349BI(C)6 Insider Reporting and Short-Term Trading  
                349Bk53.12 Insider Trading  
                    349Bk53.17 Exempt Transactions  
                      349Bk53.17(1) k. In General.  
Most Cited Cases  
A board cannot approve of a specific insider-issuer transaction, for purposes of rule establishing board approval exemption from liability under Securities Exchange Act's ban against short-swing profit-taking by issuer insiders, without knowing that an insider was involved in the transaction. Securities Exchange Act of 1934, § 16(b), 15 U.S.C.A. § 78p(b); 17 C.F.R. § 240.16b-3(d).

Jonathan P. Meier and Richard E. Spoonemore, Sirianni Youtz Meier & Spoonemore, Seattle, WA, for the plaintiff-appellant.  
Jason C. Vigna and Robert E. Zimet, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY, for the defendant-appellee.  
Allan A. Capute, Securities and Exchange Commission, Washington, D.C., for amicus curiae.

Appeal from the United States District Court for the Western District of Washington; Thomas S. Zilly, District Judge, Presiding. D.C. No. CV-03-03740-TSZ.

Before STEPHEN REINHARDT, M. MARGARET McKEOWN, and RICHARD R. CLIFTON, Circuit Judges.  
McKEOWN, Circuit Judge.  
*1 Section 16(b) of the Exchange Act bars corporate insiders, such as directors, from profiting on short-swing trades, defined as the purchase and sale of stock within a six-month period. 15 U.S.C. § 78p(b). Rule 16b-3(d), promulgated by the Securities and Exchange Commission ("SEC"), exempts an insider from § 16(b) liability when the transaction takes place with the issuer and is specifically approved by the issuer's board of directors or majority of shareholders. 17 C.F.R. § 240.16b-3(d).

Thomas Dreiling, a shareholder in InfoSpace, Inc., alleges that American Express Travel Related Services ("TRS") violated Section 16(b) by engaging in a short-swing trade in InfoSpace stock. Dreiling claims TRS was an insider, specifically a " director by deputization," because a TRS executive officer sat on the InfoSpace board during the trade. The district court dismissed Dreiling's complaint, concluding that Rule 16b-3(d) exempted TRS from liability because the InfoSpace board approved the stock grant to insider TRS.

On appeal, Dreiling argues that the SEC lacked the authority to promulgate Rule 16b-3(d) or, in the alternative, that Rule 16b-3(d) can not apply to TRS because the InfoSpace board did not know that TRS was a "director by deputization." The SEC filed an amicus curiae brief, siding with TRS as to the validity of Rule 16b-3(d) but agreeing with Dreiling that TRS would not be entitled to the protection of the rule if it were an undisclosed director by deputization.

We agree with the district court that the SEC had authority to adopt Rule 16b-3(d), and that we owe deference to the SEC's interpretation of the rule to cover directors by deputization. These are legal questions appropriately reached on appeal. Whether the TRS executive was a director by deputization and whether the InfoSpace board was knowledgeable as to that relationship are questions of fact that defeat dismissal under Federal Rule of Civil Procedure 12(b)(6). We thus reverse and remand for further proceedings.

**Background**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 6
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

### I. TRS And The Prio-Infospace Merger

In the late 1990s, TRS, a subsidiary of the American Express Company, made strategic equity investments in various e-commerce companies. During this period, TRS became a significant minority investor in Prio, Inc. In December 1999, Prio entered a merger agreement with InfoSpace in which InfoSpace agreed to issue 5.37 million shares of stock, worth about $400 million, to buy Prio from its former shareholders. InfoSpace provides infrastructure services for wireless, wireline and broadband platforms.

David House joined the InfoSpace board of directors in January 2000, which was after the merger agreement was executed but before the merger closed. When appointed to the InfoSpace board, House was a TRS executive officer who had served as a Prio director just before the merger was announced. House served as an InfoSpace director for 16 months, through May 2001. Before joining the board, House himself owned no shares of InfoSpace.

*2 The merger closed February 25, 2000, and Prio was integrated into InfoSpace. As of the merger, TRS owned about 12% of Prio, but after the merger, TRS owned less than 10% of InfoSpace's shares. According to Dreiling, just after the merger agreement, InfoSpace's share price increased by 350%, only to lose almost 80% in value during the six months after the merger was completed.

### II. Dreiling's § 16(B) Action

Dreiling's First Amended Complaint alleged that "[w]ithin periods of less than six months, [TRS] engaged in purchases and corresponding sales and or sales and a corresponding purchase of Infospace stock" and that TRS should disgorge any gains. After the merger announcement but before closing, Dreiling bought 100 shares of InfoSpace, which he has held ever since. In September 2003, Dreiling submitted a demand letter to InfoSpace, asking it to bring a § 16(b) action against TRS. InfoSpace advised that it would not pursue an action against TRS because TRS was not a director on the InfoSpace board: "Although Mr. House was an executive officer of AmEx during that time period, the facts show that he did not in any way represent AmEx on the Board of Directors of the Company. Accordingly, AmEx was not a director by deputization and was not subject to Section 16 of the Exchange Act."

After this rejection,[FN1] Dreiling filed a complaint in November 2003, alleging that TRS was a director on the InfoSpace board, and thus an insider pursuant to § 16(b), and that TRS had profited from a short-swing trade in InfoSpace stock in violation of § 16(b). Although TRS itself was not on the InfoSpace board, Dreiling claimed that it had deputized David House to represent TRS interests on the board. Dreiling also alleged that TRS acquired InfoSpace stock on February 25, 2000, and sold much of it sometime before August 24, 2000. As a remedy, Dreiling sought disgorgement of short-swing profits TRS received from trading InfoSpace stock.

TRS moved to dismiss under Rule 12(b)(6). The district court dismissed the complaint on the basis that Rule 16b-3(d)(1) exempted TRS from § 16(b) liability, as TRS had acquired InfoSpace shares directly from the issuer with the approval of the InfoSpace board. The district court declined to hold, as Dreiling urged, that Rule 16b-3(d) applied only to compensatory grants of stock to officers or directors, and rejected the argument that Rule 16b-3(d) was an invalid rule-making.

### Analysis

Dreiling argues that the SEC had no authority to promulgate Rule 16b-3(d) because it was contrary to § 16(b).[FN2] Alternately, he urges that Rule 16b-3(d) does not apply to TRS because the InfoSpace board failed to explicitly approve the stock grant to TRS as an insider-specifically through director David House, who had access to inside information and who, as a director by deputization, effectively represented TRS's interests on the InfoSpace board.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---- Page 7

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

## I. Statutory And Regulatory Framework Of Insider Trading Under § 16(b) And Rule 16b-3(d)

### A. Overview Of § 16(b)

*3 [1] Congress enacted § 16(b) as part of the Securities Exchange Act of 1934 to prevent corporate insiders from exploiting their access to " information not generally available to others." *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 592, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973). Section 16(b) reads in relevant part:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale ... of any equity security of such issuer ... within any period of less than six months ... shall ... be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security .... *This subsection shall not be construed to cover ... any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.*

15 U.S.C. § 78p(b) (emphasis added).

[2][3] In passing the statute, "Congress recognized that short-swing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to 'insure the maintenance of fair and honest markets.' " *Kern County,* 411 U.S. at 591, 93 S.Ct. 1736 (quoting 15 U.S.C. § 78b). Section 16(b) flatly prohibits a " class of transactions in which the possibility of abuse was believed to be intolerably great," *id.* at 592, 93 S.Ct. 1736, and does so by "impos[ing] a strict prophylactic rule with respect to insider, short-swing trading." *Foremost-McKesson, Inc. v. Provident Sec. Co.,* 423 U.S. 232, 251, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976). The statute identifies three classes of insiders-directors, officers and beneficial owners-and makes them liable, without fault or intended wrongdoing, for trading in their company's shares. 15 U.S.C. § 78p(b).

[4] Section 16(b) does not, however, reach all insider trading. *Foremost-McKesson,* 423 U.S. at 253, 96 S.Ct. 508 ("Congress itself limited carefully the liability imposed by § 16(b)."). The statute imposes strict liability on insiders only for " shortswing" trades-specifically, a coupled purchase-and-sale, or sale-and purchase, completed within six months. 15 U.S.C. § 78p(b).[FN3] Courts have recognized that § 16(b) is a blunt instrument, at once both over- and under-inclusive. *See Citadel Holding Corp. v. Roven,* 26 F.3d 960, 965 (9th Cir.1994) ("[Section] 16(b) is a relatively arbitrary, 'flat rule' ....") (quoting *Reliance Elec. Co. v. Emerson Elec. Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972)). The statute is over-inclusive in that it imposes strict liability regardless of motive, including trades not actually based on inside information. *Kern,* 411 U.S. at 595, 93 S.Ct. 1736 (noting that § 16(b) requires disgorgement of profits "without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information"). It is under-inclusive in that there is no liability for trades made on inside information if more than six months transpire between purchase and sale. *Foremost-McKesson,* 423 U.S. at 252, 96 S.Ct. 508 ("Even an insider may trade freely without incurring statutory liability if, for example, he spaces his transactions at intervals greater than six months.").

*4 In response to the statute's over-inclusiveness, Congress exempted two classes of transactions from the "flat rule" of liability. *See* 15 U.S.C. § 78p(b) (exempting from liability securities "acquired in good faith in connection with a debt previously contracted" and transactions in which a "beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase"). Aside from these specific transaction exemptions, Congress provided an open-ended delegation to the SEC, authorizing it to exempt other transactions "not comprehended within the purpose of [§ 16(b) ]." *Id.* § 78p(b).

### B. Overview Of Rule 16b-3(d)-Insider-Issuer Transactions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                              Page 8
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

Before 1996, Rule 16b-3 and its pre-cursor Rule X-16B-3 exempted only insider-issuer transactions, approved by the board of directors, that were related to officer or director compensation. The 1996 revision of Rule 16b-3 exempted *all* grants or awards of stock or options by an issuer to an insider, compensatory or not, if the transaction was approved by the board or majority of shareholders. 17 C.F.R. § 240.16b-3(d). In relevant part, the rule reads:
(d) Acquisitions from the issuer. Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
(1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors; ...

17 C.F.R. § 240.16b-3.

The SEC adopted the 1996 version of Rule 16b-3(d) as part of a number of amendments to Rule 16b-3 to present a "simplified, flexible approach" to insider transactions. Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed.Reg. 30,376, 30,377 (June 14, 1996). The SEC exempted non-compensatory issuer-insider trades because they "do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors," *id.*, and "where the issuer, rather than trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute." *Id.* The SEC based these observations "on its experience with the Section 16 rules," and concluded that short-swing transactions between an insider and an issuer that "satisfy ... objective gate-keeping conditions[ ] are not vehicles for the speculative abuse that section 16(b) was designed to prevent." *Id.* Thus, the SEC enacted Rule 16b-3(d) because board or shareholder-approved insider-issuer transactions were "not contemplated within the purpose" of § 16(b).

The SEC's decision to revise Rule 16b-3(d) in 1996 was founded not just on its years of experience making rules under § 16 rules, 61 Fed.Reg. at 30,377, but also, according to the SEC's amicus brief, "careful study, notice and public comment." The SEC received 38 letters in its solicitation for comments on early versions of Rule 16b-3(d), mostly positive. *Id.* at 30,377 & 30,380. Rule 16b-3(d) also reconciles competing policies.[FN4]

*5 Finally, Rule 16b-3(d) implements certain of the "objective gate-keeping conditions," such as approval by the issuer's board of directors or ratification by a majority of shareholders. 17 C.F.R. § 240.16b-3(d)(1) & (2). In identifying these "gate-keeping" conditions, the SEC noted that "[a]lthough the new rule would not prohibit Non-Employee Directors or the full board from awarding themselves grants of issuer equity securities, such grants would be subject to state laws governing corporate self-dealing." 61 Fed.Reg. at 30,381.

## II. Validity Of Rule 16b-3

[5][6][7][8] Because the statute explicitly delegates to the SEC the authority to promulgate other transaction exemptions, the question is not whether Rule 16b-3(d) can be found explicitly in the text of § 16(b).[FN5] Rather, the more nuanced question is whether Rule 16b-3(d) exempts transactions "not comprehended within the purpose" of § 16(b). This posture, in turn, requires us to discern the limits of the open-ended expression of congressional intent that is § 16(b). In analyzing Rule 16b-3(d), we give the SEC's view "controlling weight"-unless the regulation is "arbitrary, capricious, or manifestly contrary to the statute"-because "Congress has explicitly left a gap for the agency to fill." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) [FN6]

[9] The SEC has publicly and carefully considered the issue of speculative abuse before finalizing Rule 16b-3(d). Consequently, we give significant weight

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                         Page 9

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

to the SEC's determination that board-approved insider-issuer transactions were "not vehicles for the speculative abuse that section 16(b) was designed to prevent," 61 Fed.Reg. at 30,377, and hold that Rule 16b-3(d) was validly promulgated. *Chevron,* 467 U.S. at 865, 104 S.Ct. 2778 (noting that agency interpretation of statute entitled to deference when " the regulatory scheme is technical and complex," the agency "considered the matter in a detailed and reasoned fashion," and "the decision involves reconciling conflicting policies.").

Dreiling challenges the SEC's authority and argues that Rule 16b-3(d) is contrary to the purposes of § 16(b)-to prevent speculative abuse and harm uninformed market participants-for the following reasons: (1) the SEC may only exempt transactions for which there is no risk of speculative abuse; (2) empirical evidence indicates that Rule 16b-3(d) immunizes transactions likely to result in speculative abuse; (3) certain hypotheticals suggest that Rule 16b-3(d) exempts speculative abuse; and (4) the SEC enacted Rule 16b-3(d) for reasons unrelated to speculative abuse.

Dreiling attempts to place the burden with the SEC to show that any transaction exemptions under § 16(b) give rise to "absolutely no possibility of speculative abuse," citing *Kern* as support. *See* 411 U.S. at 600, 93 S.Ct. 1736. In other words, according to Dreiling, the SEC may not exempt certain transactions otherwise subject to § 16(b) merely because these transactions give rise to a " diminished risk" of speculative abuse. Imposing such a burden on the SEC is inconsistent with both the statute and *Chevron* deference.

*6 [10][11] Dreiling's position demands an airtight solution with "no possibility" of abuse. Neither § 16(b) nor its judicial gloss [FN7] suggests, as Dreiling does, that the SEC may *only* exempt transactions for which there is zero risk of speculative abuse. Rather, the Supreme Court has indicated that the SEC is free to exempt transactions for which the "*possibility* of abuse" is not "believed to be intolerably great." *Reliance Elec.,* 404 U.S. at 422, 92 S.Ct. 596 (emphasis added). The SEC need not show that the transactions exempted from § 16(b) pose absolutely no risk of speculative abuse.

*Foremost-McKesson,* 423 U.S. at 244, 96 S.Ct. 508 (finding "unsatisfactory" the argument that the court must reject any reading of a statutory exemption to § 16(b) that misses "some possible abuses of inside information"); *id.* at 252, 96 S.Ct. 508 ("[S]erving the congressional purpose does not require resolving every ambiguity in favor of liability under § 16(b)."). The relevant question is whether Rule 16b-3(d) exempts transactions for which the risk of speculative abuse is *intolerable* or, more broadly, in the words of the statute, whether the transaction is " not comprehended within the purpose of [§ 16(b) ]." 15 U.S.C. § 78p(b).

As a second prong of attack, Dreiling purports to identify empirical evidence showing that the risk of speculative abuse for board-approved, insider-issuer transactions is intolerable. As we explained, the SEC came to exactly the opposite conclusion in adopting Rule 16b-3(d). After notice and comment, the SEC determined that board-approved transactions between an issuer and an insider were unlikely to result in speculative abuse, and that the risk of such abuse was therefore tolerable. As amicus curiae, the SEC adds that in considering Rule 16b-3(d), it found that insider-issuer transactions did not pose an intolerably great risk of abuse because "[b]oard or shareholder approval will remove the timing of the acquisition from the control of any one insider and also tend to assure that the acquisition is for a legitimate corporate purpose." *See also Gryl v. Shire Pharm. Group PLC,* 298 F.3d 136, 145-46 (2d Cir.2002).

Yet Dreiling claims to refute this conclusion by identifying empirical evidence that Rule 16b-3(d) immunizes transactions for which the risk of abuse is intolerable. As evidence, he cites a single article that shares his general concern with certain insider-issuer transactions [FN8] but explicitly says that § 16(b) and Rule 16b-3(d) are "of limited relevance to the award of executive stock options." [FN9] Thus, Dreiling offers nothing substantive to challenge the SEC's analysis and conclusion that board-approved, insider-issuer trades do not give rise to an intolerable level of speculative abuse. *See* 61 Fed.Reg. at 30,377 ("Based on its experience with the Section 16 rules, the Commission is persuaded that transactions between the issuer and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                         Page 10

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

its officers and directors ... that satisfy other objective gate-keeping conditions[ ] are not vehicles for the speculative abuse that section 16(b) was designed to prevent."); *id.* ("Generally, these transactions do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors.").

*7 Dreiling also argues that certain hypotheticals show that Rule 16b-3(d) shields abusive transactions. He posits a set of imagined, though plausible, facts leading to TRS's use of inside information in selling InfoSpace shares, such as a quick sale to the public market once TRS learns that InfoSpace's stock is inflated. Dreiling also identifies a hypothetical described in *Levy v. Sterling Holding Co.,* 314 F.3d 106, 124 (3d Cir.2002), in which insiders of a closely-held corporation grant themselves options on the cheap and sell quickly after an initial public offering. Once again, this argument presumes the only legitimate transaction is a zero-risk transaction.

Without citing any authority, Dreiling argues that a transaction for which there is the mere possibility of abuse may not be exempted by a SEC-promulgated rule. But such hypothetical concerns cannot outweigh the SEC's 60-year experience with rules interpreting § 16(b), 61 Fed.Reg. at 30,377, and promulgation of Rule 16b-3(d) based on a full notice-and comment process, resulting in a " detailed and reasoned" consideration of the rule.[FN10] *See Chevron,* 467 U.S. at 865, 104 S.Ct. 2778. We may not invalidate the rule simply because Dreiling questions the policy underpinnings of Rule 16b-3(d). *Id.* at 866, 104 S.Ct. 2778 (" When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.").

Finally, Dreiling seeks to invalidate Rule 16b-d(3) because the SEC justified the rule based on policy concerns unrelated to speculative abuse. Dreiling presents two variants of this argument. He first contends that regulatory simplicity-one reason the SEC revised Rule 16b-d(3) in 1996-by itself cannot justify exempting all board-approved, insider-issuer transactions from § 16(b) liability. In his view, the SEC in effect "took the position that abusive short-swing trading must be tolerated in the name of easing compliance."

But the SEC did not rely solely on administrative simplicity in amending the rule. As we have explained, the SEC determined that the transactions covered by Rule 16b-3(d) were "not vehicles for the speculative abuse that section 16(b) was designed to prevent." 61 Fed.Reg. at 30,377. Thus the SEC was surely entitled to consider administrative simplicity or flexibility as an additional basis for revising Rule 16b-3(d).

Dreiling also argues that, in amending Rule 16b-3(d), the SEC wrongly assumed that speculative abuse caused by the exempted transactions could be remedied by state laws. It is true that the mere existence of other legal remedies for insider trading is irrelevant to determining whether a particular class of transactions should be exempt from § 16(b) liability. *See Foremost-McKesson,* 423 U.S. at 255, 96 S.Ct. 508 ("Section 16(b)'s scope, of course, is not affected by whether alternative sanctions might inhibit the abuse of inside information."). Had the SEC justified Rule 16b-3(d) solely on the basis that state laws could fill the enforcement lacuna left by the rule, it would be invalid.

*8 But, again, this argument does not stand on its own. The SEC did not justify Rule 16b-3(d) *solely* on the grounds that state laws could replace § 16(b) as the remedy for short-swing insider trading. Rather, the transactions covered by Rule 16b-3(d) were ones the SEC determined did not give rise to an intolerable risk of speculative abuse. The SEC also noted that state laws on fiduciary duty and self-dealing might help remedy any residual speculative abuse that did occur. *See* 61 Fed.Reg. at 30,381. The SEC should not be penalized for explaining multiple reasons why the rule makes sense.

Congress delegated to the SEC the express authority "to elucidate a specific provision of [§ 16(b) ] by regulation." *Chevron,* 467 U.S. at 844, 104 S.Ct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                  Page 11

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

2778. Considering the careful review afforded by the SEC, including its analysis of the comments and decades of experiences in the securities arena, we hold that Rule 16b-3(d) is not arbitrary, capricious, or contrary to § 16(b), and is a valid exercise of SEC authority under § 16(b).

### III. Rule 16B-3(D) And Directors By Deputization

Although Rule 16b-3(d) does not, on its face, include "directors by deputization," the SEC interprets the rule to include such directors. Dreiling challenges this interpretation as the SEC overstepping its authority. Alternatively, Dreiling, supported by the SEC as amicus, argues that Rule 16b-3(d) does not apply to a director by deputization if the board did not know of the deputization when it approved the transaction.

[12] Before analyzing the merits of these claims, we pause to define the term "director by deputization." The Supreme Court has recognized that a corporation may be a virtual director, and thus an insider for purposes of § 16(b) liability, by deputizing a natural person to perform its duties on the board. *Blau v. Lehman,* 368 U.S. 403, 410, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962) ("Lehman Brothers would be a 'director' of Tide Water, if as petitioner's complaint charged Lehman actually functioned as a director through Thomas, who had been deputized by Lehman to perform a director's duties not for himself but for Lehman."). Whether a company is a director by deputization is "a question of fact to be settled case by case and not a conclusion of law." *Feder v. Martin Marietta Corp.,* 406 F.2d 260, 263 (2d Cir.1969); *accord Blau,* 368 U.S. at 408-09, 82 S.Ct. 451.

[13] A company may be a director by deputization without intending to be and without acknowledging that a deputy represents its interests on the issuer's board. *See Feder,* 406 F.2d at 265 ("[A] person ... could act as a deputy ... even in the absence of factors indicating an intention or belief on the part of both companies that he was so acting."). In light of these cases, the SEC has recognized the doctrine of directors by deputization but has left it to courts to decide how to apply § 16(b), and rules promulgated under it, to such directors. *See Ownership Reports and Trading By Officers, Directors and Principal Securities Holders,* SEC Release No. 34-26333, 53 Fed.Reg. 49,997 (proposed Dec. 2, 1988) (recognizing doctrine of directors by deputization but noting that the SEC " does not propose to codify case law relating to deputization.").

### A. General Application Of Rule 16B-3(D) To Directors By Deputization

*9 Since directors by deputization are subject to § 16(b) liability, it should follow, without controversy, that they may also seek the protection of Rule 16b-3(d). Dreiling nevertheless insists that directors by deputization are categorically barred from invoking Rule 16b-3(d). He reaches this conclusion by asserting that the sole purpose of Rule 16b-3(d) is to immunize issuer-insider transactions that compensate individual directors or officers for their work. Because most directors by deputization are corporate entities, according to this logic, any stock grants they receive would not be compensatory.

[14][15] Dreiling bases his understanding of the *post-1996 revision* of Rule 16b-3(d) on the SEC's *pre-revision* rationale for the rule. It is true that before 1996, the rule applied only to compensatory transactions. But the current incarnation of Rule 16b-3(d) explicitly covers non-compensatory insider-issuer transactions. 17 C.F.R. § 240.16b-3(d) (exempting eligible insider-issuer transactions " whether or not intended for a compensatory or other particular purpose"). The SEC adopted the 1996 revision with the express purpose of immunizing non-compensatory transactions. *See* 61 Fed.Reg. at 30,377-78 (indicating that the 1996 revision to Rule 16b-3(d) was intended to exempt compensatory stock grants to directors or officers as well as " [o]ther acquisitions by an officer or director from the issuer, including grants, awards and participant-directed transactions," if approved by the board of directors or a majority of shareholders). To make matters doubly clear, the SEC squarely takes the position in its amicus brief

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that Rule 16b-3(d) encompasses directors by deputization: "[W]hen Rule 16b-3(d) was adopted the Commission contemplated its application to all acquisitions from an issuer that met the objective gatekeeping requirements set forth in the rule (such as board or shareholder approval), regardless of whether the acquisitions have a compensatory purpose or not." We thus reject Dreiling's argument because it conflicts with the plain text of the 1996 version of Rule 16b-3(d) as well as the SEC's controlling interpretation of it.[FN11] Thus, directors by deputization are entitled to seek the protection of Rule 16b-3(d) to the same extent, and on the same terms, as an individual director or officer.

### B. Specific Application Of Rule 16B-3(D) Totrs

[16] The remaining issue to be decided is whether Rule 16b-3(d) exempts TRS under the facts alleged by Dreiling. According to Dreiling's allegations, the InfoSpace board did not approve of the issuance of shares to TRS with the understanding that TRS was an insider as a director by deputization through David House. Dreiling cites a letter InfoSpace's counsel sent to Dreiling that said that House "did not in any way represent [TRS]" and, thus, was not a director by deputization. For purposes of TRS's motion to dismiss for failure to state a claim, we accept as true the allegation that the InfoSpace board did not approve the transaction in question knowing that TRS was a director by deputization. *See Zimmerman v. Oakland,* 255 F.3d 734, 737 (9th Cir.2001) ( "We review dismissals under Rule 12(b)(6) *de novo,* accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the plaintiffs."). We agree with Dreiling and the SEC that, on the facts alleged, TRS has not met the requirements of Rule 16b-3(d), and that Dreiling's complaint should not have been dismissed.

*10 [17] As we indicated already, Rule 16b-3(d) applies to directors by deputization on the same terms as it would apply to any other § 16(b) insider. Thus a director by deputization must fulfill the same requirements of Rule 16b-3(d) to receive its protection. Rule 16b-3(d) requires an issuer board to approve the *specific* insider-issuer transaction for which the exemption is sought. *See* 17 C.F.R. § 240.16b-3 interpretive note 3 ("The approval condition[ ] of [Rule 16b-3(d)(1) ] require[s] the approval of each specific transaction, and [is] not satisfied by approval of a plan in its entirety...."); 61 Fed.Reg. at 30,381 ("When the rule requires 'Non-Employee Director,' full board or shareholder approval, the Commission intends that the approval relate to specific transactions rather than the plan in its entirety."). As the SEC observes in its amicus brief, "[i]t is ... imperative, for the purposes of Rule 16b-3(d), that the members of any corporate board know when another person serving on the same board is deputized by another person or entity to carry out its interests." [FN12] If a board does not know that one of its directors is a deputy for another corporation, and thus a potential conduit for inside information, the board "would have no reason for special vigilance ... and ... would not effectively serve its gatekeeping function and ensure accountability." [FN13]

[18] It follows that Rule 16b-3(d) does not exempt TRS if it is an undisclosed or secret director by deputization. Logically speaking, a board cannot approve of a specific insider-issuer transaction without knowing that an insider was involved in the transaction.[FN14] As alleged by Dreiling, the InfoSpace board did not approve of the grant of its shares to TRS knowing that TRS was a director by deputization for purposes of the insider-issuer exemption. To be sure, the board approved of the merger with Prio and the concomitant issuance of InfoSpace stock to Prio shareholders, of which TRS was just one. But an open question, to be resolved on remand, is whether the board approved the transaction with the understanding that TRS was an insider.

Still, TRS argues that it must be exempt under Rule 16b-3(d) because to hold otherwise would require us to create a judicial exception to the rule and illegitimately "usurp" the SEC's regulatory function. *United States v. Willfong,* 274 F.3d 1297, 1302 (9th Cir.2001). We are neither modifying the rule nor " usurping" the SEC's authority. All we are doing at this stage of litigation is applying the requirements of Rule 16b-3(d), as written, to the facts alleged by Dreiling.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                           Page 13

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

In sum, we uphold the SEC's authority to adopt Rule 16b-3(d). We give "controlling weight" to the SEC's interpretation that the rule covers directors by deputization and that specific board approval of an insider-issuer transactions must be done with knowledge of the director's status. We reverse the district court's grant of TRS's motion to dismiss because Rule 16b-3(d) does not, on the facts alleged, shield TRS from liability under § 16(b). Whether TRS was a director by deputization, and, if so, whether InfoSpace, in approving the general Prio-InfoSpace transaction, intended to approve a specific insider-issuer transaction with respect to TRS, are among the issues to be resolved on remand.

*11 **REVERSED** and **REMANDED**.

Each party shall bear its own costs on appeal.

FN1. Before bringing an action against TRS, Dreiling was obligated by § 16(b) to wait until InfoSpace failed or refused to do so:
Suit to recover such profit may be instituted ... by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter...

15 U.S.C. § 78p(b).

FN2. We review *de novo* a dismissal under Rule 12(b)(6), *Arrington v. Wong*, 237 F.3d 1066, 1069 (9th Cir.2001), and may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).

FN3. See also *Allis-Chalmers Mfg. Co. v. Gulf & Western Indus., Inc.*, 527 F.2d 335, 346 (7th Cir.1975) *cert. denied* 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976) ("Our review of the history of the statute convinces us that in enacting section 16(b) Congress had in mind a specific type of two-part transaction consisting either of a purchase and subsequent sale, or a sale and subsequent repurchase....").

FN4. The SEC noted in its amicus brief that before the 1996 version amendment to Rule 16b-3, the old exemption immunized only "approved written employee benefit plan[s]" which "did not work and actually discouraged some insiders from acquiring issuer securities through employee benefit plans."

FN5. Dreiling is thus wrong to assert that § 16(b) on its face bars the SEC from promulgating a rule exempting issuer-insider transactions. The text of § 16(b) does not explicitly exempt board-approved insider-issuer transactions, as written in Rule 16b-3, but neither does it explicitly bar the SEC from enacting such an exemption. Congress has *not* "directly spoken to the precise question at issue," so the silence of § 16(b) on board-approved insider-issuer transactions is not "the end of the matter." *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

FN6. Reviewing an agency's construction of a statute, we consider two questions. *Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778. First, has Congress "directly spoken to the precise question at issue"? If so, the court must "give effect to the unambiguously expressed intent of Congress." *Id.* at 842, 104 S.Ct. 2778. If not, the second is whether the agency's construction of the statute is permissible. *Id.* at 843, 104 S.Ct. 2778. If Congress has expressly delegated "authority to the agency to elucidate a specific provision of the statute by regulation," the court must give the regulations "controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Id.* at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  Page 14
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
(Cite as: --- F.3d ----)

844, 104 S.Ct. 2778.

FN7. The Supreme Court's interpretations of § 16(b) are relevant to determining if a SEC rule is consistent with statutory purpose because "[t]he judiciary is the final authority on issues of statutory construction...." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778.

FN8. Iman Anabtawi, *Secret Compensation,* 82 N.C. L. REV. 835, 852-56 (2004).

FN9. *Id.* at 860 n. 113, 104 S.Ct. 2778 (" Because, under Rule 16b-3(d), a stock option grant made by an independent compensation committee is generally exempt from section 16(b), and because section 16(b) reaches only transactions that occur within six months of each other, it is of limited relevance to the award of executive stock options.").

FN10. Indeed, the SEC acknowledged in its amicus brief the *possibility* of abuse in the hypotheticals described by Dreiling. A "dominant insider [may be] privy to insider information that he conceals from the board or shareholders in obtaining approval for a transaction." But, in adopting Rule 16b-3(d), the SEC determined that exempted transactions " did not pose a *significant* risk of abusive insider trading with less informed investors. " (Emphasis added.)

FN11. The SEC's interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation. *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). This principle applies even if the SEC's interpretation is presented in the form of an amicus brief. *Id.* at 462, 117 S.Ct. 905 ("Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference. The Secretary's position is in no sense a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack. There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.") (internal citation omitted).

FN12. TRS argues that the position the SEC takes in its amicus brief clashes with its previous understanding of the rule, something the SEC can only modify through formal rulemaking. Despite this attack, TRS offers up nothing to show that the SEC articulated a previous position on this point.

FN13. TRS attempts to side step the knowledge requirement, arguing that even if the board did not know that TRS was a director by deputization, the exemption still applies because other laws exists to remedy the inside transaction, including the reporting requirements under § 13(d) and § 13(g) of the Williams Act, or Rule 10b-5 liability. Again, the mere fact that another remedy exists to cure the same ill suggests nothing about the scope of § 16(b) or Rule 16b-3. *See Foremost-McKesson,* 423 U.S. at 255, 96 S.Ct. 508.

FN14. TRS argues that even if it were a director by deputization, the InfoSpace board was aware of this, knowing that House was a TRS officer. This approach still begs the question of whether the InfoSpace board specifically approved of the grant of InfoSpace stock to TRS as an insider for purposes of Rule 16b-3(d).

C.A.9 (Wash.),2006.
Dreiling v. American Exp. Co.
--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                       Page 15

--- F.3d ----, 2006 WL 2337451 (C.A.9 (Wash.)), 2006 Daily Journal D.A.R. 10,706
**(Cite as: --- F.3d ----)**

- 2006 WL 2365409 (Appellate Brief) Appellee American Express Travel Related Services Company, Inc.'s Response to the Brief of the Securities and Exchange Commission, Amicus Curiae, in Partial Support of Each Party (Apr. 19, 2006)
- 2005 WL 2480922 (Appellate Brief) Appellant Thomas Dreiling's Reply Brief (Jun. 3, 2005) Original Image of this Document (PDF)
- 2005 WL 627417 (Appellate Brief) Defendant-Appellee American Express Travel Related Services Company, inc.'s Answering Brief (Jan. 26, 2005) Original Image of this Document (PDF)
- 2004 WL 3140507 (Appellate Brief) Appellant Thomas Dreiling's Opening Brief (Dec. 13, 2004) Original Image of this Document (PDF)
- 04-35715 (Docket) (Aug. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.