# EXHIBIT A

LEXSEE 2005 US 2ND CIR BRIEFS LEXIS 233

Go To U.S. Circuit Court Opinion

View Original Source Image of This Document ( $ )

STEPHEN J. DILORENZO, Plaintiff-Appellant, -v.- WENDELL H. MURPHY, HARRY D. MURPHY JOYCE MURPHY MINCHEW, WENDELL H. MURPHY, JR., WENDY MURPHY CRUMPLER, STRATTON K. MURPHY, MARC D. MURPHY, ANGELA NORMAN BROWN and SMITHFIELD FOODS, INC., Defendants-Appellees.

04-5052-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*2004 U.S. 2nd Cir. Briefs 5052; 2005 U.S. 2nd Cir. Briefs LEXIS 233*

February 14, 2005

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

Reply Brief: Appellant-Petitioner

**COUNSEL:** [**1] To be Argued by: PAUL D. WEXLER.

OSTRAGER CHONG FLAHERTY & BROITMAN, P.C., 250 Park Avenue, New York, Now York 10177, (212) 681-0600.

BRAGAR WEXLER, EAGLE & MORGENSTERN, P.C., 885 Third Avenue, New York, New York 10022, (212) 308-5858.

Attorneys for Plaintiff-Appellant.

Dennis H. Tracey, III, Esq., Hogan & HARTSON L.L.P., 875 Third Avenue, New York, New York 10022.

Marshall Beil, Esq., McGuire Woods LLP, Park Avenue Tower, 65 East 55<th> Street, New York, New York 10022-3219.

Attorneys for Defendants-Appellees.

**TITLE: REPLY BRIEF FOR PLAINTIFF-APPELLANT**

**TEXT: Preliminary Statement**

Plaintiff-appellant Stephen J. DiLorenzo ("DiLorenzo") submits this Reply Brief to address certain issues raised by appellees in their opposition brief.

**POINT I**

### THE JUDGMENT BELOW UNDERMINES THE SEC'S CAREFULLY CONSTRUCTED REGULATORY SCHEME

Judge Rakoff held that defendants are deemed to have purchased the earn-out shares when they signed the Acquisition Agreement in 2000, even though they had no power over the shares until Smithfield agreed to relinquish their right to them in two separate installments in 2001 and 2003. n1 Clearly, defendants could not vote or sell the shares in 2000 because [**4] the right to them and the number of shares had not been fixed. Moreover, both the Acquisition Agreement and the Escrow Agreement provided that the individual defendants were not entitled to the earn-out shares until the parties agreed that disputes between them had been resolved. In fact, until the Company relinquished its rights in 2001 and 2003, it was not even clear that the defendants would receive any of the earn-out shares. It stands logic on its head to suggest that the execution of the Acquisition Agreement [*2] represents a purchase of shares where neither the right to them, the amount or the date they will be issued is fixed.

n1 All abbreviations and definitions are the same as they appear in DiLorenzo's main brief.

The judgment below does violence to the SEC's 1991 statutory scheme. For purposes of § 16(b), liability for short-swing trading is imposed upon insiders that have "beneficial ownership" of an issuer's stock. Rule 16a-1(a)(2) reads as follows:

> Other than for purposes of determining [**5] whether a person is a beneficial owner of more than ten percent of any class of equity securities registered under Section 12 of the Act, the term *beneficial owner* shall mean any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities, subject to the following:
>
> (i) The term *pecuniary interest* in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities.

****

17 C.F.R. § 240.16a-1(a)(2).

*See also, Mayer v. Chesapeake Insurance Co., 877 F.2d 1154, 1159 (2d Cir. 1989), cert. denied, 493 U.S. 1021 (1990); Whiting v. Dow Chemical Co., 523 F.2d 680 (2d Cir. 1975).*

The district court's analysis overlooks the fundamental question of when defendants had a pecuniary interest in the earn-out shares, as that is the date when they are deemed to have acquired the stock. Until conditions precedent to determining the number of earn-out shares were satisfied, defendants did not have [**6] a pecuniary interest in the shares. *See, Stella v. Paige* [*3] *Motors Corporation, 232 F.2d 299, 301 (2d Cir. 1956).* Those conditions were satisfied in 2001 and 2003 and those are the dates when the purchases occurred. n2

n2 Defendants insist that, even today, they do not have title to the earn-out shares because the shares remain in an escrow account. The record is not clear as to why the individual defendants have not actually taken title to the shares as the agreements provide them with the right to do so. In any event, it is of no moment because as noted above, title to the shares is not the relevant consideration; beneficial ownership and pecuniary interest are the hallmarks of § 16(b) analysis.

Both the individual defendants and Smithfield make "policy arguments" in which they decry the unfairness of applying § 16(b) to their purchases and sales. These arguments are really attacks on the statute itself, i.e., the unfairness of applying the disgorgement remedy to a situation where [**7] the insiders assert that they had no actual inside information. n3 This argument, made unsuccessfully in hundreds of other cases, is plainly without merit. Case law is clear that no proof of actual misuse of insider information or bad faith is required under § 16(b). *Reliance Electric v. Emerson Electric, 404 U.S. 418 (1972); Gollust v. Mendell, 501 U.S. 115, 122 (1991).* This argument is strikingly unpersuasive here as the individual defendants not only had a representative on the board of Smithfield, they had a contractual right to determine when the shares would be available to them. Their power to control the timing of this transaction is [*4] apparent. This is a classic § 16(b) case where the insiders who buy and sell within six months do so at their peril.

---

n3 Of course, since there has been no discovery, plaintiff has not had the opportunity to discover whether or not there has been a misuse of real inside information.

---

**POINT II**

**THE JUDGMENT BELOW UNDERMINES [**8] THE POLICIES UNDERLYING THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants moved to dismiss the complaint both under Fed. R. Civ. P. 12(b)(6) and Rule 56. The district court held that the complaint failed to state a cause of action because, as a matter of law, there was no matchable purchase with the sales that occurred in 2001 and 2003. In doing so, the district court held that the purchase occurred in 2000, more than six months before any of the sales.

We showed in the main brief that the court erred because, as a matter of law, the purchases were made in 2001 and 2003 and thus could be matched with the sales. We also showed that even if the court were to apply the holding of *Frager v. Sylvestri,* 449 F/ Supp. 425 (S.D.N.Y. 1978), fact issues relating to defendants' control over the transaction required denial of summary judgment.

In response, defendants argue that plaintiff has waived any discovery by its failure to list in a Rule 56(f) statement exactly the information it required to counter the motion. But the law is clear that where there has been no discovery, plaintiff should not be "railroaded" into trying to determine the precise discovery she requires. "Under Rule [**9] 56(f), summary [*5] judgment 'may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition.' Fed.R.Civ.P. 56(e) advisory committee's note (1963). The nonmoving party should not be "railroaded" into his offer of proof in opposition to summary judgment. *See Celotex, All U.S. at 326, 106 S. Ct. at 2554-2555.* The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment. *Anderson v. Liberty Lobby, Inc., All U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)." Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989).* As this Court held in *Miller v. Wolpoff & Abramson LLP, 321 F. 3d 292 (2d Cir. 2003):*

> While the affidavit did not specify with precision the information plaintiff believed he could learn from deposing the three affiants, plaintiff cannot be faulted for failing to advise the district court precisely what information he might learn during discovery given that the facts sought were exclusively [**10] within defendants' possession and that he had no previous opportunity to develop the record through discovery. *See Meloff, 51 F.3d at 374* (reversing grant of summary judgment in an employment discrimination case where plaintiff had insufficient opportunity "to explore the motivations and reasons

for terminating her employment"); *cf. Fitzgerald v. Henderson, 251 F.3d 345, 362 (2d Cir.2001)* (observing that where the district court denied the plaintiff any opportunity to conduct discovery and considered a partial summary judgment motion filed two months after the filing of the complaint, [*6] "[f]aulting [plaintiff] for failure to make a showing of ... matters that would ... be beyond her personal knowledge [] was incompatible with the court's denial of discovery").

*Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir 2003)*

DiLorenzo submits that Judge Rakoff erred in his reliance on *Prager*. But even if he was correct in his legal analysis, the complaint should not have been dismissed without allowing discovery as to the defendants' control over the timing of the issuance of the earn-out shares.

[**11] **POINT III**

**RULE 16b-3 DOES NOT APPLY TO THIS TRANSACTION**

In their answering brief, the individual defendants argue that all of the transactions at issue here are exempted from § 16(b) by application of SEC Rule 16b3-d (the "Rule"). n4 Defendants misread the Rule.

n4 Judge Rakoff did not consider this argument.

The Rule, in its title, provides an exemption for "transactions between an issuer and its officers or directors". Rule 16b-3(d) provides for an exemption for acquisitions of stock by the director or officer from the issuer if the transaction is "approved by the board of directors of the issuer." 17 C.F.R. § 240.16b-3(d)(1). In *Gryl v. Shire Pharmaceuticals Group PLC,* [*7] *298 F.3d 136, 141 (2d Cir. 2002)*, the Court identified the following requirements for what it termed a "Board Approval Exemption":

(1) The transaction must involve the defendant acquiring issuer equity securities from the issuer;

(2) The defendant must be a director or officer [**12] of the issuer at the time of the transaction; and

(3) The transaction must be approved in advance by the issuer's board of directors.

The Board Approval Exemption is not available here because when the board "approved" the Acquisition Agreement, none of the defendants was an officer or a director. Further, we show that the alleged board approval does not meet the specificity requirements of the Rule in order to qualify for the Board Approval Exemption.

**A. The Rule Doses Not Apply Because Hone of the Defendants Was An Officer or Director of Smithfield When the Transaction Was "Approved" by the Board**

Apellees assert that Smithfield's Board of Directors approved the Acquisition Agreement some time prior to November 1999, citing a Smithfield proxy statement dated November 22, 1999, which in turn references a Board approval of the Acquisition Agreement (attached to the Affidavit of James I. Rim dated February 20, 2004, as Ex. A) (the "Rim Aff.") (A-14) There [*8] are no Board of Directors minutes that are alleged to constitute the Board Approval Exemption in the record.

None of the defendants was an officer or director at the time of the approval. Defendant [**13] Wendell H. Murphy became a director of Smithfield on about August 29, 2000, more than seven months after the closing of the Acquisition. *See* Smithfield proxy statement dated July 28, 2000, annexed to Supplemental Declaration of Glenn F.

Ostrager dated March 1, 2004 as Exhibit 3. n5 (A797)

> n5 The proxy statement attached to defendants' papers note that Murphy had been a director from 1991 to 1997, but not a director at the time of the Acquisition Agreement. (A705)

Clearly, the rule does not apply to situations where none of the parties are officers or directors at the time of the transaction approved by the Board, i.e., the acquisition in this case. In such cases, the Board simply is not approving a *"transaction with its officers or directors."*

### B. The Rule Does Not Apply Because the Approval Was Not in Proper Form

There is no indication that the Board Approval of the Acquisition Agreement met the specificity requirements of the Rule. Under the Rule, the Board is required to act as a [**14] "gatekeeper" with respect to transactions involving its officers and directors to guard against abuses by insiders. In particular, the Rule requires that, as here, where there are [*9] multiple securities transactions, the "terms and conditions" of each transaction must be fixed in advance. 17 C.F.R. § 240.16b-3 note 3. *See, Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 141-142 (2d Cir. 2002).* The very fact that the defendants' entitlement to the escrow shares and earn-out shares was not determined until July 16, 2001 and July 22, 2003 establishes that the Board Approval did not contain the "terms and conditions" required by the note 3 to the Rule.

On this record, there are fact issues concerning the adequacy of the approval, including the manner in which the defendants' entitlement to the escrow shares and earn-out shares was determined.

### C. The Transaction Is Not Exempt Because It Did Not Have a Compensatory Purpose

Even if this transaction was construed as a transaction between a director and the issuer, this is not the type of transaction that the SEC intended to exempt. In *Levy v. Sterling Holding Company, 314 F.3d 106 (3d Cir. 2002),* [**15] *cert denied,* 540 U.S.947 (2003) the Third Circuit held that an exemption under Rule 16b-3(d) was available only where the transaction has "some connection to a compensation-related function". *314 F.3d at 124.* After an exhaustive analysis of the Rule and the SEC adopting release, the court reversed the dismissal of the complaint by the district court, concluding [*10] that the Rule had no application to a reclassification that had the effect of converting preferred stock beneficially owned by the officers or directors into common stock. As the Circuit court stated:

> This statement, as well as the others previously cited, in the SEC's adopting release strongly suggest that the SEC intended, in Rule 16b-3(d), to exempt "grants, awards, and other acquisitions" with some compensatory nexus and thus the rule is inapplicable here.

*314 F.3d at 124.*

Despite some language in the adopting release that suggests that *any* transaction between an issuer and officer or director meeting the conditions of the Rule is exempted, the Court rejected that argument:

> The result we reach is sensible. We think that adopting National's and Sterling's [**16] view would result in any transaction between the issuer company and an officer or director that meets the remaining requirements of Rule 16b-3(d) -- approval of the transaction by the board of directors or a majority of shareholders, or holding of the securities by the officer or director for more than six months [footnote omitted] being immunized from section 16(b) liability. The potential for self-dealing could be great: in a closely held corporation, directors or a majority of shareholders could arrange for the acquisition of stock

in advance of an IPO, and turn around and sell shares shortly after the IPO, Because of their insider status, there would be a concern about speculative abuse injurious to other market participants.

*314 F.3d at 124.*

[*11] The Court went on to distinguish *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC,* 298 F.23d 136 (2d Cir. 2002), on the ground that the stock options awarded in that case had a "compensatory nexus". *Id.*

There is plainly no compensatory nexus in this case. On the contrary, Murphy wasn't even a director until long after the Board approved the Acquisition Agreement. Accordingly, on [**17] the strength of *Levy,* the transactions at issue are not subject to the exemption for transactions between an issuer and its officers or directors.

**D. The Rule Does Not Exempt Transactions Between The Issuer and a Greater Than 10% Beneficial Owner**

The Rule is also inapplicable here because it does not apply to transactions with insiders whose insider status is based on being greater than 10% beneficial owners of the issuer's securities. Defendants do not dispute that all defendants, including Wendell H. Murphy, were greater than 10 percent beneficial owners of Smithfield common stock at times of the alleged short-swing transactions. There is nothing in the Rule that would permit an exemption for transactions by these insiders.

Notwithstanding, defendants assert that an exemption under Rule 16b-3(d) which applies to directors is available under a "deputization" theory to all defendants, i.e., that Wendell H. [*12] Murphy acted as a representative for his family members on the Smithfield board of directors. The "deputization" theory is a Court doctrine that extends insider status to persons who have presumed access to insider information when acting through corporate [**18] representatives. *Feder v. Martin Marietta Corp.,* 406 F.2d 260 (2d Cir. 1969), *cert denied,* 396 U.S. 1036 (1970). There is no authority for the proposition that the deputization doctrine can be used to provide exemptions from liability under the statute. The purpose of the Rule is to extend liability, not limit it.

[*13] **CONCLUSION**

The judgment should be reversed.

Dated: New York, New York

February 10, 2005

Respectfully submitted,

BRAGAR WEXLER EAGEL &

MORGENSTERN, PC

885 Third Avenue

New York, New York 10022

(212) 308-5858

By: /s/ [Signature]

Paul D. Wexler (PW9340)

OSTRAGER CHONG & FLAHERTY &

BROITMAN P.C.

250 Park Avenue

New York, New York 10022

Attorneys for Plaintiff-Appellant

To: Dennis H. Tracey, III, Esq.
HOGAN S HARTSON L.L.P.
875 Third Avenue
New York, New York 10022

Marshall Beil, Esq.
McGuire Woods LLP
Park Avenue Tower
65 East 55<th> Street
New York, New York 10022-3219

Attorneys for Defendants-Appellees

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this reply brief complies [**19] with the type-volume limitation of Rule 32(a)(7)(B) (ii). As measured by the word processing system used to prepare this brief, there are 2,637 words in this brief.

Dated: February 10, 2005

    By: /s/ [Signature]

    Paul D. Wexler

    BRAGAR WEXLER EAGEL

    & MORGENSTERN, P.C.