# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FTR CONSULTING, INC., derivatively on behalf of MTC TECHNOLOGIES, INC. | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 05-00008-JJF |
| v. | ) ) | |
| RAJESH K. SOIN, VISHAL SOIN, AMOL SOIN, INDU SOIN and MTC TECHNOLOGIES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE ACTION FOR LACK OF STANDING
## AND LACK OF SUBJECT-MATTER JURISDICTION

Richard L. Horwitz (#2246)
Melony R. Anderson (#4377)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000

Attorneys for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin

Of Counsel:

Geoffrey J. Ritts
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939

Dated: June 16, 2008

## INTRODUCTION

Plaintiff FTR Consulting, Inc. no longer has standing to maintain this action, so the action should be dismissed as a matter of law.  Back in 2005, when plaintiff filed this derivative suit under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), plaintiff allegedly was a shareholder of nominal defendant MTC Technologies, Inc. ("MTC").  *See* Compl. ¶ 1 (D.I. 1).  Today, however, plaintiff owns no shares of MTC stock and has no financial interest in MTC whatsoever.  All of plaintiff's MTC shares were cancelled and converted, by operation of law, into the right to receive $24.00 per share in cash in a merger between MTC and a wholly owned subsidiary of BAE Systems, Inc. ("BAE Systems") that was consummated on June 9, 2008 (the "Merger").

The Supreme Court has held that a plaintiff who files a Section 16(b) action must maintain "a continuing financial interest in the outcome of the litigation" to have standing to pursue its claim.  *Gollust v. Mendell*, 501 U.S. 115, 126 (1991).  Lacking any such interest, FTR is without the "personal stake" in the outcome of the litigation that is necessary for Article III standing, or for standing under Section 16(b).  *Id.*  Accordingly, the action should be dismissed.

## NATURE AND STAGE OF PROCEEDINGS

This is a shareholder derivative suit, purportedly brought on behalf of nominal defendant MTC, to recover alleged short-swing trading profits under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).  Plaintiff filed this lawsuit on January 6, 2005.  *See* Complaint (D.I. 1).

The individual defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *See* Defs. Mot. to Dismiss  and Memorandum in Support (D.I. 21 & 23), reply briefs (D.I. 30 & 47) and supplemental authorities (D.I. 32, 33, 34 & 37).  The basis for the motion to dismiss is that SEC Rule 16b-3 exempts the

1

challenged transactions from Section 16(b). Rule 16b-3 provides that an acquisition of securities

from the company that issued the securities is exempt from Section 16(b) liability if, as was the

case here, the transaction was approved by the board of directors of the issuer. *See* 17 C.F.R.

§ 240.16b-3(d)(1). The parties consented to having that motion to dismiss decided by Magistrate

Judge Leonard P. Stark (D.I. 45); the motion is currently pending.

## STATEMENT OF FACTS

On June 9, 2008, Mira Acquisition Sub Inc. ("Merger Sub"), a wholly-owned subsidiary

of BAE Systems, merged with and into MTC, the issuer and nominal defendant in this case,

under the terms of an Agreement and Plan of Merger, dated as of December 21, 2007 (the

"Merger Agreement"). (*See* Declaration of Therese C. McNea at ¶¶ 5-6 & Exs. C-D (certificate

of merger and press release announcing completion of merger)). MTC's board of directors

approved the Merger Agreement on December 21, 2007. (*See id.* at ¶ 3 & Ex. A (Dec. 21, 2007

MTC Schedule 14A.)). At a special meeting, MTC's stockholders approved the Merger

Agreement on February 28, 2008. (*See id.* at ¶ 4 & Ex. B (Feb. 28, 2008 MTC Form 8-K)).

MTC is now a wholly-owned subsidiary of BAE Systems. (*See id.* at ¶¶ 5-6 & Exs. C-D).

In the Merger, all the outstanding shares of MTC, including those owned by plaintiff

when it initiated this lawsuit, were "cancelled and extinguished and . . . converted into the right

to receive $24.00 in cash" per share, and MTC shares were delisted from the Nasdaq Global

Select Market. (*See id.* at ¶ 5, Exs. A (§ 2.1(a)), C & D). The complaint does not allege that

plaintiff has, or ever had, any financial interest in MTC or BAE Systems, other than the MTC

common stock that plaintiff no longer owns.

## ARGUMENT

### I.    STANDARD OF REVIEW

Pursuant to Article III, federal courts lack subject-matter jurisdiction to decide cases where a plaintiff lacks standing. *See, e.g., Allen v. Wright,* 468 U.S. 737, 751 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). Once the Court's subject-matter jurisdiction is challenged, the plaintiff "must bear the burden of persuasion" and establish that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991).

### II.    PLAINTIFF LACKS ARTICLE III STANDING BECAUSE IT HAS NO "PERSONAL STAKE" IN THE OUTCOME OF THIS LITIGATION.

Article III of the Constitution "states fundamental limits on federal judicial power in our system of government." *Allen*, 468 U.S. at 750.[1] Article III standing requires a plaintiff to have "a personal stake in the outcome of the controversy to assure that concrete adverseness which sharpens the presentation of issues." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)

---

[1] Article III provides that the "judicial Power" of the federal courts shall be limited to "Cases" and "Controversies":

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; to all Cases affecting Ambassadors, other public Ministers and Consuls; to all Cases of admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party; to Controversies between two or more States; between a State and Citizens of another State; between Citizens of different States; between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2.

(quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Importantly, a plaintiff's standing must continue at every point throughout the entire course of the litigation.  *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395-97 (1980).  "Thus, if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot."  *Rosetti v. Shalala*, 12 F.3d 1216, 1223-24 (3rd Cir. 1993).

In *Gollust v. Mendell*, the Supreme Court addressed whether "a § 16(b) action could be maintained by someone who is subsequently divested of any interest in the outcome of the litigation."  501 U.S. 115, 124 (1991).  Because Article III requires plaintiffs to "maintain a 'personal stake' in the outcome of the litigation throughout its course" (*id.* at 126), the Court expressed "serious constitutional doubt whether [such a] plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction."  *Id.* at 125.

This case does not survive *Gollust*.  It fits squarely within the hypothetical that the Supreme Court saw as outside the scope of Article III standing.  When plaintiff's MTC stock was cancelled and converted to cash in the Merger, plaintiff lost its personal stake in the outcome of this lawsuit.  As a result, plaintiff lacks Article III standing, this Court lacks subject-matter jurisdiction, and the action should be dismissed.

## III.    PLAINTIFF LACKS STANDING UNDER SECTION 16(B) BECAUSE IT NO LONGER HAS A FINANCIAL INTEREST IN THE OUTCOME OF THIS CASE.

Even if plaintiff had standing under Article III (which it does not), it lacks standing under Section 16(b) because it lacks a "continuing financial interest" in the outcome of the litigation.

Long before *Gollust* was decided, courts construing standing under Section 16(b) held that a cash-out merger like the MTC Merger divests a plaintiff of standing.  For example, in *Rothenberg v. GTCR Fund VI, L.P.*, the plaintiff's shares were converted to cash in a short-form

merger after the plaintiff filed suit to recover alleged short-swing trading profits under Section 16(b). *See* 1977 U.S. Dist. LEXIS 15937, at *9 (S.D.N.Y. May 11, 1977), *aff'd* 573 F.2d 1295 (2nd Cir. 1977). Granting summary judgment for the defendant acquiring company, the court held that "plaintiff must have and maintain his standing as a shareholder throughout the litigation" (*id.* at *7), and "[t]o permit former shareholders to sue under §16(b) is not required by the statute."

In addition to acknowledging the limits of Article III standing, *Gollust* also held that Congress did not intend to extend Section 16(b) standing to plaintiffs who were "subsequently divested of any interest in the outcome of the litigation." 501 U.S. at 124. The Supreme Court explained that Congress clearly intended to rely on the "private-profit motive" of security holders to enforce Section 16(b), and noted that the absence of such a financial stake in the litigation would foil Congress' purpose. *Id.* at 124-25. The Court went on to hold:

> [W]e have no difficulty concluding that, in the enactment of §
> 16(b), Congress understood and intended that, *throughout the*
> *period of his participation,* a plaintiff authorized to sue insiders on
> behalf of an issuer would have some *continuing financial interest*
> *in the outcome of the litigation*, both for the sake of furthering the
> statute's remedial purposes by ensuring that enforcing parties
> maintain the incentive to litigate vigorously and to avoid the
> serious constitutional question that would arise from a plaintiff's
> loss of all financial interest in the outcome of the litigation he had
> begun.

*Id.* at 126 (emphasis added). Thus, the scope of standing under Section 16(b), as under Article III, requires plaintiff to maintain a continuing interest in the outcome of this litigation at all times.[2]

---

[2] To the extent the "continuing financial interest" requirement under Section 16(b) differs from the "personal stake" requirement of Article III, standing under Section 16(b) cannot, of course, exceed the limits of Article III standing.

The facts of this case are indistinguishable from the facts of *Rothenberg* and the *Gollust* hypothetical. On June 9, 2008, all of plaintiff's shares of MTC stock were cancelled and converted to the right to receive cash pursuant to the Merger Agreement. (*See* McNea Decl. at ¶ 5 & Exs. A, C & D). As a result, plaintiff, now a non-shareholder, no longer has a financial interest in the outcome of this litigation. Therefore, plaintiff's claim should be dismissed for lack of standing.

The results in *Gollust* and *DiLorenzo v. Edgar*, 2004 U.S. Dist. LEXIS 4991 (D. Del. 2004), are not to the contrary. In both of those cases, the plaintiff maintained an uninterrupted financial interest in the outcome of the litigation, even after the issuing corporation merged into another entity. In *Gollust*, the plaintiff's stock in the issuer was converted to shares of the issuer's new parent and sole shareholder. *See Gollust*, 501 U.S. at 126-27.[3] The Court held that plaintiff's ownership of the parent's securities gave plaintiff a financial interest in the outcome of the litigation. *See id.* Similarly, in *DiLorenzo* the plaintiff had a continuous financial interest in the outcome of the litigation because he owned stock of the parent of the surviving corporation before the merger, at the time of the merger, and at all times thereafter. *See* 2004 U.S. Dist. LEXIS 4991, at *3-4. The court held that "[a] shareholder of a parent corporation has a financial interest, albeit tenuous, in the disgorgement of profits obtained by insiders of a corporate subsidiary." *Id.* at *8. Plaintiff alleges no such facts here. It does not appear that the plaintiff owned shares of BAE Systems at the time of the merger, or that plaintiff owns BAE Systems stock today. Allowing the plaintiff to continue this lawsuit would violate both the purpose and scope of Section 16(b). *See Gollust*, 501 U.S. at 125; *see also Gosset v. Wenaas*, 42 Cal. 4th

---

[3] In addition to receiving shares of the issuer's new parent, the plaintiff in *Gollust* also received cash for its shares of the issuer. *Id.* at 118-19.

1100, 1117 (Cal. 2008) (dismissing a derivative securities-fraud suit for lack of standing and finding *Gollust* consistent with "the majority rule depriving a derivative plaintiff of standing where, as here, his or her interest in the litigation is completely extinguished in a stock-for-cash merger."). The action should, therefore, be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the

action for lack of standing and subject-matter jurisdiction.

DATED:  June 16, 2008

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                          By:   /s/ Melony R. Anderson
                                           Richard L. Horwitz (#2246)
Geoffrey J. Ritts                          Melony R. Anderson (#4377)
Salim A. Kafiti                            Hercules Plaza, 6th Floor
JONES DAY                                  1313 North Market Street
North Point                                Wilmington, Delaware 19801
901 Lakeside Avenue                        Tel:  (302) 984-6027
Cleveland, Ohio 44114                      Fax:  (302) 658-1192
Tel:  (216) 586-3939                       rhorwitz@potteranderson.com
Fax:  (216) 579-0212                       manderson@potteranderson.com

Dated:  June 16, 2008                      *Attorneys for Defendants Rajesh K. Soin,*
869407 / 28806                             *Vishal Soin, Amol Soin and Indu Soin*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, Melony R. Anderson, hereby certify that on June 16, 2008, the attached document was

served via hand delivery and was electronically filed with the Clerk of the Court using CM/ECF

which will send notification of such filing(s) to the following and the document is available for

viewing and downloading from CM/ECF:

Theodore J. Tacconelli
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, Delaware 19899

Robert Stearn, Jr.
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

I hereby certify that on June 16, 2008, the attached document was served via first class

mail to the following non-registered participants:

Paul D. Wexler
BRAGAR WEXLER EAGEL &
MORGENSTERN, P.C.
885 Third Avenue
New York, New York 10022

Glenn F. Ostrager
OSTRAGER CHONG FLAHERTY &
BROITMAN P.C.
250 Park Avenue
New York, New York 10177-0899

  /s/  Melony R. Anderson
Melony R. Anderson (#4377)
POTTER, ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, Delaware 19801
Tel:  (302) 984-6027
Fax:  (302) 658-1192

Attorneys for Defendants Rajesh K. Soin,
Vishal Soin, Amol Soin and Indu Soin